# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

CHÂTEAU FIDUCIAIRE S.A. as TRUSTEE of THE MAP TRUST, on Behalf of Itself and all Others Similarly Situated,

                    Plaintiff,

    v.

ARGUS INTERNATIONAL LIFE BERMUDA LIMITED, ARGUS GROUP HOLDINGS LIMITED, MASSACHUSETTS MUTUAL LIFE INSURANCE CO., OPPENHEIMER ACQUISITION CORPORATION, RYE INVESTMENT MANAGEMENT, RYE SELECT BROAD MARKET FUND L.P., RYE SELECT BROAD MARKET INSURANCE PORTFOLIO, LDC, TREMONT [BERMUDA] LIMITED, TREMONT CAPITAL MANAGEMENT INC., TREMONT GROUP HOLDINGS, INC., TREMONT INTERNATIONAL INSURANCE LIMITED, and TREMONT PARTNERS INC.,

                    Defendants.

Civil Action No. 1:09-cv-00557

---

(Additional captions on following pages)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS CHATEAU FIDUCIAIRE S.A., AS TRUSTEE OF THE MAP TRUST, THE HARRIET RUTTER KLEIN REVOCABLE TRUST, AND THE MATTHEW L. KLEIN IRREVOCABLE FAMILY TRUST ("MOVANTS") MOTION TO TRANSFER AND CONSOLIDATE THE RELATED CLASS ACTIONS, APPOINT INTERIM CLASS COUNSEL, AND COORDINATE THE CONSOLIDATED ACTION WITH THE RELATED PSLRA AND STATE CASES**

| | |
|---|---|
| THE GEOFFREY RABIE CREDIT SHELTER TRUST and THE JOANE BRENDA RABIE CREDIT SHELTER TRUST, Individually, and On Behalf of All Others Similarly Situated,<br><br>                         Plaintiffs,<br><br>    vs.<br><br>ARGUS GROUP HOLDINGS LTD., ARGUS INTERNATIONAL LIFE BERMUDA LTD., MASSMUTUAL HOLDING LLC, MASSACHUSETTS MUTUAL LIFE INSURANCE CO., OPPENHEIMER ACQUISITION CORP., RYE INVESTMENT MANAGEMENT, RYE SELECT BROAD MARKET FUND L.P., RYE SELECT BROAD MARKET INSURANCE PORTFOLIO, LDC, TREMONT (BERMUDA) LTD., TREMONT CAPITAL MANAGEMENT, INC., TREMONT GROUP HOLDINGS, INC., TREMONT INTERNATIONAL INSURANCE LTD., TREMONT PARTNERS, INC., ERNST & YOUNG LLP and KPMG LLP,<br><br>                       Defendants. | Civil Action No. 1:09-cv-01466 |

(Additional captions on following pages)

Civil Action No. 1:09-cv-2253

THE HARRIET RUTTER KLEIN
REVOCABLE TRUST, on Behalf of Itself and
all Others Similarly Situated,

Plaintiff,

v.

ARGUS INTERNATIONAL LIFE
BERMUDA LIMITED, ARGUS GROUP
HOLDINGS LIMITED, MASSACHUSETTS
MUTUAL LIFE INSURANCE CO.,
OPPENHEIMER ACQUISITION
CORPORATION, RYE INVESTMENT
MANAGEMENT, RYE SELECT BROAD
MARKET FUND L.P., RYE SELECT
BROAD MARKET INSURANCE
PORTFOLIO, LDC, TREMONT
[BERMUDA] LIMITED, TREMONT
CAPITAL MANAGEMENT INC.,
TREMONT GROUP HOLDINGS, INC.,
TREMONT INTERNATIONAL
INSURANCE LIMITED, TREMONT
PARTNERS INC., ERNST & YOUNG LLP,
and KPMG LLP,

Defendants.

(Additional captions on following pages)

THE MATTHEW L. KLEIN IRREVOCABLE
FAMILY TRUST dated October 27, 1997, on
Behalf of Itself and all Others Similarly
Situated,

      Plaintiff,

  v.

ARGUS INTERNATIONAL LIFE
BERMUDA LIMITED, ARGUS GROUP
HOLDINGS LIMITED, MASSACHUSETTS
MUTUAL LIFE INSURANCE CO.,
OPPENHEIMER ACQUISITION
CORPORATION, RYE INVESTMENT
MANAGEMENT, RYE SELECT BROAD
MARKET FUND L.P., RYE SELECT
BROAD MARKET INSURANCE
PORTFOLIO, LDC, TREMONT
[BERMUDA] LIMITED, TREMONT
CAPITAL MANAGEMENT INC.,
TREMONT GROUP HOLDINGS, INC.,
TREMONT INTERNATIONAL
INSURANCE LIMITED,TREMONT
PARTNERS INC., ERNST & YOUNG LLP,
and KPMG LLP,

      Defendants.

| | |
|---|---|
| YVETTE FINKELSTEIN, On Behalf of Herself and All Others Similarly Situated, and Derivatively On Behalf of AMERICAN MASTERS BROAD MARKET PRIME FUND, L.P., | Civil Action No. 1:08-cv-11141 |
| Plaintiff, | |
| v. | |
| TREMONT GROUP HOLDINGS, INC., OPPENHEIMER ACQUISITION CORPORATION, MASSACHUSETTS MUTUAL LIFE INSURANCE CO., and ERNST & YOUNG LLP, | |
| Defendants. | |
| and AMERICAN MASTERS BROAD MARKET PRIME FUND, L.P., | |
| Nominal Defendant. | |

