# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | ) ) ) ) | Case No. 08-cv-11117(TPG) |
| | ) | Hon. Thomas P. Griesa |
| This Document Relates to: Insurance Action No. 09 Civ. 557 | ) ) ) ) | Dated: June 8, 2009 |

---

## DEFENDANTS' NEW YORK LIFE INSURANCE COMPANY'S AND NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

JORDEN BURT LLP
Jeffrey L. Williams
Thomas J. Finn (TF7078)
Ben V. Seessel
175 Powder Forest Drive, Suite 301
Simsbury, Connecticut 06089-9658
Telephone:  (860) 392-5000
Facsimile:  (860) 392-5058

Attorneys for Defendants
New York Life Insurance Company
and New York Life Insurance and
Annuity Corporation

Chateau Fiduciaire S.A. v. Argus International Life Bermuda Limited et al        Doc. 74

Dockets.Justia.com

# TABLE OF CONTENTS

|  |  | **Page** |
|---|---|---|
| Table of Authorities | | iii |
| I. | INTRODUCTION | 1 |
| II. | SUMMARY OF ARGUMENT | 2 |
| III. | STANDARD | 3 |
| IV. | ALLEGATIONS AGAINST NEW YORK LIFE | 5 |
| V. | BACKGROUND | 6 |
|  | A. The Policy | 6 |
|  | B. Plaintiff Is A Sophisticated Investor. | 7 |
|  | C. Plaintiff Was Urged By NYLIAC To Seek Independent Advice Regarding His Investment In The Policy. | 8 |
|  | D. Plaintiff Expressly Acknowledged That He Had Not Relied On Any Statement Made By NYLIAC Outside Of The Offering Memorandum. | 8 |
|  | E. Prior To Investing In The Tremont Fund, Plaintiff Was Further Advised Of The High Degree Of Risk, Was Urged Again To Consult With His Own Advisers, And Was Informed That Tremont Partners, Not NYLIAC, Selected The Investments On Behalf Of The Fund. | 9 |
| VI. | ARGUMENT | 10 |
|  | A. Plaintiff Fails To State A Claim For Fraud. | 10 |
|  | 1. Plaintiff identifies no misrepresentation by NYLIAC. | 10 |
|  | 2. Plaintiff could not have reasonably relied on any purported misrepresentation or omission by NYLIAC. | 11 |
|  | 3. Plaintiff fails to adequately allege that NYLIAC acted with fraudulent intent. | 11 |
|  | 4. Plaintiff's fraud claim fails to meet Rule 9(b)'s heightened pleading requirements. | 12 |
|  | B. Plaintiff's Negligent Misrepresentation Claim Should Be Dismissed. | 14 |
|  | 1. NYLIAC owed no special duty to Plaintiff. | 14 |

# TABLE OF CONTENTS
## (continued)

| | | | Page |
|---|---|---|---|
| | 2. | Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine. | 15 |
| | 3. | Plaintiff's negligent misrepresentation claim fails to satisfy Rule 9(b)'s pleading requirements. | 16 |
| C. | | Plaintiff's Breach of Fiduciary Duty Claim Should Be Dismissed. | 16 |
| | 1. | There is no fiduciary relationship between New York Life and Plaintiff. | 16 |
| | 2. | Plaintiff fails to allege facts to support the second element of a breach of fiduciary duty claim. | 17 |
| | 3. | Plaintiff's breach of fiduciary duty claim fails to satisfy Rule 9(b)'s pleading requirements. | 18 |
| D. | | Plaintiff Fails To State A Claim For Unjust Enrichment Because A Valid And Enforceable Written Agreement Covers The Subject Matter Of Plaintiff's Claims. | 19 |
| E. | | Plaintiff's Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Should Be Dismissed. | 19 |
| | 1. | Plaintiff fails to allege sufficient facts to support this claim. | 19 |
| | 2. | Plaintiff's claim fails because he does not (and cannot) allege a breach of contract, and because it is duplicative of his other deficient claims. | 20 |
| F. | | Plaintiff's Negligent Misrepresentation And Breach Of Fiduciary Duty Claims Are Time-Barred. | 21 |
| | 1. | Plaintiff's negligent misrepresentation claim is time-barred. | 21 |
| | 2. | Plaintiff's claim for breach of fiduciary duty is time-barred. | 22 |
| G. | | The Bulk Of Plaintiff's Claims Are Preempted By The Martin Act. | 23 |
| VII. | | CONCLUSION | 25 |

## TABLE OF AUTHORITIES

### Federal Cases

*A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97-4978, 1999 WL 47223
(S.D.N.Y. February 3, 1999) ................................................................. 18

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ................................. 4

*Adams v. Intralinks, Inc.*, No. 03-5384, 2004 WL 1627313
(S.D.N.Y. July 20, 2004) ..................................................................... 11

*Alston v. Microsoft Corp.*, No. 08-3547, 2009 WL 1116360 (S.D.N.Y. April 27, 2009) ........... 21

*Apace Comm'ns, Ltd. v. Burke*, 522 F. Supp. 509 (W.D.N.Y. 2007) ....................... 18

*Arnold Chevrolet v. Tribune Co.*, No. 04-3097, 2007 WL 2743490
(E.D.N.Y. Sept. 17, 2007) .................................................................... 16

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ................................................ 4, 17

*Bavaria Int'l Aircraft Leasing GmbH v. Clayton, Dubilier & Rice, Inc.*, No. 03-0377,
2003 WL 21767739 (S.D.N.Y. July 30, 2003) ........................................... 10, 14

*Bazak Int'l Corp. v. Tarrant Apparel Group*, 347 F. Supp. 2d 1 (S.D.N.Y. 2004) ........... 19

*BHC Interim Funding, L.P. v. Finantra Capital, Inc.*, 283 F. Supp. 2d 968
(S.D.N.Y. 2003) ............................................................................ 14, 17

*Brody v. Brody*, No. 07-7981, 2009 WL 436404 (S.D.N.Y. Feb. 17, 2009) ................ 18

*Carmania Corp., N.V. v. Hambrecht Terrell Intern.*, 705 F. Supp. 936 (S.D.N.Y. 1989) ....... 15

*CBS Broad., Inc. v. Jones*, 460 F. Supp. 2d 500 (S.D.N.Y. 2006) ........................ 19

*Fagan v. AmericanSource Bergen Corp.*, 356 F. Supp. 2d 198 (E.D.N.Y. 2004) ........... 13

*Feinman v. Schulman Berlin & Davis*, 677 F. Supp. 168 (S.D.N.Y. 2002) ........... 5, 11, 13

*Gaind v. Pierot*, No. 04-9407, 2006 WL 846268 (S.D.N.Y. March 31, 2006) ............... 22

*Glonti v. Stevenson*, No. 08-8960, 2009 WL 311293 (S.D.N.Y. Feb. 6, 2009) .............. 21

*Granite Partners, L.P. v. Bear Stearns & Co.*, 17 F. Supp. 2d 275 (2d Cir. 1998) .......... 23

*Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996) ...................................... 4, 12

*Hart v. Internet Wire, Inc.*, 50 Fed. App'x 464 (2d Cir. 2002) ............................ 12

*In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405 (S.D.N.Y. 2007)..................12, 23, 24

*In re Blech Sec. Litig.*, 961 F. Supp. 569 (S.D.N.Y. 1997)..................................13

*Johnson v. Nextel Communications, Inc.*, No. 07-8473, 2009 WL 928131
(S.D.N.Y. March 31, 2009)..........................................................16