(Additional captions on following pages)

| | |
|---|---|
| ARTHUR M. BRAINSON IRA R/O, | Civil Action No. 1:08-cv-11212 |
| Plaintiff, | |
| v. | |
| RYE SELECT BROAD MARKET FUND, L.P., TREMONT PARTNERS, INC., TREMONT GROUP HOLDINGS, INC., RYE INVESTMENT MANAGEMENT, JIM MITCHELL, and ROBERT SCHULMAN, | |
| Defendants. | |
| GROUP DEFINED PENSION PLAN & TRUST, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. 1:08-cv-11359 |
| Plaintiffs, | |
| v. | |
| TREMONT MARKET NEUTRAL FUND, L.P. (formerly named, American Masters Market Neutral Fund, L.P.), TREMONT PARTNERS, INC., TREMONT GROUP HOLDINGS, INC., OPPENHEIMER ACQUISITION CORP., OPPENHEIMER FUNDS, INC., MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, ERNST & YOUNG, LLP, and JOHN DOES 1-100. | |
| Defendants. | |

| | |
|---|---|
| EILEEN S. SILVERS and RICHARD J. BRONSTEIN, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. 1:09-cv-01111 |
| Plaintiffs, | |
| v. | |
| TREMONT GROUP HOLDINGS, INC., TREMONT PARTNERS, INC., RYE INVESTMENT MANAGEMENT, INC., OPPENHEIMER ACQUISITION CORPORATION, MASSACHUSETTS MUTUAL LIFE INSURANCE CO., RYE SELECT BROAD MARKET FUND, L.P., f/k/a/ AMERICAN MASTERS BROAD MARKET PRIME FUND, L.P., RYE SELECT BROAD MARKET XL FUND, L.P., ERNST & YOUNG, LLP, and KPMG LLP, | |
| Defendants. | |

(Additional captions on following pages)

| | |
|---|---|
| RICHARD PESHKIN, On Behalf Of Himself As An Individual, On Behalf Of Spectrum Select L.P. As A Limited Partner, And On Behalf Of All Others Similarly Situated, | Civil Action No. 1:08-cv-11183 |

Plaintiff,

v.

TREMONT GROUP HOLDINGS, INC.,
TREMONT PARTNERS, INC., RYE INVESTMENT
MANAGEMENT (a.k.a. RYE INVESTMENTS INC.),
OPPENHEIMER ACQUISITION CORPORATION,
OPPENHEIMERFUNDS, INC., MASSACHUSETTS
MUTUAL LIFE INSURANCE COMPANY, ROBERT
I. SCHULMAN, JIM MITCHELL, JOHN V.
MURPHY, KPMG L.L.P., BANK OF NEW YORK
MELLON CORPORATION, BNY ALTERNATIVE
INVESTMENT SERVICES, INC., SELECT
SPECTRUM PARTNERS, LLC, AND JOHN DOES 1-
100 INCLUSIVE,

Defendants.

-and-

RYE SELECT BROAD MARKET FUND LP,
RYE SELECT BROAD MARKET PRIME FUND LP,
RYE SELECT BROAD MARKET XL FUND LP, AND
SPECTRUM SELECT L.P.,

Nominal Defendants.

(Additional captions on following pages)

| | |
|---|---|
| ARTHUR E. LANGE and ARTHUR C. LANGE, Individually and on Behalf of All Others Similarly Situated, <br><br>                 Plaintiffs, <br><br>    v. <br><br> MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY; OPPENHEIMER ACQUISITION CORPORATION; TREMONT GROUP HOLDINGS, INC.; RYE INVESTMENT MANAGEMENT GROUP; HARRY HODGES; RYE SELECT BROAD MARKET PRIME FUND, L.P.; RYE SELECT BROAD MARKET FUND, L.P.; and TREMONT PARTNERS, INC. <br><br>                 Defendants. | Civil Action No. 1:08-cv-11117 |

(Additional captions on following pages)

John F. Keane, Jr., Trustee, individually and on behalf of all others similarly situated,

Plaintiff,

v.

Tremont Group Holdings, Inc., Rye Investment Management, Tremont Partners Inc., Robert Ivan Schulman, Rupert Andrew Allan, Cynthia J. Nicoll, Stephen Thomas Clayton, Oppenheimer Acquisition Corporation, Mass Mutual Holdings LLC, Massachusetts Mutual Life Insurance Company, Select Spectrum Partners LLC, Gary Busel, Ronald Pearson, KPMG L.L.P. and BDO Seidman L.L.P.,

Defendants.

Civil Action No. 1:09-cv-1396

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ........................................................................................... 2

    Related "Tremont" Proceedings ........................................................................ 5

ARGUMENT ............................................................................................................... 6

A.     Transfer of the Unassigned Insurance Cases is Appropriate for Consolidation ................ 6

B.     The Insurance Cases Should be Consolidated After
    They are Transferred and Assigned to Judge Griesa ........................................... 7

    1.     The Insurance Cases Involve Common Facts ........................................... 9

    2.     The Defendants and the Counts in Each
        of the Insurance Cases are Nearly Identical ........................................... 11

    3.     The Benefits of Consolidating the  Insurance Cases Outweigh any Prejudice ..... 12

C.     The Court Should Appoint Interim Class Counsel ........................................... 13

    1.     Wolf Haldenstein Has Performed Significant Work
        In This Case and Has Knowledge of the Applicable Law ................................. 14

    2.     Wolf Haldenstein Has Extensive Experience
        In Complex Class Action Litigation ................................................... 14

    3.     Wolf Haldenstein Will Commit the Resources
        Necessary To Represent the Class Properly ........................................... 16

D.     The Insurance Cases Should Be Coordinated
    With The PSLRA Cases And State Cases ................................................... 17

CONCLUSION ........................................................................................................... 20

**CASES**                                                                                                          **Page(s)**

*Ajaka v. Branick Industries, Inc.,*
    94 CIV 0316 (DC), 1996 WL 103973 (S.D.N.Y. Mar. 11, 1996) ..........................................8, 12

*Bank of Montreal v. Eagle Associates,*
    117 F.R.D. 530 (S.D.N.Y. 1987) ........................................................................................13

*BD ex rel. Jean Doe v. DeBuono,*
    193 F.R.D. 117 (S.D.N.Y. 2000) ........................................................................................8

*In re Bear Sterns Cos. Inc., Securities & Derivative, and ERISA Litigation,*
    08 MDL 1963, 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) .......................................................18

*In re Comdisco Securities Litigation,*
    150 F. Supp. 2d 943 (N.D. Ill. 2001) ..........................................................................15, 16

*In re Dynamic Random Access Memory Antitrust Litigation,*
    MDL-02-1486, 2008 U.S. Dist. Lexis 92447 (N.D. Cal. Nov. 5, 2008) ..................................15

*In re Fuwei Films Securities Litigation,*
    247 F.R.D. 432 (S.D.N.Y. 2008) ........................................................................................12

*In re Luxottica Group, S.p.A. Securities Litigation,*
    No. 01-CV-3285, 2004 WL 2370650 (E.D.N.Y. Oct. 22, 2004)............................................15