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001)............................................12

*Kassover v. UBS AG and UBS Fin. Servs., Inc.*, No. 08-02753, 2008 WL 5331812
(S.D.N.Y. Dec. 19, 2008)............................................................24

*Madera v. Metropolitan Life Ins. Co.*, No. 99-4005, 2002 WL 1453827
(S.D.N.Y. July 3, 2002).............................................................15

*Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245 (S.D.N.Y. 2008)..............10, 14

*Musalli Factory For Gold & Jewelry v. JPMorgan Chase Bank, N.A.*, No. 08-01720,
2009 WL 860635 (S.D.N.Y. March 31, 2009)..........................................14

*O & G Carriers, Inc. v. Smith*, 799 F. Supp. 1528 (S.D.N.Y. 1992)..........................13

*Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220 (S.D.N.Y. 2001)....................15

*Pacific Health Advantage v. Cap Gemini Ernst & Young*, No. 07-3725,
2007 WL 2619052 (S.D.N.Y. Sept. 6, 2007)..........................................22

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998)..........................21

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117
(2d Cir. 2007)...................................................................3, 17

*Pro Bono Invests., Inc. v. Gerry*, No. 03-4347, 2005 WL 2429787
(S.D.N.Y. Sept. 30, 2005)...........................................................24

*Sable v. Southmark/Envicon Capital Corp.*, 819 F. Supp. 324 (S.D.N.Y. 1993)..............11

*Savino v. Lloyds TSB Bank, PLC*, 499 F. Supp. 2d 306 (W.D.N.Y. 2007)....................22

*Scone Invs., L.P. v. Am. Third Market Corp.*, No. 97-3802, 1998 WL 205338
(S.D.N.Y. April 28, 1998)........................................................10, 13

*SEC v. Simpson Capital Mgmt.*, 586 F. Supp. 2d 196 (S.D.N.Y. 2008)........................3

*Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03-3120, 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005)...............................................................................23, 24

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994)..........................12

*Sira v. Morton*, 380 F.3d 57 (2d Cir. 2004)...........................................................4, 5

*Sotheby's Fin. Servs., Inc. v. Baran*, 107 Fed. App'x. 235 (2d Cir. 2004)..............22

*Spira v. Curtin*, No. 97/2637, 2001 WL 611386 (S.D.N.Y. June 05, 2001).......12, 18

*Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033 (S.D.N.Y. 1993).............13

*Yucyco Ltd. v. Rep. of Croatia*, No. 96-5559, 1997 WL 728173 (S.D.N.Y. Nov. 19, 1997).........20

**State Cases**

*Cohen v. Nassau Educators Fed. Credit Union*, No. 15094-05, 2006 WL 1540324 (N.Y. Sup. Ct. May 10, 2006)...............................................................................20

*Colon v. Banco Popular N. Am.*, 874 N.Y.S.2d 44 (N.Y. App. Div. 2009)..............21

*Eagle Comtronics, Inc. v. Pico Prods., Inc.*, 682 N.Y.S.2d 505 (N.Y. App. Div. 1998).........19

*Edelman v. O'Toole-Ewald Art Assocs., Inc.*, 28 A.D.3d 250 (N.Y. App. Div. 2006).........16

*Fiala v. Metro. Life Ins. Co.*, 6 A.D.3d 320 (N.Y. App. Div. 2004)......................16

*First Energy Leasing Corp. v. Attorney Gen.*, 496 N.E. 2d 875 (N.Y. 1986).........23

*Gaidon v. Guardian Life Ins. Co. of Am.*, 255 A.D.2d 101 (N.Y. App. Div. 1998) aff'd in part, 725 N.E.2d 598 (1999)...............................................................17

*Pecoraro v. M & T Bank Corp.*, 782 N.Y.S.2d 481 (N.Y. App. Div. 2004)...........21

*Prospect Street Ventures I, LLC v. Eclipsys Solutions Corp.*, 804 N.Y.S.2d 301 (N.Y. App. Div. 2005)...............................................................................20

*Silverman v. Pittsburgh Life & Trust Co.*, 176 A.D. 749 (1917).........................16

*Sutton Assocs. v. Lexis-Nexis*, 761 N.Y.S.2d 800 (N.Y. Sup. Ct. 2003)...............20

*Triton Partners LLC v. Prudential Sec. Inc.*, 752 N.Y.S.2d 870 (N.Y. App. Div. 2003).........20

*Uhlman v. New York Life Ins. Co.*, 17 N.E. 363 (1888)......................................16

**State Statutes**

N.Y. C.P.L.R. § 214 ............................................................................................. 21, 22

New York General Business Law Section 352(1) ............................................... 23


**Federal Rules**

Fed. R. Civ. P. 8 ................................................................................................. 3, 4, 6

Fed. R. Civ. P. 9(b) ............................................................................................. *passim*

Federal Rules of Civil Procedure 12(b)(6) ........................................................ 1, 20

Defendants New York Life Insurance Company ("New York Life") and New York Life Insurance and Annuity Corporation ("NYLIAC") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff F. Daniel Prickett's Complaint (the "Complaint" or "Compl."), filed pursuant to Federal Rules of Civil Procedure 12(b)(6). For the following reasons, Plaintiff's Complaint should be dismissed in its entirety.

## I.    INTRODUCTION

This action arises out of Plaintiff's purchase of a variable life insurance policy in May 2003. NYLIAC, a wholly-owned subsidiary of New York Life, issued the Policy. At the time he purchased his Policy, Plaintiff was a managing executive of Wachovia Bank, and an experienced and sophisticated investor. Plaintiff's Policy had an initial face amount of $6,394,951 and an initial premium of $928,044.90. In addition to providing a substantial death benefit, the Plaintiff's Policy allowed him to invest in an array of variable separate account options.

Prior to investing in the Policy, Plaintiff was urged to consult with his own advisors regarding his investment. Significantly, Plaintiff acknowledged that he had not relied on any representation by NYLIAC regarding his investment in the Policy, outside of the offering materials given to him. The offering materials made no representation that Plaintiff's investment choices would be safe or without risk.

In May 2004, Plaintiff chose to allocate a portion of his Policy's cash value to the Tremont Opportunity Fund III, L.P. ("Tremont" or the "Fund"). Tremont was managed by Tremont Partners, Inc. ("Tremont Partners"), the general partner of the Fund. Plaintiff alleges that Tremont allocated a portion of his funds to three affiliated hedge funds known as the Rye Select Broad Market funds (the "Rye Funds"), which in turn invested the bulk of those funds

with Bernard Madoff. Plaintiff alleges that he suffered the loss of this portion of his investment as the result of criminal conduct of Madoff.

Plaintiff has filed the Complaint against Tremont Partners and its affiliates, including the Rye Funds, Oppenheimer Acquisition Corp., and Massachusetts Mutual Life Insurance Company, their ultimate parent company. Plaintiff also names NYLIAC and New York Life as defendants.[1]

## II.    SUMMARY OF ARGUMENT

Plaintiff's allegations as to NYLIAC are wholly conclusory, and NYLIAC moves to dismiss the Complaint on the following grounds:

(1)  Plaintiff brings claims for fraud (Count I) and negligent misrepresentation (Count II), but fails to identify *any* misrepresentation allegedly made by NYLIAC at the time he purchased the Policy, or a year later when he invested in Tremont.

(2)  Moreover, given the existence of numerous disclaimers in the Policy and offering materials, Plaintiff fails to allege how he could have reasonably relied on any misrepresentation that was (or could have been) made by NYLIAC regarding his investment in the Policy or the Fund.