*In re Olsten Corp. Securities Litigation,*
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ..................................................................................10

*In re Prudential Sec. Inc. Ltd. Partnerships Litigation.,*
    158 F.R.D. 532 (S.D.N.Y. 1994) ........................................................................................13

*In re TXU Corp. Derivative Litigation,*
    Consolidated Cause No. 07-1779
    (Dallas County, Tex. 44th Judicial Dist. Apr. 18, 2008) ........................................................16

*Johnson v. Celotex Corp.,*
    899 F.2d 1281 (2d Cir. 1990) ........................................................................................8, 11

*Mitchell v. Complete Management, Inc.,*
    No. 99-CV-1454 (DAB), 1999 WL 728678 (S.D.N.Y. Sept. 17, 1999) ..................................7

\538659

*Pinkowitz v. Elan Corp.,*
    02 Civ. 865, 2002 WL 1822118 (S.D.N.Y. July 29, 2002) ...................................................8

*Primavera Familiensteiftung v. Askin,*
    173 F.R.D. 115 (S.D.N.Y. 1997) .........................................................................................8

*Werner v. Satterlee, Stephens, Burke & Burke,*
    797 F. Supp. 1196 (S.D.N.Y. 1992) ....................................................................................8

## <u>STATUTES</u>

Federal Rules of Civil Procedure
    § 15(a) ...................................................................................................................................6
    § 15(c) ...................................................................................................................................6
    § 23 ................................................................................................................................13, 14
    § 42(a) ............................................................................................................................1, 7, 8

iii

**INTRODUCTION**

Plaintiffs Chateau Fiduciaire S.A., as Trustee of the Map Trust, the Harriet Rutter Klein Revocable Trust, and the Matthew L. Klein Irrevocable Family Trust (collectively "Movants"), by and through their undersigned counsel, respectfully submit this memorandum in support of their motion for entry of an order: (i) transferring the following cases to this Court: *The Geoffrey Rabie Credit Shelter Trust v. Argus Group Holdings Ltd.*, 09 cv 1466 (S.D.N.Y.) (unassigned); and *The Harriet Rutter Klein Revocable Trust v. Argus Int'l Life Bermuda Ltd.*, 09 cv 2253 (S.D.N.Y.) (unassigned); *The Matthew L. Klein Irrevocable Family Trust v. Argus Int'l Life Bermuda Ltd.*, 09 cv 2254 (S.D.N.Y.) (unassigned) (the "Transferred Cases"); (ii) consolidating the Transferred Cases pursuant to Federal Rule of Civil Procedure 42(a) with *Chateau Fiduciaire v. Argus Int'l Life Bermuda Ltd.*, 09 cv 557 (S.D.N.Y.) (TPG); (collectively, the "Insurance Cases"); (iii) appointing the law firm of Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as interim class counsel for the Insurance Cases; and (iv) coordinating the Insurance Cases with the PSLRA Cases (defined below) and State Cases (defined below), which are also pending before this Court, for pretrial purposes.[1]

While coordination of the Insurance Cases with the PSLRA and State Cases will provide the most efficient and economical prosecution of all cases, the Insurance Cases should not be consolidated with the PSLRA and State Cases. As set forth in greater detail on pages 18-20 below, the Insurance Cases are brought on behalf of a unique class, namely insurance policy holders and annuities holders. These plaintiffs possess unique contractual rights not held by the

---

[1] Wolf Haldenstein is one of a group of three firms that have moved to be appointed co-lead counsel in the PSLRA Cases, and has knowledge of all the allegations underlying the claims in the Insurance, PSLRA and State Cases. *See* p. 18, *supra*.

other plaintiffs; they also seek relief from different defendants than those named in the PSLRA and State Cases, including foreign defendants. *See* pp. 18-20, *supra*. In addition, the potential lapsing of the policies may require plaintiffs in the Insurance Cases to seek injunctive or other appropriate relief. Movants, therefore, seek coordination but not consolidation with the PSLRA and State Cases; otherwise they will suffer prejudice.

## STATEMENT OF FACTS

On January 20, 2009, Chateau Fiduciaire S.A., as Trustee of the Map Trust, filed a class action complaint on behalf of itself and other similarly situated holders of variable universal life insurance ("VUL") policies against Argus International Life Bermuda Ltd., formerly known as Tremont International Life Insurance Ltd., and various other defendants (hereinafter the "Map Trust Complaint").[2] A VUL insurance policy enjoys certain tax advantages and allows a policyholder to accumulate a cash value by investing in a choice of separate investment accounts similar to mutual funds. The number and type of investment choices available to the policyholder varies from insurer to insurer. Map Trust ¶ 31. A VUL policy, like a standard insurance policy, provides a death benefit equal to the face amount of the policy plus the accumulated cash value. As is often the case (and the motivation behind purchasing a VUL policy) the cash accumulated in the policy is used to pay the policy's monthly premiums, allowing the death benefit to remain in effect.

The Map Trust Complaint alleges, *inter alia*, that defendants breached their fiduciary duties to class members by placing the investment account component of their VUL policies in Rye Select Broad Market Insurance Portfolio LDC ("Rye"), which was a "feeder fund" that was

---

[2] References to the Map Trust Complaint are designated as "Map Trust ¶ __".

wholly invested with Bernard Madoff ("Madoff").[3]  Specifically the Map Trust Complaint

alleges that the "Argus Defendants"[4] placed plaintiffs in Rye without disclosing to policyholders

that Rye's assets were ultimately invested with a single investment advisor, Madoff, and without

conducting any type of suitability analysis.  The "Tremont Defendants,"[5] who managed the Rye

Funds,[6] failed to conduct adequate due diligence and ignored red flags of Madoff's fraudulent

scheme.  Map Trust ¶¶ 42, 50, 52-53.  The Map Trust Complaint alleges that as a result of these

defendants' lack of oversight, the investment account components of the VUL policies have been

decimated, and the VUL policies are at imminent risk of lapsing.  Map Trust ¶¶ 70-71.