(3)  Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine.

(4)  Plaintiff's claim for unjust enrichment (Count III) fails because express contractual provisions plainly govern the subject matter of Plaintiff's claim.

---

[1]      The fact that NYLIAC is a subsidiary of New York Life, without more, provides no basis to name New York Life as a defendant in this action. All claims against New York Life should be dismissed on that ground alone, and we will assume for the purposes of this motion that all allegations in the Complaint are being asserted against NYLIAC.

(5) Plaintiff claims breach of fiduciary duty (Count IV) without alleging any facts to support his allegation that NYLIAC stood in a "fiduciary" or "special" relationship to Plaintiff. Plaintiff also fails to allege facts that would show that NYLIAC breached any fiduciary duty.

(6) Plaintiff's claim for breach of the implied covenant of good faith and fair dealing (Count VI) is deficient because Plaintiff does not (and cannot) allege that New York Life breached a contract with Plaintiff. Nor does Plaintiff allege any facts supporting his claim that New York Life acted in "bad faith."

(7) Both the negligent misrepresentation and breach of fiduciary duty claims are barred by the applicable statute of limitations.

(8) Plaintiff's negligent misrepresentation, breach of fiduciary duty, unjust enrichment and breach of the implied covenant of good faith and fair dealing claims are all preempted by New York's "blue sky" law, the Martin Act.

For these and other reasons stated herein, Plaintiff's Complaint should be dismissed in its entirety as to NYLIAC and New York Life.[2]

## III. STANDARD

In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *accord SEC v. Simpson Capital Mgmt.*, 586 F. Supp. 2d 196, 199 (S.D.N.Y. 2008) (citing *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007)). Federal Rule 8 "demands more than an unadorned, the-defendant-unlawfully-

---

[2]     Count V of the Complaint is not directed against NYLIAC or New York Life.

harmed me accusation"; "naked assertions devoid of further factual enhancement" are insufficient. *Ashcroft,* 129 S. Ct. at 1949.[3]

In addition to meeting the Rule 8 pleading requirement, a complaint sounding in fraud must satisfy the more stringent pleading requirement of Fed. R. Civ. P. 9(b). Pursuant to Rule 9(b), a fraud claim "must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui,* 91 F.3d 337, 347 (2d Cir. 1996) (citations omitted)). The policy behind Rule 9(b) is "(1) to provide a defendant with fair notice of plaintiff's claim, (2) to safeguard a defendant's reputation from 'improvident charges of wrongdoing' and (3) to protect against the institution of a strike suit." *Id.* (citing *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir. 1995)).

Further, a Complaint on a motion to dismiss "is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted). Plaintiff alleges that:

> Defendants solicited investments in the Tremont Fund through a Variable Life Insurance Policy Private Offering Memorandum, a private placement memorandum ("PPM"), a subscription agreement ("Subscription Agreement") and a limited partnership agreement ("LP Agreement"), among other offering materials. Those documents . . . contained substantially the same information as alleged herein.

---

[3]     In *Ashcroft*, the Supreme Court clarified that the pleading standard described in *Twombly* governs the pleadings in all civil actions, 129 S. Ct. at 1953, and set forth a two-prong approach to determining whether a pleading can survive a motion to dismiss. First the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Second, the Court should seek to identify well-pleaded factual allegations and then determine whether they plausibly give rise to an entitlement to relief. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - that the pleader is entitled to relief.'" *Id.* at 1950.

Compl. ¶ 61. Accordingly, the documents listed in Paragraph 61 of the Complaint and elsewhere are properly considered by the Court in deciding this motion. *See, e.g., Feinman v. Schulman Berlin & Davis,* 677 F. Supp. 168, 170 n.1 (S.D.N.Y. 2002) (considering, on motion to dismiss, the contents of a limited partnership private placement memorandum and a private offering memorandum where plaintiffs referred to these documents "as the source of the fraudulent statements"). Similarly, the Plaintiff's Individual Variable Life Insurance Policy (the "Policy") is properly considered by the Court, because it is integral to the Complaint. *See, e.g.,* Compl. ¶ 1 ("Plaintiff files this action based upon his purchase of a variable life insurance ('VUL') policy"); *Sira,* 380 F.3d at 67.

## IV.    ALLEGATIONS AGAINST NEW YORK LIFE

The only non-conclusory allegations in the Complaint that refer specifically to NYLIAC are the following:

- Plaintiff purchased a VUL policy on May 12, 2003 from NYLIAC. (Compl. ¶ 1)

- NYLIAC is a subsidiary of New York Life and both are New York corporations. (Compl. ¶ 16)

- Plaintiff purchased a NYLIAC policy with a face amount of $6,394,951 and an initial premium of $928,044.90. (Compl. ¶ 32)

- In letters dated December 18 and 23, 2008, NYLIAC informed Plaintiff that Tremont through its fund-of-funds structure had exposure to Madoff of roughly 22%. (Compl. ¶¶ 75-76)[4]

To gloss over the fact that the Complaint contains no specific allegations of wrongdoing against NYLIAC, Plaintiff seeks to lump NYLIAC together with "Tremont, Rye, Rye Funds, Oppenheimer, MassMutual LLC and MassMutual," which "are sometimes referred to herein

---

[4]    All other allegations against NYLIAC are wholly conclusory. *See, e.g.,* Compl. ¶¶ 38, 39, 40, 41, 81, 103, and 106-113.

collectively as the 'Defendants.'" (Compl. ¶ 31)  To the extent that the Complaint identifies any purported misrepresentations, or contains any specific allegations of wrongdoing, they are all alleged against the other defendants.  *See, e.g.,* Compl. ¶¶ 62-74.

Plaintiff's Complaint does not meet the Rule 8 test with respect to NYLIAC, much less the more stringent pleading requirements of Rule 9(b).

## V.    BACKGROUND

### A.    The Policy

Plaintiff F. Daniel Prickett purchased his variable universal life insurance policy from NYLIAC in 2003.  Compl. ¶ 1.  Plaintiff applied for his policy on April 25, 2003, and was issued Individual Variable Life Policy numbered 56803889 (hereafter the "VUL Policy" or "Policy") on May 12, 2003.  *Id.*; *see also* Ex. 1 to the Declaration of Jeffrey L. Williams ("Williams Decl.") (attaching a true and correct copy of Plaintiff's Application and Policy).[5]  In addition to the insurance component of the Policy, Plaintiff had the opportunity to accumulate tax-free "cash value" within the Policy.  Compl. ¶¶ 33-35.  Plaintiff's cash value could be invested "in a choice of separate accounts, similar to mutual funds." *Id.* ¶ 33.  The variable nature of these investments comprises the "variable" aspect of the Policy.  *Id.* ¶¶ 34-35.[6]  The Policy contains no warranties or representations that the Investment Options available under the Policy were safe investments or did not involve risk or that they were selected on that basis.  To the contrary, the Policy warns on the first page that values may increase or decrease and are not guaranteed.

---

[5]     The Policy includes the Application, the Policy and any riders or endorsements thereto. *See* Policy at 22 ¶ 23 (defining the "Contract").

[6]     Plaintiff's policy was also a "universal" life insurance policy, meaning that Plaintiff had flexibility in making premium payments. *See, e.g.,* Compl. ¶ 34.