Shortly after the Map Trust Complaint was filed, additional class actions were filed

against the Argus Defendants and Tremont Defendants arising from the same conduct.  On or

about February 18, 2009, the Geoffrey Rabie Credit Trust and the Joanne Brenda Rabie Credit

Trust filed a class action complaint on behalf of themselves and similarly situated VUL

policyholders, against nearly identical defendants named in the Map Trust Complaint (the "Rabie

Trust Complaint").[7]  In addition to the defendants named in the Map Trust Complaint, the Rabie

Trust Complaint also alleges claims against Ernst & Young LLP and KPMG LLP, the auditors of

---

[3] The Map Trust Complaint alleges that the Map Trust was initially invested in the Tremont Broad Market Fund, but later policy statements indicate that Map Trust held Rye Select Broad Market Insurance Portfolio, LDC.

[4] The Argus Defendants are Argus International Life Bermuda Limited f.k.a. Tremont International Insurance Limited, and Argus Group Holdings, Ltd.

[5] The Tremont Defendants are Tremont Capital Management, Inc., Tremont [Bermuda] Limited, Tremont Group Holdings, Inc., Tremont Partners, Inc., and Rye Investment Management.

[6] The "Rye Funds" are defined as Rye Select Broad Market Fund L.P., Rye Select Broad Market Insurance Portfolio, LDC, and other Rye affiliated funds offered as investment fund options to VUL policyholders.

[7] References to the Rabie Trust Complaint are designated as "Rabie Trust ¶ _."  According to the docket in the Rabie Trust action, this case remains unassigned.

the Rye Select Broad Market Insurance Portfolio LDC, as well as an additional defendant, Mass Mutual Holding LLC.  Like the Map Trust Complaint, the Rabie Trust Complaint alleges that as a result of Argus Defendants' and Tremont Defendants' misconduct, the values of their VUL policies have been wiped out and their VUL policies are at risk of lapsing.  Rabie Trust ¶¶ 59-60.

On March 11, 2009, The Matthew L. Klein Irrevocable Family Trust filed a class action on behalf of itself and other similarly situated VUL policyholders, alleging similar claims against the Argus and Tremont Defendants, Argus International Life Bermuda Ltd., formerly known as Tremont International Life Insurance Ltd, and the other defendants named in the Map Trust Complaint (the "Matthew Klein Complaint").[8]  The Matthew Klein Complaint also asserts claims against the auditors of the Rye Funds, Ernst & Young LLP and KPMG LLP.

Also, on March 11, 2009, the Harriet Rutter Klein Revocable Trust filed a class action complaint on behalf of itself and similarly persons who purchased or held deferred variable annuities ("DVAs") offered by defendant Argus International Life Bermuda Limited, f.k.a. Tremont International Life Insurance Limited, alleging the same causes of action against the same defendants named in the Matthew Klein Complaint, but on behalf of a slightly different class of DVA holders (the "Harriet Klein Complaint").[9]  Specifically, a DVA is a type of annuity designed as a retirement-savings vehicle which contains investments much like mutual funds, called sub-accounts or investment accounts.  The money in the investment account compounds, tax-deferred, until it is withdrawn, at which point it is taxed as regular income.  The investment accounts are typically managed by hedge funds or insurance company investment managers.

---

[8] References to the Matthew Klein Complaint are referred to as "Matthew Klein ¶ _".

[9] References to the Harriet Klein Complaint are referred to as "Harriet Klein ¶ _".

Similar to the facts alleged in the Map Trust, Rabie Trust and Matthew Klein Complaints, the Harriet Klein Complaint alleges that class members' investment account portions of their DVAs were invested in the Rye Select Broad Market Insurance Portfolio LDC, which in turn was wholly invested Madoff as part of his Ponzi scheme. Harriet Klein ¶ 44. Defendants blindly placed the DVAs' investments in a wholly unsuitable fund without conducting any due diligence as to what they were actually investing in. Harriet Klein ¶¶ 44, 46, 53-56. In addition, the Harriet Klein Complaint alleges that as a result of the defendants' lack of oversight, the variable investment account components of the DVA policies have been decimated, and the DVA policies are at imminent risk of lapsing. Harriet Klein ¶¶ 70-72.

Movants now seek to consolidate their actions as well as the Rabie Trust action.

### Related "Tremont" Proceedings

In addition to the Insurance Cases discussed above, there are currently seven other Madoff-related cases against Tremont entities pending before this Court. Of these, four cases include allegations for violations of federal securities laws as well as various state law claims: *Finkelstein v. Tremont Group Holdings, Inc.*, 08 CV 11141 (SWK); *Brainson v. Rye Select Broad Market Fund, L.P.*, 08 CV 11212 (TPG); *Group Defined Pension Plan & Trust v. Tremont Market Neutral, L.P.*, 08 CV 11359 (HB); and *Silvers v. Tremont Group Holdings, Inc.*, 09 CV 01111 (UA) (collectively, the "PSLRA Cases"). Three additional cases allege only state and common law causes of actions: *Keane v. Tremont Group Holdings, Inc.*, 09 CV 01396 (UA); *Lange v. Massachusetts Mutual Life Insurance Company*, 08 CV 11117; and *Peshkin v. Tremont Group Holdings, Inc.*, 08 CV 11183 (RMB) (collectively, the "State Cases").

The PSLRA Cases generally allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, as well as various state law claims, against, *inter alia*, the Rye Investment Management ("Rye") family of funds,

5

Tremont Partners, Inc., Tremont Group Holdings, Inc., Robert Schulman, Jim Mitchell, certain Rye funds, Ernst & Young, LLP, and KPMG LLP. The State Cases contain many of the same allegations and same defendants as the PSLRA Cases, but do not include the 10(b), 20(a) and Rule 10b-5 claims.

Presently pending before this Court are various competing motions regarding consolidation of the PSLRA and State Cases. There are also several competing motions to be appointed lead plaintiff and lead counsel over the PSLRA and State Cases.

## ARGUMENT

### A. Transfer of the Unassigned Insurance Cases is Appropriate for Consolidation

Rule 15(c) of the Rules for the Division of Business Among District Judges states that "any party believing its case to be related to another may apply on notice in writing to the judge assigned in its case for transfer to the judge having the related case with the lowest docket number. If the assigned judge believes the case should be transferred, he or she shall refer the question to the judge who would receive the transfer." Rule 15 (a) provides that "a civil case will be deemed related to one or more other civil cases and will be transferred for consolidation or coordinated pretrial proceedings when the interests of justice and efficiency will be served."

According to Rule 15(a), a Court should consider whether (i) a substantial saving of judicial resources would result; (ii) the just efficient and economical conduct of the litigations would be advanced; or (iii) the convenience of the parties or witnesses would be served."