At the time that he applied for the Policy, Plaintiff received the Variable Life Insurance Policy Private Offering Memorandum (the "Offering Memorandum" or "O.M."). *See* Compl. ¶ 61; Ex. 2 to Williams Decl. at i. The Offering Memorandum listed a dozen investment choices (deemed "Portfolio Options") available for investment under the Policy. *See* O.M. at 8, SP-11. As Plaintiff was made aware, the Policy was not registered with the SEC, and neither were the Subaccounts and Separate Accounts that held Plaintiff's investments under the Policy. *See, e.g.,* Policy at 5 ("The Policies and the Subaccounts of the Separate Account have not been registered with the SEC in reliance on exemptions with respect to offers to persons who meet certain suitability and financial standards.").

In May 2004, by and through the investment component of his Policy, Plaintiff elected to invest in the Tremont Opportunity Fund III, formerly known as the American Masters Opportunity Insurance Fund, L.P. Compl. ¶¶ 1, 36. In connection with his investment in Tremont, Plaintiff received the American Masters Opportunity Insurance Fund, L.P. Confidential Private Placement Memorandum (the "Tremont PPM"). Compl. ¶ 61. A true and correct copy of the Tremont PPM received by Plaintiff is attached as Exhibit 3 to the Williams Decl.

**B.     Plaintiff Is A Sophisticated Investor.**

In his Application, Plaintiff represented to NYLIAC that he was a "Banker - Managing Executive" at Wachovia. *See* Application, Ex. 1 to Williams Decl. at 2. Prior to issuance of the Policy, moreover, Plaintiff completed a questionnaire demonstrating his "FINANCIAL MEANS AND SOPHISTICATION." *See* O.M. at i (emphasis in original). The Offering Memorandum states that the "Policy is suitable only for individuals and entities of substantial economic means," O.M. at iii, who must demonstrate their "financial means and sophistication," O.M. at i, within the meaning of the Securities Act of 1933 and the Investment Advisers Act of 1940.

O.M. at 5. Plaintiff's Policy was issued with a face amount of $6,394,951.00 and an initial premium of $928,044.90. Compl. ¶ 32.

### C. Plaintiff Was Urged By NYLIAC To Seek Independent Advice Regarding His Investment In The Policy.

NYLIAC advised Plaintiff to "seek independent advisory services with regard to the legal, economic, tax and related matters concerning the purchase of the Policy." O.M. at iii; *id.* at 33 ("You must make Your own evaluation of the risk of investing in the Policy"). Plaintiff was also warned that the funds available under the Policy might not achieve their investment objectives. *See id.* at 8 ("THERE CAN BE NO ASSURANCE THAT ANY FUND WILL ACHIEVE ITS INVESTMENT OBJECTIVE") (emphasis in original); and 33 ("All securities investments involve the risk of loss of capital. The securities to be purchased and traded by the Funds and the investment techniques and strategies to be employed by the Funds may increase this risk. The theories behind the investment strategy may be untested and may be difficult or impossible to execute on. There can be no assurance that a Fund will not incur losses.").[7]

### D. Plaintiff Expressly Acknowledged That He Had Not Relied On Any Statement Made By NYLIAC Outside Of The Offering Memorandum.

Plaintiff expressly acknowledged that: "No oral or written information in whatever form is to be employed in the offering of the Policy except for this Memorandum, the Policy, and information provided by registered representatives authorized to sell the Policy in response to any questions by You. No person has been authorized to make any representations or give any information not contained herein or inconsistent herewith." O.M. at iii.

---

[7] Plaintiff was repeatedly informed that investing in the Policy was risky – so risky that he might lose his entire investment. *See, e.g.,* Offering Memorandum at ii "You bear the entire investment risk under the Policy." (emphasis in original); *id.* at iii (**Investing in a policy involves risks including the possible loss of Your entire investment.**") (emphasis in original).

**E.** **Prior To Investing In The Tremont Fund, Plaintiff Was Further Advised Of The High Degree Of Risk, Was Urged Again To Consult With His Own Advisers, And Was Informed That Tremont Partners, Not NYLIAC, Selected The Investments On Behalf Of The Fund.**

The Tremont PPM Plaintiff received advised of the following:

A NUMBER OF FACTORS MATERIAL TO A DECISION WHETHER TO INVEST IN THE INTERESTS HAVE BEEN PRESENTED IN THIS MEMORANDUM IN SUMMARY OR OUTLINE FORM ONLY IN RELIANCE ON THE FINANCIAL SOPHISTICATION OF THE OFFEREES. EACH PROSPECTIVE INVESTOR IS URGED TO SEEK INDEPENDENT INVESTMENT, LEGAL AND TAX ADVICE CONCERNING THE CONSEQUENCES OF INVESTING IN THIS PARTNERSHIP. Tremont PPM at E-2.

Investment in the Partnership is speculative and involves a high degree of risk. . . . Investment returns and principal values will fluctuate, so that an investor's interest, when withdrawn, may be worth more or less than its original cost, or potentially suffer a total loss of investment. *Id.* at vi.

Each prospective purchaser is urged to consult with its own advisers to determine the suitability of an investment in the Interests. . . . Each purchaser of an interest is required to further represent that, after all necessary advice and analysis, its investment in an Interest is suitable and appropriate, in light of the foregoing considerations. *Id.* at 17.

Moreover, Plaintiff was made aware that Tremont Partners, not NYLIAC, was responsible for selecting and monitoring the investments made by Tremont. *See id.* at iii ("As General Partner, Tremont Partners, Inc. will be responsible for managing the day-to-day operations of the Partnership. The General Partner is responsible for selecting the Partnership's Managers, allocating assets among Managers and monitoring the Partnership's investments."). *See also* Tremont PPM at iii, 28 & 29 ("The Limited Partners [like NYLIAC] cannot take part in the management or control of the Partnership's business which is the sole responsibility of the General Partner"; "The Limited Partners . . . do not have any authority or power to act for or bind the Partnership.").

## VI.    ARGUMENT

### A.    Plaintiff Fails To State A Claim For Fraud.

The elements of a common law fraud claim are "(1) false representation of a material fact; (2) intent to defraud; (3) reasonable reliance on the representation; and (4) damaged caused by such reliance." *Scone Invs., L.P. v. Am. Third Market Corp.,* No. 97-3802, 1998 WL 205338, at *10 (S.D.N.Y. April 28, 1998) (citation omitted).  As against NYLIAC, Plaintiff's fraud claim fails to allege facts to support the necessary elements of this claim.

### 1.    Plaintiff identifies no misrepresentation by NYLIAC.

First, Plaintiff alleges no fraudulent statement attributable to NYLIAC.  At most, Plaintiff makes the bald allegation that NYLIAC "endorsed the [Plaintiff's] investments in the Tremont Fund." Compl. ¶ 39.  But Plaintiff points to no "endorsement" by NYLIAC, and documents integral to the Complaint show that no such endorsement was ever made.

To the extent that the Complaint attempts to identify specific misrepresentations, all such misrepresentations are alleged to have been made by other defendants, not NYLIAC.  *See* Compl. at ¶¶ 62-74.[8]  Thus, Plaintiff has failed to allege the first element of fraud and his claim against NYLIAC accordingly should be dismissed.  *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 252-54 (S.D.N.Y. 2008) (dismissing fraud claim where plaintiff failed to allege any legally cognizable misrepresentation); *Bavaria Int'l Aircraft Leasing GmbH v. Clayton, Dubilier & Rice, Inc.*, No. 03-0377, 2003 WL 21767739, at *3 (S.D.N.Y. July 30, 2003) (same).