According to the ECF docket, the Rabie Trust, Matthew Klein and Harriet Klein cases all remain unassigned as of March 12, 2009, while the Map Trust case (the case with the lowest

docket number) has been assigned to Your Honor.[10]  These cases are clearly related and should be transferred under R. 15.  As discussed in greater detail below at pp. 9-12, *supra*, the complaints all arise out of the same factual circumstances–namely the decimation of the plaintiffs' variable universal life insurance policies and deferred variable annuities as a result of defendants' improper channeling of the investment portion of their policies into wholly unsuitable funds ultimately controlled by Madoff.  Each of the complaints alleges claims on behalf of almost identical classes against nearly identical defendants and seeks similar relief.

Transfer of all of the Insurance Cases for consolidation would promote the interests of justice and efficiency.  Nearly all of the discovery and the motion practice in each of the cases would be the same.  In addition, nearly all of the parties and witnesses in these Insurance Cases would be the same.

For these reasons, Movants respectfully submit that the Rabie Trust, Harriet Klein and Matthew Klein are all related to the Map Trust case and should be assigned to Judge Griesa, the judge presiding over the first filed, Map Trust action.

B.     **The Insurance Cases Should be Consolidated After They are Transferred and Assigned to Judge Griesa**

Rule 42(a) of the Federal Rules of Civil Procedure authorizes a court to consolidate separate actions if the actions involve common questions of law or fact.  *See* Fed. R. Civ. P. 42(a). Consolidation is particularly appropriate in securities class action litigation.  *See Mitchell v. Complete Mgmt., Inc.,* No. 99-CV-1454 (DAB), 1999 WL 728678, at *1 (S.D.N.Y. Sept. 17,

---

[10] The Court's ECF docket identifies Judge Sullivan as the judge presiding over the Map Trust case. However, Gregory Nespole, one of the attorneys representing Movants in the MAP Trust case, received a telephone call from Your Honor's clerk, informing him that the Map Trust case had been transferred to Your Honor.

\538659

1999) ("In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact . . . .") (citation omitted); *see also Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). "The trial court has broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

When deciding whether to consolidate cases, the court must determine "whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Ajaka v. Branick Indus. Inc*., 94 CIV 0316 (DC), 1996 WL 103973 (S.D.N.Y. Mar. 11, 1996) (citation omitted). As long as any confusion or prejudice does not outweigh efficiency concerns, consolidation is appropriate. *See Primavera Familienstiftung*, 173 F.R.D. at 129

Rule 42(a) does not require that the actions be identical before they can be consolidated. *See Pinkowitz v. Elan Corp.*, 02 Civ. 865, 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002) (citation omitted); *see also Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992) (granting consolidation where some facts differed between the cases, but there were numerous areas where the facts of the two cases overlap[ped].") Even one substantial common question of law or fact is enough for consolidation under Fed. R. Civ.P. 42 (a). *See BD ex rel. Jean Doe v. DeBuono*, 193 F.R.D. 117, 141 (S.D.N.Y. 2000). As discussed below, the Insurance Cases are nearly identical and more than satisfy the requirements set forth in Rule 42(a) for consolidation.

### 1.  The Insurance Cases Involve Common Facts

Each of the Insurance Cases arises out of the $50 billion Ponzi scheme orchestrated by Madoff.   The complaints allege claims on behalf the named plaintiffs and similarly situated investors who purchased or held one of two investment vehicles: (i) the variable universal life insurance policies issued by the Argus Defendants (MAP Trust, Rabie Trust, Matthew Klein); or (ii) the deferred variable annuities issued by the Argus Defendants (Harriet Klein), the investment portions of which were ultimately invested with Madoff, and lost as part of his Ponzi scheme.  *See e.g*., Map Trust ¶¶ 1, 41-42; Rabie Trust ¶¶ 1-2, 60; Harriet Klein ¶¶ 1, 42-44; Matthew Klein ¶¶ 1, 44-46.   Each of the complaints in the Insurance Cases allege that the plaintiffs' funds were invested in, *inter alia*, the Rye Select Broad Market Insurance Portfolio, LDC, one of several "Rye Funds."  *See* Map Trust ¶ 41; Rabie Trust ¶ 23; Matthew Klein ¶ 44; Harriet Klein ¶ 42.[11]  The complaints all allege that various defendants failed to conduct even the most rudimentary due diligence on Madoff and blindly invested fund assets with him despite red flags that, at a minimum, would have alerted them to the irregularities with Madoff's reported results and operations.  *See e.g*., Map Trust ¶¶ 50-53; Rabie Trust ¶¶ 36, 40, 43; Harriet Klein ¶¶ 44, 46, 55-56; Matthew Klein ¶¶ 46, 48, 52, 54-57.  The Complaints also allege that as a result of the defendants' misconduct, plaintiffs are now without the assets and income they believed they had accumulated.  Further, VUL policies and DVA policies are at imminent risk of lapsing and annuity streams under DVA policies are at risk.  Map Trust ¶¶ 70-71; Rabie Trust ¶¶ 59-60; Matthew Klein ¶¶ 73-75; Harriet Klein ¶¶ 70-72.

---

[11] The Map Trust, Harriet Klein and Matthew Klein complaints each allege that plaintiffs were initially invested in the Tremont Broad Market Fund, but later statements show that they were invested in the Rye Select Broad Market Insurance Portfolio, LDC. *Id.*  The Rabie Trust Complaint alleges that the Rabie Trust was invested in Rye Select Broad Market Insurance Portfolio, LDC.

The fact that the proposed classes in each of the complaints are so similar also weighs in favor of consolidating the Insurance Cases. *See In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 292-93 (E.D.N.Y. 1998). For example, the Map Trust complaint is filed on behalf of "all persons other than defendants, who purchased variable universal life insurance ("VUL") policies offered by defendants Argus International Life Bermuda Limited f.k.a. Tremont International Life Insurance Limited from January 2003 to the present." Map Trust ¶ 1. The Rabie Trust Complaint is filed on behalf of "all persons or entities that held variable universal life insurance policies ("Policies") issued by Tremont International Insurance Limited ("TIIL") or Argus International Life Bermuda Ltd. ("Argus Int'l) and managed by Tremont Capital Management or Rye Investment Management through December 10, 2008." Rabie Trust ¶ 1. The Matthew Klein Complaint is brought on behalf of "all persons, other than defendants, who purchased or held variable universal life insurance ("VUL") policies offered by defendant Argus International Life Bermuda Limited f.k.a. Tremont International Life Insurance Limited from February 2003 until the present." Matthew Klein ¶ 1. Finally, the Harriet Klein Complaint is filed on behalf of "all persons, other than defendants, who purchased or held deferred variable annuities ("DVAs") offered by defendant Argus International Life Bermuda Limited f.k.a. Tremont International Life Insurance Limited from March 2003 until the present." Harriet Klein ¶ 1.