---

[8]    This problem with Plaintiff's fraud claim is crystallized by reviewing Plaintiff's Aiding and Abetting Breaches of Fiduciary Duty claim, Count V, to which New York Life is not a party.  In Count V, Plaintiff alleges that defendants Tremont, Oppenheimer, and MassMutual, and not NYLIAC, were responsible for "the content and dissemination of the various statements that Plaintiff contends are false and misleading." Compl. ¶ 116.

### 2. Plaintiff could not have reasonably relied on any purported misrepresentation or omission by NYLIAC.

Second, Plaintiff does not allege any facts to support an allegation that he reasonably relied on a misrepresentation made by NYLIAC. Nor could he, given the disclaimers and other statements in the offering documents. Far from "endorsing" Plaintiff's investments in Tremont, NYLIAC repeatedly advised Plaintiff that he could lose his "entire investment," that he should make his "own evaluation of the risk of investing in the Policy," that he should consult his own advisers regarding his investment, and that NYLIAC was not involved in selecting or monitoring the underlying portfolio managers of the Tremont Fund. *See* O.M. at ii, iii, 5, 8, 33 and Tremont PPM at iii, 28 & 29. Thus, Plaintiff could not have reasonably relied on the "endorsement" of the Fund by NYLIAC, even if it had made any such endorsement, which it did not. *See, e.g., Feinman*, 677 F. Supp. at 170 ("Reliance on statements which are directly contradicted by the clear language of the offering memorandum through which plaintiffs purchased their securities cannot be a basis for a federal securities law fraud claim."); *Adams v. Intralinks, Inc.*, No. 03-cv-5384, 2004 WL 1627313, at *7 (S.D.N.Y. July 20, 2004) (holding same and granting motion to dismiss "[b]ecause plaintiffs cannot plead reliance"); *Sable v. Southmark/Envicon Capital Corp.*, 819 F. Supp. 324, 339 (S.D.N.Y. 1993) (granting motion to dismiss and holding that "plaintiffs cannot rely on statements that the PPMs contradict").

### 3. Plaintiff fails to adequately allege that NYLIAC acted with fraudulent intent.

Plaintiff's fraud claim against NYLIAC rests on the allegation that "Defendants" purportedly "fail[ed] to investigate and act[ed] in willful blindness towards . . . signals of the illegitimate nature of BMIS." *See* Compl. ¶ 78. The scienter element of fraud can be established by alleging facts that: "show that defendants had both motive and opportunity to commit fraud,

11

or . . . that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted). Plaintiff has alleged no facts that that NYLIAC had any motive or opportunity for committing fraud. Further, in merely alleging that NYLIAC failed to investigate "signals of the illegitimate nature of BMIS," Plaintiff has not pled sufficient facts that would demonstrate "conscious misbehavior or recklessness" on the part of NYLIAC. *See Hart v. Internet Wire, Inc.,* 50 Fed. App'x 464, 466 (2d Cir. 2002) ("plaintiffs have failed adequately to plead § 10(b) scienter in alleging that defendants recklessly ignored or failed to investigate 'red flags'"); *In re Bayou Hedge Fund Litig.,* 534 F. Supp. 2d 405, 417 (S.D.N.Y. 2007) ("The failure to conduct due diligence is not the same thing as knowing of or closing one's eyes to a known "danger," or participating in the fraud.").[9] With respect to the failure to uncover the Madoff fraud, Plaintiff cannot dispute that Tremont, not NYLIAC, made the decision to invest in the Rye funds, which, in turn, made the decision to invest with Madoff. NYLIAC, as a limited partner in Tremont, was far removed from those decisions. Therefore, Plaintiff has failed to allege sufficient facts to support a claim that NYLIAC acted with the requisite scienter. Accordingly, his fraud claim should be dismissed.

### 4. Plaintiff's fraud claim fails to meet Rule 9(b)'s heightened pleading requirements.

Finally, Plaintiff's Complaint completely fails to describe in "detail" the who, what, when, where, and why of New York Life's alleged fraud. *See Harsco Corp.,* 91 F.3d at 347; *Spira v. Curtin,* No. 97-2637, 2001 WL 611386, at *3-4 (S.D.N.Y. June 05, 2001) (Under Rule

---

[9]       *See also Kalnit v. Eichler,* 264 F.3d 131, 142 (2d Cir. 2001) ("reckless conduct . . . is at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it") (citation omitted).

9(b), plaintiff "must adequately specify statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements, [and] [w]here multiple defendants are involved, the complaint is required to describe specifically each defendant's alleged participation in the fraud."); *O & G Carriers, Inc. v. Smith*, 799 F. Supp. 1528, 1543-44 (S.D.N.Y. 1992) (dismissing fraud claims pursuant to Rule 9(b)).

In an effort to obscure the plain deficiencies in his fraud claim, Plaintiff incorporates each and every allegation made in the Complaint into Count I. *See* Compl. ¶ 88 ("Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein."). This "shotgun" or "grab bag" pleading style, however, cannot serve to satisfy Rule 9(b)'s requirements. *See, e.g., Scone Invs.*, 1998 WL 205338, at *7 (dismissing fraud claim because plaintiff's "shotgun pleading contravenes Rule 9(b)") (citations omitted); *Feinman*, 677 F. Supp. at 172 (dismissing fraud claim under Rule 9(b) that suffers from the "'grab bag' pleading style"). Further, Plaintiff's fraud claim improperly fails to distinguish which fraud allegation applies to which defendant (*see, e.g.,* Compl. ¶ 90 ("statements and representations were made by the Defendants")), and for this reason also fails to meet Rule 9(b)'s requirements. *See Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033, 1040 (S.D.N.Y. 1993) ("where multiple defendants are charged with fraud, the complaint must be specific as to the nature of each defendant's alleged participation in the fraud"); *see also In re Blech Sec. Litig.*, 961 F. Supp. 569, 580 (S.D.N.Y. 1997) ("Rule 9(b) is not satisfied by a complaint in which defendants are clumped together in vague allegations.").

## B.    Plaintiff's Negligent Misrepresentation Claim Should Be Dismissed.

In order to state a claim for negligent misrepresentation, Plaintiff must allege that New York Life: (1) owed Plaintiff a duty, as a result of a special relationship, to provide plaintiff with correct information; (2) made a false representation that it should have known was incorrect; (3) that the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) that the plaintiff intended to rely and act upon such information; and (5) that the plaintiff reasonably relied on the information to his or her detriment. *See Musalli Factory For Gold & Jewelry v. JPMorgan Chase Bank, N.A.*, No. 08-1720, 2009 WL 860635, at *15 (S.D.N.Y. March 31, 2009).

Plaintiff's negligent misrepresentation claim fails for the same reasons that his fraud claim fails: Plaintiff does not identify any affirmative misrepresentation made by NYLIAC about the prudence of investing in the Policy or the Tremont Fund and, for the reasons discussed *supra* in Section VI.A.2., even if Plaintiff had identified a purported misrepresentation, he could not have "reasonably relied" on such a misrepresentation. *See, e.g., Matsumura*, 542 F. Supp. 2d at 252-54 (dismissing claim for negligent misrepresentation because plaintiff failed to allege any legally cognizable misrepresentation); *Bavaria Int'l Aircraft*, 2003 WL 21767739, at *3 (same); *Musalli*, 2009 WL 860635, at *15 (dismissing negligent misrepresentation claim "because [the plaintiff] had no reasonable justification for relying upon the representations by [the defendant]"). The negligent misrepresentation claim also fails for the additional grounds discussed below.