In addition, the Map Trust, Rabie Trust and Matthew Klein Complaints all rely on either the same or substantially similar VUL policies. *See* Map Trust ¶¶ 41, 46, Rabie Trust ¶ 37, Matthew Klein ¶¶ 45, 50. Likewise, the DVA policy in the Harriet Klein case is similar to the other policies in that the "investment account" portion of the policy was invested in the Rye Funds managed by Tremont. *See* Harriet Klein ¶ 43.

As detailed above, the complaints filed in the Insurance Cases arise from the same set of facts and conduct. As a result, the Court should consolidate the aforementioned cases, and any others filed subsequent to this motion that the Court deems appropriate. *See Johnson*, 899 F.2d at 1285.

<blockquote>

**2. The Defendants and the Counts in Each of the Insurance Cases are Nearly Identical**
</blockquote>

As the chart below illustrates, each of the complaints in the Insurance Cases names nearly identical defendants:

| DEFENDANT | MAP Trust | Rabie Trust | Harriet Klein | Matthew Klein |
|---|---|---|---|---|
| Argus International Life Bermuda Ltd | X | X | X | X |
| Argus Group Holdings Ltd | X | X | X | X |
| Massachusetts Mutual Life Insur. Co. | X | X | X | X |
| MassMutual Holding LLC | | X | | |
| Oppenheimer Acquisition Corp. | X | X | X | X |
| Rye Investment Management | X | X | X | X |
| Rye Select Broad Market Fund, LP | X | X | X | X |
| Rye Select Broad Market Insurance Portfolio, LDC | X | X | X | X |
| Tremont [Bermuda] Ltd | X | X | X | X |
| Tremont Capital Management Inc. | X | X | X | X |
| Tremont Group Holdings, Inc. | X | X | X | X |
| Tremont International Insurance Ltd | X | X | X | X |
| Tremont Partners Inc. | X | X | X | X |
| Ernst & Young LLP | | X | X | X |
| KPMG LLP | | X | X | X |

The only material differences among the various complaints are that (i) the MAP Trust Complaint does not include the auditor defendants Ernst &Young LLP and KPMG LLP, and (ii) the Rabie Trust Complaint names one additional defendant, MassMutual Holding LLC. These slight differences among the complaints are immaterial.

In addition, each of the complaints in the Insurance Cases asserts similar causes of action against the defendants and raises common questions of law. As set forth in the chart below, each

of the complaints alleges various breaches of fiduciary duty, aiding and abetting, negligent misrepresentation, and unjust enrichment claims. In addition, three out of the four complaints – the ones in which plaintiffs' VUL policies are at risk of lapsing – also seek injunctive and/or declaratory relief:

| COUNTS | MAP Trust | Rabie Trust | Harriet Klein | Matthew Klein |
|---|---|---|---|---|
| Negligent Misrepresentation | X | X | X | X |
| Unjust Enrichment | X | X | X | X |
| Breach of Fiduciary Duties | X | X | X | X |
| Aiding and Abetting | X | X | X | X |
| Injunctive and/or Declaratory Relief | X | X | | X |
| Violations of Gen. Bus. Law § 349 | | X | | |
| Gross Negligence | | X | | |
| Promissory Estoppel | | X | | |

The three additional causes of action alleged in the Rabie Trust complaint do not vary significantly from the causes of action alleged in the other Insurance Cases. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 435 (S.D.N.Y. 2008) (court held that "while the Rubin complaint does assert claims against additional defendants…and contains slightly different facts and legal claims, neither the existence of additional defendants nor minor differences in facts and legal issues preclude consolidation.")

### 3. The Benefits of Consolidating the Insurance Cases Outweigh any Prejudice

None of the parties in the Insurance Cases will be prejudiced by consolidating the cases. The complaints have all been recently filed and none of the cases has proceeded to a point where consolidation would create an undue delay. *See Ajaka,* 1996 WL 103973, at * 2. Indeed, the cases are at the organizational stage.

In addition, there are numerous benefits to consolidating the Insurance Cases at this point. Consolidation would avoid piecemeal litigation and repetitive briefing by the parties in

12

each of the cases. *See In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 158 F.R.D. 562, 570 (S.D.N.Y. 1994) ("avoiding unnecessary paperwork is a proper reason to use a consolidated complaint for pretrial purposes."). Also, discovery in each of the Insurance Cases will be substantially similar, and the parties would avoid duplicative efforts if the cases are consolidated.

Consolidation would also ensure that the actions do not reach inconsistent results. *See Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. 530, 532 (S.D.N.Y. 1987). Since the Insurance Cases contain both common facts and common questions of law they should be consolidated for pre-trial purposes.

### C. The Court Should Appoint Interim Class Counsel

Movants also move to appoint Wolf Haldenstein as Interim Class Counsel. Designating Interim Class Counsel will promote the orderly progress of this litigation and ensure the parties are able to prosecute this litigation in an efficient and coordinated fashion.

Rule 23(g)(2)(A) authorizes the Court to "designate . . . class counsel to act on behalf of the putative class before determining whether to certify the action as a class action." As the Committee Notes to the 2003 amendments to Fed. R. Civ. P. 23 emphasize, designation of interim class counsel prior to certification is appropriate because:

> it will usually be important for an attorney to take action to prepare for the certification decision. The amendment to Rule 23(c)(1) recognizes that some discovery is often necessary for that determination. It may also be important to make or respond to motions before certification . . . . Rule 23(g)(2)(A) authorizes the court to designate interim counsel to act on behalf of the putative class before the class certification decision is made.