### 1.    NYLIAC owed no special duty to Plaintiff.

"Under New York law, the existence of a fiduciary duty is a prerequisite to recovery for negligent misrepresentation." *BHC Interim Funding, L.P. v. Finantra Capital, Inc.,* 283 F. Supp.

2d 968, 990-91 (S.D.N.Y. 2003) (dismissing negligent misrepresentation claim where defendant

owed no fiduciary duty of disclosure) (citations omitted)); *Madera v. Metropolitan Life Ins. Co.*,

No. 99-4005, 2002 WL 1453827, at *8 (S.D.N.Y. July 3, 2002) (same). As discussed in Section

C below, no fiduciary duty existed here. Therefore, the negligent misrepresentation claim fails.

**2. Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine.**

Plaintiff seeks to recover economic damages -- his lost investment -- through his

negligent misrepresentation claim. *See* Compl. ¶ 99 ("Plaintiff has sustained damages" and "lost

a substantial part of his investment in an amount yet to be determined"). The gravamen of

Plaintiff's claim is that New York Life, as issuer of the Policy, breached its duty of care to

Plaintiff with respect to Plaintiff's investment in the Policy and the Tremont Fund. *See* Compl.

¶¶ 96-99. Any duty that New York Life owed Plaintiff, is governed by the terms of the Policy.

Thus, Plaintiff impermissibly "seeks compensation for [his economic losses] based on [New

York Life's] alleged failure to perform its contractual responsibilities the way [Plaintiff] had

expected," and his claim should be dismissed pursuant to the economic loss doctrine. *See, e.g.,*

*Carmania Corp., N.V. v. Hambrecht Terrell Intern.*, 705 F. Supp. 936, 939 (S.D.N.Y. 1989)

(Concluding, on motion to dismiss, that the economic loss doctrine barred negligence claim:

"damages, of course, are precisely the 'economic losses' that a New York plaintiff may only

recover in a contract action."); *see also Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220,

226 (S.D.N.Y. 2001) (dismissing misrepresentation claim under the economic loss doctrine

because Plaintiff's claim sounded "in contract and not in tort").

### 3. Plaintiff's negligent misrepresentation claim fails to satisfy Rule 9(b)'s pleading requirements.

In addition, the negligent misrepresentation claim, which incorporates the allegations of the fraud claim (Compl. ¶95), fails to plead facts with the particularity required by Rule 9(b). *See Arnold Chevrolet v. Tribune Co.,* No. 04-3097, 2007 WL 2743490, at *6 (E.D.N.Y. Sept. 17, 2007) (Rule 9(b) applied to plaintiffs' negligent misrepresentation claim because it was "based upon the same set of facts" as plaintiffs' fraud claim).

### C.   Plaintiff's Breach of Fiduciary Duty Claim Should Be Dismissed.

In order to state a claim for breach of fiduciary duty in New York, Plaintiff must allege: (1) the existence of a fiduciary relationship between New York Life and Plaintiff; (2) a knowing breach of the duty that the relationship imposes; and (3) damages suffered. *Johnston v. Nextel Communications, Inc.*, No. 07-8473, 2009 WL 928131, at *3 (S.D.N.Y. March 31, 2009).

### 1.   There is no fiduciary relationship between New York Life and Plaintiff.

It is well-established under New York law that an insurer does not owe fiduciary duties to its insured as a matter of law, except where the insurer owes the insured a duty to defend or when an insured demonstrates the existence of a special relationship. *See Edelman v. O'Toole-Ewald Art Assocs., Inc.*, 28 A.D.3d 250, 251 (N.Y. App. Div. 2006) ("Normally, insurance companies do not owe a fiduciary duty to their insureds, absent a showing of some special relationship."); *Fiala v. Metro. Life Ins. Co.*, 6 A.D.3d 320, 322 (N.Y. App. Div. 2004) ("an insurance company does not owe its policyholder a common-law fiduciary duty except when it is called upon to defend its insured"); *Silverman v. Pittsburgh Life & Trust Co.,* 176 A.D. 749 (1917) (same); *Uhlman v. New York Life Ins. Co.,* 17 N.E. 363, 364-65 (1888) (same). This principle has been applied in New York in situations where the insurer issued policies that accumulate "cash value,"

similar to the one purchased by Plaintiff. *See, e.g., Gaidon v. Guardian Life Ins. Co. of Am.,* 255 A.D.2d 101, 102 (N.Y. App. Div. 1998), *aff'd in part,* 725 N.E.2d 598 (1999).

Plaintiff alleges no facts to support his contention that New York Life owed him fiduciary duties. Plaintiff does not even purport to allege a "special relationship" between himself and New York Life, let alone the facts necessary to establish such a relationship. Rather, he relies solely on unsupported legal conclusions. *See* Compl. ¶¶ 38, 39, & 41 ("as Plaintiff's insurer under Plaintiff's VUL insurance policy, [New York Life] owed Plaintiff fiduciary duties"); ("New York Life breached its fiduciary duties to Plaintiff"); (New York Life "violated [its] fiduciary duties" to Plaintiff). The Court is not constrained to accept Plaintiff's legal conclusion that New York Life owed Plaintiff fiduciary duties simply because Plaintiff alleges it. *See Ashcroft,* 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Port Dock & Stone Corp.,* 507 F.3d at 121; *BHC Interim Funding,* 283 F. Supp. 2d at 986 (dismissing breach of fiduciary duty claim because plaintiff did not allege facts that indicated the existence of a fiduciary relationship).

Therefore, Plaintiff's claim for breach of fiduciary duty should be dismissed because Plaintiff does not, and cannot, allege the first element of the claim.

### 2. Plaintiff fails to allege facts to support the second element of a breach of fiduciary duty claim.

In the breach of the fiduciary duty count (Count IV), plaintiff again seeks to disguise the fact that he cannot state a claim against NYLIAC by lumping NYLIAC together with Tremont. He alleges in conclusory fashion that NYLIAC and Tremont breached their fiduciary duties by investing the assets of Plaintiff in the Rye Funds and Madoff, failing to ensure that the investments were appropriate, failing to use reasonable oversight with respect to those investments, and failing to monitor Madoff's financial reporting. Compl. ¶¶ 107-110. However,

Plaintiff fails to allege facts that would demonstrate that a limited partner to the Fund breached a fiduciary duty to oversee the underlying investments of the Fund.

### 3. Plaintiff's breach of fiduciary duty claim fails to satisfy Rule 9(b)'s pleading requirements.

To the extent that Plaintiff's breach of fiduciary duty claim sounds in fraud, it should be dismissed for failure to comply with Rule 9(b). *See, e.g., Brody v. Brody*, No. 07-7981, 2009 WL 436404, at *4 n.3 (S.D.N.Y. Feb. 17, 2009) (Rule 9(b) applies to claims for breach of fiduciary duty "where the conduct underlying that claim is based in fraud.") (citations omitted). Plaintiff alleges that New York Life and Tremont followed a "wanton course of conduct . . . that was reckless, willful and without regard to the rights of Plaintiff." Compl. ¶ 112. These allegations sound in fraud. Like Plaintiff's claims for fraud and negligent misrepresentation, Plaintiff's breach of fiduciary duty claim lacks the requisite specificity. Indeed, Plaintiff alleges no facts that would establish that New York Life owed him a fiduciary duty. Moreover, like Plaintiff's fraud claim, Plaintiff's breach of fiduciary duty claim improperly "lumps together" all the allegations of the Complaint by relying on "every allegation contained above as if fully set forth" therein. *Id.* ¶ 105. Count IV thus fails to satisfy Rule 9(b)'s pleading requirements and should be dismissed. *See Spira*, 2001 WL 611386, at *3-4 (dismissing breach of fiduciary duty claim because the allegations failed to comply with Rule 9(b)); *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97-4978, 1999 WL 47223, at *6 (S.D.N.Y. February 3, 1999) (dismissing claim for breach of fiduciary duty because the allegations, "stated in conclusory and general terms," failed to meet the strictures of Rule 9(b)); *see also Apace Comm'ns, Ltd. v. Burke*, 522 F. Supp. 2d 509, 516-19 (W.D.N.Y. 2007) (dismissing plaintiffs' breach of fiduciary duty claim because plaintiffs "ha[d] utterly failed to comply with the pleading requirements of Rule 9(b)").