Rule 23(g)(1) directs the Court to appoint interim class counsel who will "fairly and adequately represent the interests of the class." Rule 23(g)(1) further states that the Court must consider the following factors in appointing interim class counsel:

13

- the work counsel has done in identifying or investigation potential claims in the action;
- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;
- counsel's knowledge of the applicable law; and
- the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(c)(i). Rule 23(g)(1) provides that the Court may, in addition, "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.*

The appointment of Wolf Haldenstein as Interim Class Counsel satisfies the requirements of Rule 23(g)(1)(C)(i). Wolf Haldenstein also satisfies the requirements of Rule 23(g)(2)(A), which permits the designation of interim class counsel to act on behalf of a putative class before the determination of whether to certify the action as a class action.

### 1. Wolf Haldenstein Has Performed Significant Work In This Case and Has Knowledge of the Applicable Law

Wolf Haldenstein has investigated the claims asserted in this litigation and has filed three of the four Insurance Case complaints.[12] In addition, Wolf Haldenstein, on behalf of its clients in the Map Trust, Matthew Klein and Harriet Klein cases, has moved for the consolidation of these cases and its appointment as interim class counsel to lead the efforts of all plaintiffs' counsel. Thus, Wolf Haldenstein has acted to meaningfully advance the litigation to date.

### 2. Wolf Haldenstein Has Extensive Experience In Complex Class Action Litigation

As reflected in its firm resume, attached hereto as Exhibit A to the Declaration of Gregory M. Nespole ("Nespole Decl."), Wolf Haldenstein is among the most experienced class

---

[12] Wolf Haldenstein has filed the Map Trust, Matthew Klein and Harriet Klein complaints. The Rabie Trust Complaint was filed by Coughlin Stoia Geller Rudman & Robbins LLP.

action firms in the United States, having represented plaintiffs in nationwide class actions involving financially complex, large-scale litigation. The firm's resume contains a representative list of the many cases Wolf Haldenstein prosecuted as lead or primary counsel. The resume also details the results achieved in those cases and numerous published decisions from the cases in which Wolf Haldenstein served as class counsel or in a significant role. Wolf Haldenstein is undoubtedly well-qualified to serve as interim class counsel in these Insurance Cases.

Courts nationwide recognize Wolf Haldenstein's qualifications to serve as class counsel. *See, e.g., In re Luxottica Group, S.p.A. Sec. Litig.*, No. 01-CV-3285, 2004 WL 2370650, at *5 (E.D.N.Y. Oct. 22, 2004) (selecting Wolf Haldenstein lead class counsel based on the firm's "experience and expertise"); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 951 (N.D. Ill. 2001) (noting that Wolf Haldenstein's credentials "are impeccable"). In *In re Dynamic Random Access Memory Antitrust Litig.*, MDL-02-1486, Transcript of Hearing, (N.D. Cal. Aug. 15, 2007), where the firm was co-lead counsel, Judge Hamilton stated:

> I thought that you all did an exceptionally good job of bringing to me only those matters that really required the Court's attention. You did an exceptionally good job at organizing and managing the case, assisting me in management of the case. There was excellent coordination between all the various different Plaintiffs' counsel with your group and the other groups that are part of this litigation. . . . So my conclusion is the case was well litigated by both sides, well managed as well by both sides.

Moreover, at the completion of a very contentious and complicated litigation, Judge Milton Shadur paid the firm a great compliment:

> It has to be said…that the efforts that have been extended [by Wolf Haldenstein] on behalf of the plaintiff class in the face of these obstacles have been exemplary. And in my view [Wolf Haldenstein] reflected the kind of professionalism that the critics of class actions . . . are never willing to recognize . . . . I really

15

> cannot speak too highly of the services rendered by class counsel
> in an extraordinary difficult situation.

In *In re Comdisco Sec. Litig.*, No. 01 C 2110, Transcript of Hearing (N.D. Ill. July 14, 2005).

In *In re TXU Corp. Derivative Litig.,* Consol. Cause No. 07-1779 (Dallas County, Tex. 44th Judicial Dist.), Judge Carlos Cortez of the 44th Judicial District in Dallas County, Texas, noted of Wolf Haldenstein and its co-lead counsel upon the successful conclusion of litigation:

> You are exactly, the people in this room are exactly what I try to
> tell people week in and week out who come to this court to serve
> as jurors, that the profession of law is still noble, and all of you are
> a credit to the bar, and I'm humbled to be in your presence.

(Transcript of Hearing) (Apr. 18, 2008).

Of particular relevance here, Wolf Haldenstein has recently been appointed to serve as lead counsel by Judge Sand in another Madoff-related class action captioned, *Newman v. Family Management Corp.*, 1:08 cv 11215 (S.D.N.Y.) (LBS).  A copy of Judge Sand's Order is attached as Exhibit B to the Nespole Declaration.

### 3. Wolf Haldenstein Will Commit the Resources Necessary To Represent the Class Properly

As is demonstrated by the firm's long and distinguished record of success, Wolf Haldenstein possesses the ability and willingness to expend the financial and human resources necessary to prosecute this litigation on behalf of the class.  Indeed, throughout the firm's long and proud history, there has never been any question that the firm could devote *millions* of dollars of resources if necessary for the prosecution a case.[13]

---

[13] Indeed, Wolf Haldenstein's clients will also actively prosecute these Insurance Cases.  The Map Trust has paid over $345,000 in initial premiums on its VUL policy that had a death benefit of $6.3 million and a cash value of approximately $2.6 million before the Madoff scandal decimated its investment. Similarly, the Matthew Klein trust paid over $200,000 in initial premiums on its VUL policy that had a death benefit of $1,307,557 before it was decimated by the Madoff scandal. These two plaintiffs lost a (continued…)

Wolf Haldenstein is a well-respected and successful law firm. As its longevity attests – the firm has represented plaintiffs in commercial and complex class actions for more than forty years – Wolf Haldenstein has more than sufficient resources and personnel necessary to pursue a case of this magnitude as they have demonstrated in numerous similar large-scale class actions. The firm's resources are not merely financial, but also include substantial expertise and work-product as discussed above, that it has developed in other similar cases that will be an obvious benefit to the plaintiffs in this action. Wolf Haldenstein's ability to draw from this well-developed bank of information in directing this litigation, and to use the resources of other plaintiffs' counsel throughout the prosecution of the litigation, will allow it to streamline the litigation and create efficiency in the process.

Accordingly, Movants respectfully request that the Court grant their motion to appoint Wolf Haldenstein as Interim Class Counsel.