**D.    Plaintiff Fails To State A Claim For Unjust Enrichment Because A Valid And Enforceable Written Agreement Covers The Subject Matter Of Plaintiff's Claims.**

In New York, "[t]he existence of a valid and enforceable written contract governing a particular subject matter precludes recovery in quasi-contract or unjust enrichment for occurrences or transactions arising out of the same matter." *CBS Broad., Inc. v. Jones*, 460 F. Supp. 2d 500, 506 (S.D.N.Y. 2006) (citations omitted); *Eagle Comtronics, Inc. v. Pico Prods., Inc.*, 682 N.Y.S.2d 505, 506 (N.Y. App. Div. 1998) (granting defendant's motion to dismiss where there was "a valid and enforceable contract between the parties, and the subject matter of the unjust enrichment claim [wa]s covered by the contract"); *Bazak Int'l Corp. v. Tarrant Apparel Group*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004) (same).

As between Plaintiff and NYLIAC, the provisions of the Policy govern the fees and charges that may be assessed. *See* Policy §§ 1.7 (Policy Charges Deducted From Premium Payments); 1.8. (Deductions from Account Value); 1.9 (Cost of Insurance Rates); 5.1 (Calculation of Premium Loads); 8 (Charges); 13.2 (Future Premium and Charge Allocations); *see also* Offering Memorandum at 14-16 (Charges); 18-19 (Premium and Charge Allocation). Accordingly, Plaintiff's claim for unjust enrichment should be dismissed because express and enforceable written agreements govern the subject matter of Plaintiff's claim.

**E.    Plaintiff's Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Should Be Dismissed.**

**1.    Plaintiff fails to allege sufficient facts to support this claim.**

Plaintiff alleges, in an entirely conclusory manner, that "New York Life acted in a manner that destroyed or injured the right of the Plaintiff to receive the fruits of the contract." Compl. ¶ 121. This allegation is devoid of any facts that indicate bad faith on the part of New York Life. Conclusory allegations of a party's failure to act in good faith alone are insufficient;

specific factual allegations of a party's bad faith acts are required to state a claim. *See Prospect Street Ventures I, LLC, v. Eclipsys Solutions Corp.,* 804 N.Y.S.2d 301, 302 (N.Y. App. Div. 2005) (affirming dismissal of a complaint alleging breach of covenant of good faith and fair dealing because the complaint was "devoid of any specific factual allegations" of defendant's bad faith); *see also Yucyco Ltd. v. Rep. of Croatia,* No. 96-5559, 1997 WL 728173, at *2 (S.D.N.Y. Nov. 19, 1997) (granting defendant's 12(b)(6) motion because the complaint "fails to describe the specific actions on the part of particular defendants that allegedly breached the [covenant of good faith and fair dealing]"). Accordingly, Plaintiff's claim should be dismissed.

### 2. Plaintiff's claim fails because he does not (and cannot) allege a breach of contract, and because it is duplicative of his other deficient claims.

Plaintiff's claim for the breach of the implied covenant of good faith and fair dealing should be dismissed because Plaintiff does not (and cannot) allege that New York Life breached a contract with Plaintiff. *See, e.g., Triton Partners LLC v. Prudential Sec. Inc.,* 752 N.Y.S.2d 870 (N.Y. App. Div. 2003) (dismissing breach of covenant of good faith and fair dealing claim that was an attempted substitute for a non-viable breach of contract claim); *Cohen v. Nassau Educators Fed. Credit Union,* No. 15094-05, 2006 WL 1540324, at *4 (N.Y. Sup. Ct. May 10, 2006) (dismissing claim because "New York does not recognize a separate cause of action for violation of the implied covenant of good faith and fair dealing"). In any event, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because it is grounded in the same insufficient allegations set forth in Plaintiff's claims for fraud, negligent misrepresentation, unjust enrichment, and breach of fiduciary duty. *See* Compl. ¶ 119; *Sutton Assocs. v. Lexis-Nexis,* 761 N.Y.S.2d 800, 804 (N.Y. Sup. Ct. 2003) (dismissing covenant of good faith and fair dealing claim because it was "duplicative of and merely recasts [the plaintiff's] unavailing fraud theory as a purportedly independent 'implied duty' claim").

**F.     Plaintiff's Negligent Misrepresentation And Breach Of Fiduciary Duty Claims Are Time-Barred.**

**1.     Plaintiff's negligent misrepresentation claim is time-barred.**

To the extent that Plaintiff's allegations do not sound in fraud, *see, e.g.,* Compl. ¶ 96 (Defendants owed Plaintiff a duty "to act with reasonable care"), New York's three-year statute of limitations applies. *See* N.Y. C.P.L.R. § 214; *Glonti v. Stevenson*, No. 08-8960, 2009 WL 311293, at *6 (S.D.N.Y. Feb. 6, 2009) (applying three-year statute of limitations in dismissing a negligent misrepresentation claim as time-barred); *Colon v. Banco Popular N. Am.*, 874 N.Y.S.2d 44 (N.Y. App. Div. 2009) (dismissing claim for negligent misrepresentation as time-barred under three-year statute of limitations).[10]

In New York, claims for negligent misrepresentation accrue when the allegedly tortious conduct is committed. *See Glonti*, 2009 WL 311293, at *6; *Pecoraro v. M & T Bank Corp.*, 782 N.Y.S.2d 481, 482 (N.Y. App. Div. 2004). Plaintiff alleges that he relied on Defendants' purported misrepresentations in deciding to purchase the Policy and invest in the Tremont Fund. *See* Compl. ¶ 96. Any alleged misrepresentation by New York Life, therefore, occurred in April or May of 2003 when Plaintiff applied for and was issued his Policy (Compl. ¶ 1), or in May 2004, when Plaintiff invested in the Tremont Fund (Compl. ¶ 36). Plaintiff filed this lawsuit on March 31, 2009 (Compl. at 33), almost six-years after purchasing the Policy, and five-years after investing in the Tremont Fund. Accordingly, to the extent that it does not sound in fraud,

---

[10]     "An affirmative defense [including a statute of limitations defense] may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 -75 (2d Cir. 1998) (affirming dismissal of claim based on the operation of an affirmative defense) (citations omitted); *see also Alston v. Microsoft Corp.*, No. 08-3547, 2009 WL 1116360, at *7 (S.D.N.Y. Apr. 27, 2009) (dismissing plaintiff's claims because they were time-barred).

Plaintiff's claim for negligent misrepresentation is time-barred by New York's three-year statute of limitations and should be dismissed.