### D.     The Insurance Cases Should Be Coordinated With The PSLRA Cases And State Cases

Once the Insurance Cases have been consolidated, they should be coordinated with the PSLRA and State Cases pending before Your Honor in order to conserve judicial resources, ensure the efficient and economical prosecution of all cases, and limit the inconvenience to witnesses. The Insurance Cases, the PSLRA Cases, and the State Cases all share several overlapping defendants, as well as some common factual issues. By coordinating the three sets of actions, the parties will be able to conduct common, non-duplicative discovery and motion

---

(…continued)

combined total of $7,669,587 in death benefits. These losses appear to be larger than the loss of death benefits sustained in the Rabie Trust action, which appear to be approximately $6,941,536.

practice, where practicable. Consequently, coordination of the three sets of cases will ensure the efficient and economical prosecution of the actions.

Significantly, Wolf Haldenstein is one of a group of three firms that have moved to be appointed Co-Lead Counsel in the PSLRA Cases. *See Finkelstein v. Tremont Group Holdings Inc.,* No. 1:08 cv 11141 (SWK) (D.I. 38). Wolf Haldenstein is very familiar with all of the allegations in both the Insurance Cases and the PSLRA Cases. Wolf Haldenstein's PSLRA cases not only assert claims under the federal securities laws, but also assert state law claims, therefore, the firm is familiar with the allegations underlying all of the relevant claims. As a result, Wolf Haldenstein would be the ideal law firm to ensure that coordination between the Insurance Cases, the PSLRA cases and State cases is achieved in the most effective and efficient manner.

While it is clear that coordination of the Insurance Cases with the PSLRA and State Cases would foster judicial efficiency, the Insurance Cases should not be consolidated with the related PSLRA Cases and State Cases. *See In re Bear Stearns Cos., Inc. Secs., Derivative, and ERISA Litig.*, 08 MDL 1963, 2009 WL 50132, at *4 (denying consolidation between two actions, in part, because they involved different claims, burdens, and pleading standards).

The plaintiffs in the Insurance Cases differ significantly from the plaintiffs in the PSLRA Cases and State Cases. In the Insurance Cases, the proposed classes are generally defined as purchasers or holders of variable universal life insurance policies ("VULs") or defined variable annuities ("DVAs") issued by the Argus Defendants. These policy and annuity owners have contractual rights that differ from investors in the PSLRA and State Cases. The Insurance Cases plaintiffs allege that when they purchased their life insurance policies or annuities, the Argus Defendants were obligated to place them in investments that were suitable to meet the investment objectives of the policies or annuities. The Argus Defendants instead placed class

18

members in wholly unsuitable funds while the Tremont Defendants failed to conduct any due diligence on the Rye Funds that the Argus Defendants invested the Insurance Cases plaintiffs in.

In contrast, the PSLRA and State Cases plaintiffs directly invested in various funds, whose control persons and fiduciaries blindly entrusted significant amounts of the assets with Madoff without conducting the requisite due diligence. As a result, the plaintiffs in the Insurance Cases have interests in what the insurance companies themselves purchased, and are not direct investors in securities. Consequently, the line of discovery in the Insurance Cases will materially differ from the PSLRA and State Cases.

The relief sought in the Insurance Cases also differs significantly from the relief sought in the PSLRA and State Cases. Most importantly, plaintiffs in the Insurance Cases seek injunctive and/or declaratory relief because they face a unique and imminent risk that their VUL policies may soon lapse. This is because in the Insurance Cases, the plaintiffs' principal is used to pay the premiums on their VUL policies. The principal is now decimated because of the alleged conduct of defendants, thus leaving plaintiffs' VUL policies at immediate risk of lapsing, causing the death benefit to be lost forever. As a result, unlike in the PSLRA and State Cases, plaintiffs in the Insurance Cases may need to seek a temporary restraining order or other injunctive relief against the defendants.

Consolidation of the Insurance Cases with the PSLRA and State Cases would also cause the plaintiffs in the Insurance Cases to be prejudiced by the PSLRA's heightened pleading requirements. Plaintiffs in the PSLRA Cases are required to plead all of their claims with particularity in order to survive the inevitable motion(s) to dismiss. The Insurance Cases do not face this heightened pleading standard, and it would be unfair to subject them to a pleading standard that does not correspond to the claims they have asserted.

19

In addition, the PSLRA Cases state causes of actions, alleging, *inter alia*, violations of Section 10(b) and Section 20(a) under the Exchange Act, common law fraud, and rescission under the Advisors Act. None of these causes of action are alleged in any of Insurance Cases, and they require much different legal theories than any of the claims alleged under the Insurance Cases. In addition, different standards of proof are required for each of these. Consolidating these PSLRA claims with the causes of action asserted in the Insurance Cases will surely lead to confusion and disorder.

Finally plaintiffs in the Insurance Cases seek recovery from foreign defendants not named in the PSLRA or State Cases, and will have to confront jurisdictional and discovery issues not present in the PSLRA or State Cases.

For the reasons stated above, Movants respectfully request that the Insurance Cases be coordinated but not consolidated with the PSLRA and State Cases pending before Your Honor.

## CONCLUSION

The Rabie Trust, Matthew Klein and Harriet Klein cases should be transferred to this Court as related to the Map Trust case. In addition, consolidation of the Insurance Actions is appropriate because they present nearly identical facts and issues of law, and would also serve the interests of judicial economy. Similarly, it is appropriate to appoint interim class counsel to prosecute the case. Finally, Movants believe it would best serve the interests of all parties to coordinate the proceedings in the Insurance Cases with the PSLRA and State Cases.

For the reasons stated above, Movants respectfully request that the Court enter the accompanying Proposed Order which would: (i) transfer the Rabie Trust, Harriet Klein and Matthew Klein cases to this Court; (ii) consolidate the Insurance Cases, (iii) appoint Wolf Haldenstein as Interim Class Counsel to act on behalf of the Insurance Cases, and (iv) coordinate the Insurance Cases with the PSLRA and State Cases.

20

Dated:  March 13, 2009                    WOLF HALDENSTEIN ADLER
                                          FREEMAN & HERZ LLP

                                   By:    _____/s/ Gregory M. Nespole_____
                                          Gregory M. Nespole
                                          Demet Basar
                                          Stacey T. Kelly
                                          Russell S. Miness
                                          270 Madison Ave.
                                          New York, NY  10016

\538659

\538659