### 2. Plaintiff's claim for breach of fiduciary duty is time-barred.

Plaintiff alleges that he "sustained damages" as a result of Defendants' alleged breaches of fiduciary duty. Compl. ¶ 111. The statute of limitations for Plaintiff's breach of fiduciary duty claim is three-years to the extent that Plaintiff seeks money damages and his claim does not sound in fraud. *See* N.Y. C.P.L.R. § 214(4).[11] A claim for breach of fiduciary duty "accrues upon the occurrence of the alleged wrongful conduct." *See, e.g., Savino v. Lloyds TSB Bank, PLC*, 499 F. Supp. 2d 306, 312 (W.D.N.Y. 2007) (dismissing breach of fiduciary duty claim as time-barred under three-year statute of limitations); *see also Pacific Health Advantage v. Cap Gemini Ernst & Young*, No. 07- 3725, 2007 WL 2619052, at * 3 (S.D.N.Y. Sept. 6, 2007) (citation omitted) (same). Plaintiff alleges that he invested in the Tremont Fund in May, 2004. Compl. ¶ 36. Plaintiff filed this lawsuit on March 31, 2009, almost five-years after investing in the Tremont Fund. *Id.* at 33.

Accordingly, Plaintiff's claim for breach of fiduciary duty is time-barred by New York's three-year statute of limitations, N.Y. C.P.L.R. § 214(4). *See Sotheby's Fin. Servs., Inc. v. Baran*, 107 Fed. App'x. 235, 238 (2d Cir. 2004) (affirming dismissal of a breach of fiduciary duty claim as time-barred); *Gaind v. Pierot*, No. 04-9407, 2006 WL 846268, at *7 (S.D.N.Y. March 31, 2006) (dismissing breach of fiduciary duty claim as time-barred).

---

[11]    Plaintiff purports to base at least some of his breach of fiduciary claim on a failure to exercise due care. *See, e.g.,* Compl. ¶¶ 106, 108 (Defendants allegedly owed Plaintiff duties of "due care" and "reasonable oversight").

### G. The Bulk Of Plaintiff's Claims Are Preempted By The Martin Act.[12]

Plaintiff's breach of fiduciary duty, negligent misrepresentation, unjust enrichment, and breach of the implied covenant of good faith and fair dealing claims should be dismissed on the independent ground that they are preempted by New York's "blue sky" law, the Martin Act. The Martin Act, New York General Business Law Section 352(1), preempts common-law claims that relate to alleged "fraudulent and deceitful practices in the distribution, exchange, sale and purchase of securities" but that do not "require proof of intent to defraud or scienter." *See Granite Partners,* 17 F. Supp. 2d at 291 (citations omitted). The Martin Act, moreover, covers "more than the actual purchase or sale of securities," it covers claims pertaining to purported "investment advice." *See In re Bayou Hedge Fund Litig.,* 534 F. Supp. at 422; *Sedona Corp. v. Ladenburg Thalmann & Co.,* No. 03- 3120, 2005 WL 1902780, at *21 (S.D.N.Y. Aug. 9, 2005). The Martin Act's reach is "broad" and the statute is "liberally construed to give effect to its remedial purpose." *First Energy Leasing Corp. v. Attorney Gen.,* 496 N.E.2d 875, 878 (N.Y. 1986)).[13]

The Martin Act applies to claims involving acts or omissions committed "within or from" the State of New York. Plaintiff alleges that "substantial acts in furtherance of the alleged fraud and/of [sic] its effects have occurred within this District." Compl. ¶ 14. These allegations demonstrate that the conduct that Plaintiff is complaining of took place "within or from" New

---

[12]     The Martin Act does not preempt Plaintiff's fraud claim. *See, e.g., Granite Partners, L.P. v. Bear Stearns & Co.,* 17 F. Supp. 2d 275, 292, n.18 (2d Cir. 1998) ("The Martin Act does not preclude private litigants from bringing common law fraud claims because such claims require a plaintiff to prove intent or scienter.").

[13]     Under the Martin Act, the New York Attorney General has "sole discretion to investigate securities violations within or from the state of New York;" there is no private right of action under the Martin Act. *In re Bayou Hedge Fund Litig.,* 534 F. Supp. 2d at 422.

York. *See, e.g., In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d at 422 (holding that plaintiff's allegation that "a substantial part of the events of omission giving rise to this claim occurred in New York" was sufficient to invoke Martin Act preemption) (citing *Sedona Corp.*, 2005 WL 1902780, at *22). Further, Plaintiff alleges that New York Life "misrepresent[ed] the appropriateness of the investments in the VUL policy" (Compl. ¶ 38), and "endorsed the investments in the Tremont Fund and the Rye Funds as appropriate for investors" (Compl. ¶ 39). These allegations are realleged "as if fully set forth" in Plaintiff's breach of fiduciary duty, negligent misrepresentation, unjust enrichment, and breach of the implied covenant of good faith and fair dealing claims. *See* Compl. ¶¶ 95, 101, 105, & 119. These claims thus involve alleged "deceitful practices" relating to the sale of securities (both the VUL Policy and the Tremont Fund are securities) and purported "investment advice" rendered in connection therewith. Accordingly, all of these claims are subject to Martin Act preemption. *See, e.g., In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d at 422 (breach of fiduciary duty claim preempted by the Martin Act where plaintiff alleged that defendant failed to conduct "sufficient due diligence either prior to or after recommending . . . an investment"); *Sedona Corp.*, 2005 WL 1902780, at *21-23 (negligent misrepresentation and breach of fiduciary duty claims preempted by the Martin Act where "alleged negligence, misrepresentations, or breach of fiduciary duty occurred in the course of investment advice and negotiations concerning securities"). *See also Kassover v. UBS AG and UBS Fin. Servs., Inc.*, No. 08- 02753, 2008 WL 5331812, at *6-8 (S.D.N.Y. Dec. 19, 2008) (breach of fiduciary duty, negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing claims preempted by the Martin Act where plaintiff alleged misrepresentations or omissions regarding the risks associated with plaintiffs' purchase of securities); *Pro Bono Invests., Inc. v. Gerry*, No. 03-4347, 2005 WL 2429787, at *16

(S.D.N.Y. Sept. 30, 2005) (unjust enrichment and negligent misrepresentation claims preempted by the Martin Act where plaintiffs alleged that defendants had "made materially false and misleading statements" regarding the purchase and sale of securities).

For the foregoing reasons, Plaintiff's claims for breach of fiduciary duty, negligent misrepresentation, unjust enrichment, and breach of the implied covenant of good faith and fair dealing claims (Counts II, III, IV, & VI) are all preempted by the Martin Act and these claims accordingly should be dismissed.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff's Complaint as against New York Life Insurance Company and New York Life Insurance and Annuity Corporation should be dismissed in its entirety.

Respectfully submitted,

By: /s/ Jeffrey L. Williams
    Jeffrey L. Williams (admitted *pro hac vice*)
    Thomas J. Finn: TF7078
    Ben V. Seessel (admitted *pro hac vice*)
    JORDEN BURT LLP
    175 Powder Forest Drive, Suite 301
    Simsbury, Connecticut 06089-9658
    Telephone:  (860) 392-5000
    Facsimile:  (860) 392-5058
    e-mail: jlw@jordenusa.com
    e-mail: tjf@jordenusa.com
    e-mail: bvs@jordenusa.com

    Attorneys for Defendants
    New York Life Insurance Company
    and New York Life Insurance and
    Annuity Corporation