IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ------------------------------------------------------------ x | | Master File No.: |
| IN RE TREMONT SECURITIES LAW, | : | 08 Civ. 11117 (TPG) |
| STATE LAW AND INSURANCE | : | |
| LITIGATION | : | JURY TRIAL DEMANDED |
| | : | |
| ------------------------------------------------------------ x | | ECF CASE |
| This Document Relates to: | : | |
| Insurance Action 09 Civ. 557 (TPG) | : | ELECTRONICALLY FILED |
| ------------------------------------------------------------ x | | |

### PLAINTIFF F. DANIEL PRICKETT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT NEW YORK LIFE INSURANCE COMPANY'S AND DEFENDANT NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION'S JOINT MOTION TO DISMISS

MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
(860) 882-1676
*Counsel for Plaintiff F. Daniel Prickett*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

I.     PRELIMINARY STATEMENT ................................................................... 1

II.    STANDARD ON A MOTION TO DISMISS .............................................. 2

III.   COMMON LAW FRAUD IS SUFFICIENTLY PLEADED .......................... 3

       A.   The Complaint Adequately Identifies New York Life's Misrepresentations ......... 3

       B.   Fraudulent Intent Pleaded With Sufficient Particularity ........................................ 6

       C.   Plaintiff Reasonably Relied On New York Life's Representations ........................ 9

       D.   New York Life Had A Duty To Disclose Under The "Special Facts"
            Doctrine ................................................................................................................ 10

       E.   New York Life Fraudulently Induced Plaintiff To Continue His
            Investment ............................................................................................................. 11

IV.    NEGLIGENT MISREPRESENTATION SUFFICIENTLY PLEADED .......... 11

       A.   "Special Relationship" Sufficiently Pleaded ....................................................... 12

       B.   Plaintiff's Negligent Misrepresentation Claim Is Not Barred By The
            Economic Loss Doctrine ...................................................................................... 13

       C.   Plaintiff's Negligent Misrepresentation Claim Satisfies Rule 9(b) ..................... 15

V.     BREACH OF FIDUCIARY DUTY IS SUFFICIENTLY PLEADED ............. 15

       A.   Fiduciary Relationship Pleaded ............................................................................ 15

       B.   A Knowing Breach Directly Damaging Plaintiff Sufficiently Pleaded ................ 17

       C.   Plaintiff's Negligent Misrepresentation Claim Satisfies Rule 9(b) ..................... 18

VI.    UNJUST ENRICHMENT SUFFICIENTLY PLEADED ............................... 18

VII.   BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR
       DEALING SUFFICIENTLY PLEADED ...................................................... 19

       A.   Plaintiff Has Sufficiently Alleged Bad Faith By New York Life ......................... 19

       B.   Plaintiff Properly Alleges A Claim For Breach Of The Implied Covenant
            Of Good Faith And Fair Dealing Independently Of A Claim For Breach
            Of Contract ........................................................................................................... 20

VIII.  PLAINTIFF'S NEGLIGENT MISREPRESENTATION AND BREACH OF
       FIDUCIARY DUTY CLAIMS ARE NOT TIME-BARRED ......................... 21

       A.   Plaintiff's Negligent Misrepresentation Claim Is Subject To A Six-Year
            Statute Of Limitations .......................................................................................... 21

       B.   Plaintiff's Breach Of Fiduciary Duty Claim Is Subject To A Six-Year
            Statute Of Limitations .......................................................................................... 21

IX.     THE MARTIN ACT DOES NOT PREEMPT PLAINTIFF'S COMMON LAW
CLAIMS ........................................................................................................22

     A.     The Martin Act Does Not Apply To The Facts Of This Case ...............................22

     B.     The Martin Act Does Not Preempt Common Law Causes Of Action...................23

X.     CONCLUSION................................................................................................24

# TABLE OF AUTHORITIES

CASES

*380544 Canada, Inc. v. Aspen Technology, Inc.*,
2007 CV 1204 (JFK), 2009 WL 1211266 (S.D.N.Y. May 5, 2009) ........................................ 6

*Abel v. Paterno*,
245 A.D. 285, 281 N.Y.S. 58 (App. Div. 1935) ................................................. 7, 8

*Aetna Casualty and Surety Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005) ........................................................ 10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 554 (2007) ............................................................. 2

*Berman v. Sugo LLC*,
580 F. Supp. 2d 191 (S.D.N.Y. 2008) ........................................... 15

*Brink's, Inc. v. City of New York*,
717 F.2d 700 (2d Cir. 1983) .................................................... 14

*Caboara v. Babylon Cove Development, LLC*,
54 A.D.3d 79, 862 N.Y.S.2d 535 (N.Y. App. Div. 2008) ..................... 23

*Calcutti v. SBU, Inc.*,
224 F. Supp. 2d 691 (S.D.N.Y. 2002) .......................................... 21

*Carmania Corp. v. Hambrecht Terrell International*,
705 F. Supp. 936 (S.D.N.Y. 1989) ............................................. 13

*Chase Manhattan Bank, N.A. v. Keystone Distributors, Inc.*,
873 F. Supp. 808 (S.D.N.Y. 1994) .......................................... 19, 20

*Continental Insurance Co. v. Mercadante*,
222 A.D. 181, 225 N.Y.S. 488 (N.Y. App. Div. 1927) ...................... 11

*Dalton v. Educational Testing Service*,
663 N.E.2d 289 (N.Y. 1995) ................................................... 19

*DIMON Inc. v. Folium, Inc.*,
48 F. Supp. 2d 359 (S.D.N.Y. 1998) ........................................... 10

*E*Trade Financial Corp. v. Deutsche Bank AG*,
420 F. Supp. 2d 273 (S.D.N.Y. 2006) .......................................... 13

*First Capital Asset Management v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004) .................................................... 7

*Flickinger v. Harold C. Brown & Co.*,
947 F.2d 595 (2d Cir. 1991) ................................................... 16

*Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC*,
376 F. Supp. 2d 385 (S.D.N.Y. 2005) ................................... 11, 14, 22

*Geisler v. Petrocelli,*
    616 F.2d 636 (2d Cir. 1980).............................................................................. 3

*Glidepath Holding B.V. v. Spherion Corp.,*
    590 F. Supp.2d 435 (S.D.N.Y. 2007)............................................................... 7

*Goldberg v. Schuman,*
    289 A.D.2d 8, 733 N.Y.S.2d 356 (N.Y. App. Div. 2001) ................................. 21

*Goldman v. McMahan, Brafman, Morgan & Co.,*
    706 F. Supp. 256 (S.D.N.Y. 1989) .................................................................... 7

*Hargrave v. Oki Nursery, Inc.,*
    636 F.2d 897 (2d Cir. 1980).............................................................................. 14

*Hudson River Club v. Consolidated Edison Co. of N.Y.,*
    275 A.D.2d 218 (N.Y. App. Div. 2000) ............................................................ 13

*Hydro Investors, Inc. v. Trafalgar Power Inc.,*
    227 F.3d 8 (2d Cir. 2000).................................................................................. 12

*In re JWP, Inc. Securities Litigation,*
    928 F. Supp. 1239 (S.D.N.Y. 1996).................................................................. 12

*Jana L. v. West 129th Street Realty Corp.,*
    22 A.D.3d 274, 802 N.Y.S.2d 132 (N.Y. App. Div. 2005) ................................. 10

*Kaufman v. Cohen,*
    307 A.D.2d 113, 760 N.Y.S.2d 157 (N.Y. App. Div. 2003) ............................... 21

*Kerusa Co. v. W10Z/515 Real Estate Ltd. Partnership,*
    906 N.E.2d 1049 (N.Y. 2009)............................................................................ 24

*Knight Securities, L.P. v. Fiduciary Trust Co.,*
    5 A.D.3d 172, 774 N.Y.S.2d 488 (N.Y. App. Div. 2004) ...................................... 9

*Knudsen v. Quebecor Printing (U.S.A.) Inc.,*
    792 F. Supp. 234 (S.D.N.Y. 1992) .................................................................... 18

*Lander v. Hartford Life & Annuity Insurance,*
    251 F.3d 101 (2d Cir. 2001).............................................................................. 16

*Lehman Bros. Commercial Corp. v. Minmetals International Non-Ferrous Metals
    Trading Co.,*
    179 F. Supp. 2d 159 (S.D.N.Y. 2001)............................................................... 22

*Lerner v. Fleet Bank, N.A.,*
    459 F.3d 273 (2d Cir. 2006)................................................................................ 6

*Liberty Ridge LLC v. RealTech Systems Corp.,*
    173 F. Supp. 2d 129 (S.D.N.Y. 2001)................................................................. 7

*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.,*
    41 A.D.3d 269, 838 N.Y.S.2d 536 (N.Y. App. Div. 2007) ............................ 19, 20

*Mandelblatt v. Devon Stores, Inc.,*
    132 A.D.2d 162, 521 N.Y.S.2d 672 (N.Y. App. Div. 1987) ......................... 14, 16

*Marbury Management, Inc. v. Kohn*,
    629 F.2d 705 (2d Cir. 1980) .......................................................................... 11

*McDonnell v. Allstate Life Insurance Co.*,
    2004 Civ. 3076, 2004 WL 2392169 (N.D. Ill. Oct. 25, 2004) .............................. 16

*MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*,
    216 F. Supp. 2d 251 (S.D.N.Y. 2002) ............................................................... 18

*Murphy v. Kuhn*,
    682 N.E.2d 972 (N.Y. 1997) ..................................................................... 16, 17

*Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*,
    No. 08-1720 (LAP), 2009 WL 860635 (S.D.N.Y. Mar. 31, 2009) ......................... 12

*Nanopierce Technologies, Inc. v. Southridge Capital Management LLC*,
    2002 Civ. 0767 (LBS), 2003 WL 22052894 (S.D.N.Y. Sept. 2, 2003) ................... 22

*Nathel v. Siegal*,
    592 F. Supp. 2d 452 (S.D.N.Y. 2008) ................................................................. 9

*National City Commercial Capital Co. v. Global Golf, Inc*,
    2009 Civ. 0307 (JFB), 2009 WL 1437620 (E.D.N.Y. May 20, 2009) ................... 18

*Ouaknine v. MacFarlane*,
    897 F.2d 75 (2d Cir. 1990) ............................................................................... 7

*Outback/Empire I, Ltd. Partnership v. Kamitis, Inc.*,
    35 A.D.3d 563, 825 N.Y.S.2d 747 (N.Y. App. Div. 2006) ................................... 20

*Palkovic v. Johnson*,
    281 Fed. Appx. 63 (2d Cir. 2008) ...................................................................... 3

*Paramount Film Distributing Corp. v. New York*,
    285 N.E.2d 695 (N.Y. 1972) ............................................................................ 19

*Pension Committee of the University of Montreal Pension Plan v. Banc of America
    Securities LLC*,
    568 F.3d 374 (2d Cir. 2009) .............................................................................. 2

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*,
    748 F.2d 774 (2d Cir. 1984) .............................................................................. 3

*Scalp & Blade, Inc. v. Advest, Inc.*,
    281 A.D.2d 882, 722 N.Y.S.2d 639 (N.Y. App. Div. 2001) ................................. 23

*Scantek Med., Inc. v. Sabella*,
    583 F. Supp. 2d 477 (S.D.N.Y. 2008) ............................................................... 21

*SCS Communications, Inc. v. Herrick Co.*,
    360 F.3d 329 (2d Cir. 2004) ............................................................................ 15

*Securities & Exchange Commission v. Schiffer*,
    1997 Civ. 5853 (RO), 1998 WL 226101 (S.D.N.Y. May 5, 1998) ....................... 15

*Seneca Insurance Co. v. Wilcock*,
    2001 Civ. 7620 (WHP), 2002 WL 1067828 (S.D.N.Y. May 28, 2002) ................. 21

*Shields v. Cititrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994) ................................................................... 6

*South Cherry Street, LLC v. Hennessee Group LLC*,
2006 CV 2943, 2009 WL 2032133 (2d Cir. July 14, 2009) ...................... 8

*State Street Trust Co. v. Ernst*,
15 N.E.2d 416 (N.Y. 1938) ..................................................................... 7

*Stern Bros. v. New York Edison Co.*,
251 A.D. 379, 296 N.Y.S. 857 (N.Y. App. Div. 1937) ........................... 11

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
250 F.3d 87 (2d Cir. 2001) ..................................................................... 23

*VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*,
594 F. Supp. 2d 334 (S.D.N.Y. 2008) .................................................... 20

*Wiener v. Lazard Freres & Co.*,
241 A.D.2d 114, 672 N.Y.S.2d 8 (N.Y. App. Div. 1998) ....................... 16

*William v. L.A. Models, Inc.*,
2007 Civ. 6778 (NRB), 2008 WL 3304588 (S.D.N.Y. 2008) .................. 9

*Wright v. Selle*,
27 A.D.3d 1065, 811 N.Y.S.2d 525 (N.Y. App. Div. 2006) ................... 13

## STATUTES

N.Y. Gen. Bus. L. § 352-c(1)(c) ......................................................... 22, 23

## OTHER AUTHORITIES

Charlene D. Luke, *Taxing Risk:  An Approach to Variable Insurance Reform*,
55 Buffalo L. Rev. 251 (2007) ................................................................ 9

## RULES

Fed. R. Civ. P. 8(d)(2)-(3) ...................................................................... 18

# I.    PRELIMINARY STATEMENT

Plaintiff F. Daniel Prickett ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant New York Life Insurance Company's and Defendant New York Life Insurance and Annuity Corporation's (collectively, "New York Life" or "Defendants") motion to dismiss Plaintiff's Complaint.[1]

This action arises from the $50 billion Ponzi scheme perpetrated by convicted criminal Bernard L. Madoff ("Madoff").  Like the majority of investors whose funds were stolen in Madoff's scheme, Plaintiff's funds were funneled to Madoff through a "feeder fund."  In this case, New York Life introduced Plaintiff to the Tremont Opportunity Fund III, L.P. (the "Tremont Fund")[2] through the "Subaccount" of his variable universal life insurance policy.  In the policy's contract, New York Life represented that Plaintiff's Subaccount would invest in managed portfolios of underlying securities.  New York Life offered Plaintiff the Tremont Fund representing that it was such a portfolio.  Plaintiff relied on these representations and paid New York Life significant monthly fees to manage and maintain his investments in the Subaccount.[3] In return, New York Life promised to notify Plaintiff of material changes in the Subaccount's underlying portfolios.  As the proprietor of the Subaccount and a limited partner of the Tremont Fund, New York Life had a perfect opportunity to observe the numerous warning signs surrounding Madoff, the Tremont Group, and the Tremont Fund.  Indeed, other financial institutions recognized these "red flags" and acted upon them.  However, loath to forgo the fees

---

[1]      All references to the "Complaint" are to the Complaint, filed on March 31, 2009, in *Prickett v. Massachusetts Holding LLC*, 2009 CV 03137 (Dkt. No. 1).

[2]      The Tremont Fund was formerly known as the American Masters Opportunity Insurance Fund, L.P. (Compl. ¶ 23.)

[3]      The Policy provided for a monthly administrative charge of $0.145370 per $1,000.00 of initial face amount during its second through tenth years.  Policy at 3E.  At its initial face amount of $6,394,951.00, the monthly administrative charge amounted to approximately $929.63.

generated by its variable insurance products, and recognizing that its own funds were not at stake, New York Life turned a blind eye to these irregularities. In doing so, New York Life became complicit in the highly suspicious and ultimately fraudulent operations of Madoff, the Tremont Group, and the Tremont Fund.

The Complaint brings five state law claims against New York Life (1) fraudulent misrepresentation; (2) negligent misrepresentation; (3) breach of fiduciary duty; (4) unjust enrichment; and (5) breach of the implied covenant of good faith and fair dealing. (Compl. ¶¶ 88-113, 119-22.)

In their brief, Defendants have adopted a "blame the victim" defense. They argue that, as a "sophisticated investor," Plaintiff could not have relied upon any representations by New York Life because New York Life provided boilerplate disclaimers of the risks of investing in the securities markets. These arguments are meritless and entirely miss the point. New York Life agreed to offer Plaintiff a certain kind of investment opportunity. Through its recklessness, New York Life failed to do so. New York life unfairly profited from the investments it recklessly caused Plaintiff to make. Plaintiff now sues New York Life for the losses he suffered as a result of New York Life's wrongful conduct.

## II.    STANDARD ON A MOTION TO DISMISS

To survive a challenge under Rule 12(b)(6), a complaint "does not need detailed factual allegations" to survive. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). Instead, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In determining if a complaint is plausible, a court "construe[s] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in Plaintiff's favor." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 568 F.3d 374, 381 (2d Cir. 2009). Because a Rule 12(b)(6) motion determines the legal

feasibility of a complaint, the court should not "assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). The inquiry is not whether a plaintiff is likely to prevail on its claims, but whether it is entitled under the circumstances to develop and offer evidence to support those claims. *See Palkovic v. Johnson*, 281 Fed. Appx. 63, 66 (2d Cir. 2008).

## III.   COMMON LAW FRAUD IS SUFFICIENTLY PLEADED

Defendants selectively quote from the Complaint in an attempt to avoid confronting Plaintiff's central and specific allegation of fraud:  that New York Life portrayed Plaintiff's investment as legitimate, despite undertaking absolutely no due diligence in the face of gross irregularities that, because they were known to other similarly situated financial institutions, were most likely known to New York Life. (*See* Compl. ¶¶ 50-59.)

### A.     The Complaint Adequately Identifies New York Life's Misrepresentations

New York Life's myriad misrepresentations concerning Plaintiff's investment are contained in the documents incorporated by reference into the Complaint. These include the Individual Variable Life Policy (the "Policy"), the Variable Life Insurance Policy Private Offering Memorandum (the "Offering Memorandum" or "O.M."), and the American Masters Opportunity Insurance Fund, L.P. Confidential Private Placement Memorandum (the "Tremont PPM").[4] *See* Williams Decl. Exs. 1-3. (*See also* Compl. ¶¶ 32, 61).

---

[4]     Defendants attach the Policy, Application, Offering Memorandum and Tremont PPM to their motion as Exhibits 1 through 3 of the Declaration of Jeffrey L. Williams ("Williams Decl."). Defendants correctly acknowledge that "a Complaint on a motion to dismiss 'is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (Defendants' New York Life Insurance Company's and New York Life Insurance and Annuity Corporation's Memorandum of Law in Support of Motion to Dismiss ("Def. Mem.") at 4.) Defendants also correctly acknowledge that the Policy, Application, Offering Memorandum, and Tremont PPM are "integral" to Plaintiff's Complaint. (*Id.*) Defendants also properly acknowledge that Plaintiff was entitled to rely upon these written representations, all of which were provided to him by New York Life. (*Id.* at 8.)

In these offering materials, New York Life represented to Plaintiff that the Subaccount constituted an investment in "shares or units" in "underlying portfolios" of "securities" managed by an "investment manager." O.M. at 6-7. For example, the Offering Memorandum provides:

> Net Premiums may be allocated among any of the available "Subaccounts" offered with this Policy. Each Subaccount of each Separate Account invests in shares or units of a portfolio of securities managed by one or more Portfolio Managers (the "Portfolios" or "Underlying Portfolios").

*Id.* at ii (emphasis added). The Policy describes the Subaccounts similarly:

> The assets of the Subaccounts will be invested in shares of corresponding Portfolios. The Portfolios will be valued at the end of the Valuation Period at a fair value.

Policy at 16. The "Exempt Subaccounts," through which New York Life offered the Tremont Fund, are described in similar terms:

> An Exempt Subaccount is one that invests in shares (or units) of Underlying Portfolios that are not registered under federal securities law, and these portfolios can be expected to hold illiquid investments.

O.M. at 7.[5] New York Life also assured Plaintiff that "[e]ach Underlying Portfolio has a different investment objective that it tries to achieve by following its own investment strategy." *Id.* at 8.

New York Life also made certain representations in the offering materials about its role in managing the Separate Accounts Subaccounts on behalf of its policyholders. First, New York Life retained "the exclusive right to select the investments of the Separate Account Subaccounts." New York Life also set forth an additional array of rights by which it purported to maintain the Separate Account Subaccounts:

---

[5]    The Offering Memorandum defines "Portfolio" or "Underlying Portfolio" as "each series or investment pool of a Fund that corresponds with the specific investment objective of a Subaccount." O.M. at 3. "Fund" is defined as "either a Registered Fund or an Exempt Fund." *Id.* at 2. "Exempt Fund" is defined as "an underlying investment account that is excepted from registration under the Investment Company Act of 1940 by Section 3(c)(1) of that Act." *Id.* at 1.

When permitted by law, and subject to any required notice to You and approval by regulatory authorities or You, the Company has the right to make the following changes with regard to the Separate Accounts:

- Establish new Subaccounts;
- Transfer the assets of a Separate Account to one or more other Separate Accounts;
- Substitute new Subaccounts;
- Combine existing Subaccounts to new investments;
- Eliminate Subaccounts;
- Close existing Subaccounts to new investments;
- Change the investment policy of a Subaccount;
- Restrict or eliminate any of the voting rights of policy owners or other persons who have voting rights as to a Separate Account;
- Register or de-register a Separate Account under the Investment Company Act of 1940;
- Change the name of a Separate Account;
- Change the amount of any minimum/maximum investments;
- Manage a Separate Account under the direction of a committee; and
- Substitute Underlying Portfolios of any Subaccounts.

Policy at 16. New York Life promised to notify Plaintiff of any such change in the Subaccounts, and then made an additional, much broader promise:

If *any change* results in a *material change* in the Underlying Portfolios of Subaccounts to which the Account Value for this policy are allocated, We *will notify* You of such change. You may then make a new election under the Allocation to Subaccounts Provision.

*Id.* (emphasis added). New York Life repeated this promise in the Offering Memorandum:

We *will notify* You if *any change* results in a *material change* in the Underlying Portfolios. . . . You *will be given advance notice* and the ability to effect a transfer prior to or at the time the material change will become effective.

O.M. at 7 (emphasis added).

New York Life incorporated additional representations about the Tremont Fund into the Supplement to the Offering Memorandum in the form of the Tremont PPM. The Tremont PPM represented that the Tremont Fund would invest in a portfolio of securities, specifically through an "opportunistic," "multi-manager" approach that emphasized a diversified portfolio:

The terms "opportunity" and "opportunistic" refer to a broad range of investment strategies including but not limited to: long-short equity strategies, hedging and arbitrage techniques in the equity, fixed income, and currency markets; index arbitrage; interest rate arbitrage; convertible bond and warrant hedging; merger arbitrage; statistical long/short equity strategies; pairs trading; and investment in non-U.S. securities.

Tremont PPM at iii. According to the Tremont PPM, the Tremont Fund would:

- Invest in a diversified portfolio that is actively managed and monitored by and under the General Partner, which has substantial experience in the 'alternative investment' markets;
- Invest in a diversified portfolio with a minimum capital contribution.

*Id.* at 1.

These are clear misstatements. A considerable portion of Plaintiff's funds were never invested in a portfolio of securities, never managed according to any meaningful investment objectives or policies, and never subject to the oversight necessary for New York Life's promise to provide Plaintiff "notice" of "material changes" in the underlying portfolio to be anything but a lie. Finally, as alleged in the Complaint, beginning in May 2004, New York Life issued Plaintiff periodic statements that completely misrepresented the growth in value of Plaintiff's investment in the Tremont Fund. (Compl. ¶¶ 82, 84.)

## B. Fraudulent Intent Pleaded With Sufficient Particularity

Rule 9(b)'s heightened pleading requirement may be satisfied by "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006) (quoting *Shields v. Cititrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).[6] However, Rule 9(b) "must be read in light of the liberal

---

[6] Defendants challenge Plaintiff's allegation that New York Life acted with the requisite fraudulent intent by exclusively citing decisions concerning claims brought under Section 10(b) of the Securities Exchange Act ("Exchange Act") and decided with reference to the heightened pleading standard required for Exchange Act claims by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b). However, because Plaintiff's fraud claim is brought under New York common law, cases interpreting New York common law are strictly controlling. *See, e.g.*, *380544 Canada, Inc. v. Aspen Tech., Inc*., 2007 CV 1204 (JFK), 2009 WL 1211266, at *11 (S.D.N.Y. May 5, 2009) (acknowledging that "*Tellabs* is not controlling" because "the instant case does not concern

pleading requirement of Rule 8, which only requires a 'short and plain statement' of the claim." *Glidepath Holding*, 590 F. Supp. 2d at 451; *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990). While a complaint "must give adequate notice of the charges against a defendant, 'it need not marshal all the evidence,'" and "courts should not demand a level of specificity in fraud pleadings that can only be achieved through discovery." *Liberty Ridge LLC v. RealTech Sys. Corp.*, 173 F. Supp. 2d 129, 137 (S.D.N.Y. 2001). Accordingly, "allegations may be made on information and belief where the fraud is based on matters within the adverse party's sole knowledge, but still must be accompanied by a statement of the facts upon which the belief is founded." *Glidepath Holding*, 590 F. Supp. 2d at 451; *see also First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004).

In determining the sufficiency of claims for fraud under New York common law, courts have consistently recognized that "[a]n egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of gross negligence which can be the functional equivalent of recklessness." *Goldman v. McMahan, Brafman, Morgan & Co.*, 706 F. Supp. 256, 259 (S.D.N.Y. 1989); *see also State Street Trust Co. v. Ernst*, 15 N.E.2d 416, 419 (N.Y. 1938) (holding that "heedlessness and reckless disregard of consequence may take the place of deliberate intention" in common law fraud).

Under New York common law, a reckless misrepresentation made under the pretense of knowledge is a well-established species of fraud. In *Abel v. Paterno*, 245 A.D. 285, 286, 281 N.Y.S. 58, 63 (App. Div. 1935), the court upheld fraud claims against a realty corporation that had "falsely and fraudulently represented" that a co-operative apartment development was "comprised of seven acres of real estate, or at least of more than six acres, whereas, in truth they

---

fraud under the PSLRA but rather common law fraud"); *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 451 n.5 (S.D.N.Y. 2007) (citing *Tellabs* as persuasive while recognizing that "*Tellabs* does not directly control this case").

consisted of not more than three and seven-eighths acres" for "the purpose of inducing the [plaintiffs] to purchase stock and enter into leases." The court observed:

> The makers of these representations, whether by prospectus or orally, either knew or did not know the actual facts with reference to this tract of land. If they did know and misrepresented, then they are clearly liable for such fraud. If they did not know its condition, then they knew of such lack of knowledge on their own part. Then their statement made as if from personal knowledge is equally fraudulent as though intentionally falsely made.

*Id.*

More recently, the Second Circuit has observed that reckless fraud is indicated by "evidence that the 'defendants failed to review or check information that they had a duty to monitor, or ignored *obvious* signs of fraud,' and hence 'should have known that they were misrepresenting material facts.'" *South Cherry Street, LLC v. Hennessee Group LLC*, 2006 CV 2943, 2009 WL 2032133, at *10 (2d Cir. Jul. 14, 2009) (emphasis in original).

In this case, New York Life represented that an investment in the Subaccounts represented "shares or units" in "underlying portfolios" of "securities" managed by an "investment manager" pursuant to an "investment strategy." O.M. at 6-7. New York Life promised to provide notice of changes in these underlying portfolios. Policy at 16. New York Life's representations of the Subaccounts, and of the notice it would provide, were clearly motivated to encourage investments in its variable insurance products, grow its business, and increase its fees. (Compl. ¶ 41.)[7] Yet, having undertaken these representations, New York Life failed to follow through. Instead, it offered Plaintiff a Ponzi scheme in the hollow guise of a "diversified portfolio that is actively managed." Tremont PPM at 1.

---

[7]     Variable insurance policies are "known for their high costs" and "sky high fees" relating to their investment management charges. Charlene D. Luke, *Taxing Risk: An Approach to Variable Insurance Reform*, 55 Buffalo L. Rev. 251, 267 n.75 (2007).

The irregularities at Tremont Group and at Bernard L. Madoff Investment Securities LLC were not unknown within the financial community. (*See* Compl. ¶¶ 50-59.) As early as 1992, the SEC brought charges implicating Madoff's associates in a $441 million securities violation. (*Id.* ¶ 51.) By 2001, several national publications had publicly questioned Madoff's "secretive" and inexplicable investment strategies. (*Id.* ¶¶ 53-57.) In October 2008, alarmed by these and other warning signs, JPMorgan Chase "cashed out" of its investment in the Madoff-invested Fairfield funds. (*Id.* ¶ 59.) Despite these "red flags," New York Life performed absolutely no due diligence to corroborate its representations.

Plaintiff was not privy to New York Life's internal deliberations or communications with the Tremont Group. However, these "red flags" constitute circumstantial evidence of a conscious failure to verify and inquire about information that New York Life had a duty to monitor. At the very least, New York Life knew that its promise to "notify" Plaintiff of material changes in the underlying portfolio was meaningless because it clearly had no idea what the portfolio contained or in what form it even existed. (*Id.* ¶ 90.) These circumstances squarely indicate a degree of recklessness on the part of New York Life towards its representations that equates to fraud.

## C.  Plaintiff Reasonably Relied On New York Life's Representations

Whether a plaintiff's reliance was reasonable "is fact-intensive and not suited for resolution on a motion to dismiss." *Nathel v. Siegal*, 592 F. Supp. 2d 452, 466 (S.D.N.Y. 2008); s*ee also William v. L.A. Models, Inc*., 2007 Civ. 6778 (NRB), 2008 WL 3304588, at *8 (S.D.N.Y. 2008) (although the reasonableness of plaintiff's reliance was "far from clear" it was nevertheless a "question for the trier of fact"); *Knight Sec., L.P. v. Fiduciary Trust Co.*, 5 A.D.3d 172, 172-73, 774 N.Y.S.2d 488, 489 (N.Y. App. Div. 2004) (reasonableness of reliance is an issue of fact inappropriate for resolution on a motion to dismiss).

New York Life hastens to invoke Plaintiff's status as a "sophisticated investor," and to parade the Policy's stock disclaimers regarding the risks of investing in securities. However, New York Life's fraud was not in failing to advise Plaintiff of the risks of investing in securities, but in misrepresenting Plaintiff's investment altogether. Furthermore, it is well recognized that even a sophisticated investor is entitled to rely on representations where the truth would only be discoverable through "extraordinary effort or great difficulty." *DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 368 (S.D.N.Y. 1998). Here, New York Life, not Plaintiff, was the limited partner in the Tremont Fund. (*See* Def. Mem. 12.) Likewise, New York Life reserved for itself essentially absolute discretion over the maintenance of the Subaccount. *See* Policy at 15-16. This informational disadvantage made it imminently reasonable for Plaintiff to rely upon New York Life's representations that his investment constituted an actual portfolio of underlying securities. (*See* Compl. ¶ 89.) Indeed, Defendants fully acknowledge that Plaintiff was entitled to rely on New York Life's representations in the Policy, Offering Memorandum, and Tremont PPM. (*See* Def. Mem. 8.)

### D. New York Life Had A Duty To Disclose Under The "Special Facts" Doctrine

Under the "special facts" doctrine, a duty to disclose arises where "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005); *see also Jana L. v. West 129th St. Realty Corp.*, 22 A.D.3d 274, 278, 802 N.Y.S.2d 132, 135 (N.Y. App. Div. 2005) ("special facts" applies to information "peculiarly within the knowledge" of the defendant and not discoverable by the plaintiff through the "exercise of ordinary intelligence"). In this case, New York Life possessed knowledge superior to Plaintiff because it alone was the limited partner of the Tremont Fund, it alone had superior management rights over the Subaccount, and it alone knew that its representations about the

Subaccount and the Tremont Fund were completely baseless. Therefore, New York Life had a duty to disclose information it had concerning irregularities relating to the Tremont Fund.

### E. New York Life Fraudulently Induced Plaintiff To Continue His Investment

Under New York law, "a claim for common law fraud is available to investors who retain their securities in reliance on a defendant's misrepresentations." *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 385, 407 (S.D.N.Y. 2005); *see also Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 710 (2d Cir. 1980) (quoting *Stern Bros. v. N.Y. Edison Co*., 251 A.D. 379, 381, 296 N.Y.S. 857, 859 (N.Y. App. Div. 1937)) ("Fraud which induces non-action where action would otherwise have been taken is as culpable as fraud which induces action which would otherwise have been withheld"); *Continental Ins. Co. v. Mercadante*, 222 A.D. 181, 182, 225 N.Y.S. 488 (N.Y. App. Div. 1927) (defendant's false representations induced plaintiff not to sell the securities which eventually became worthless). Here, New York Life's account statements seriously misrepresented Plaintiff's balance in the Tremont Fund and fraudulently induced Plaintiff to continue to hold the Tremont Fund. (Compl. ¶¶ 36-37.) If Plaintiff had known of the material facts that New York Life misrepresented and concealed, Plaintiff would never have invested in the Tremont Fund, *id.* ¶ 91, and would have divested upon their revelation in order to make a different investment, *id.* ¶ 86.

## IV. NEGLIGENT MISREPRESENTATION SUFFICIENTLY PLEADED

To state a claim for negligent misrepresentation under New York law, a plaintiff must allege that: (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that it should have known was incorrect; (3) the defendant knew the plaintiff desired the information for a serious purpose; (4) the plaintiff intended to rely and act upon the information; and (5) the plaintiff reasonably

relied on the information to his or her detriment. *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

Plaintiff has pleaded his negligent misrepresentation claim in full. First, New York Life had a special relationship with Plaintiff under the Policy that gave it a duty to provide Plaintiff correct information. *See infra* Part IV.A. Second, New York Life should have known that its representations were false. *See supra* Part III.A. Third, because New York Life's statements were made in the Policy documents, New York Life knew they "would be provided to policyholders and would be relied upon by them in making investment decisions concerning the Investment Account component of their VUL policies." (Compl. ¶ 96.) Fourth, Plaintiff relied on New York Life's statements to invest in the Tremont Fund and to file his federal, state, and local taxes. (*Id.* ¶¶ 84, 89.) Fifth, Plaintiff's reliance on New York Life's representations was reasonable. *See supra* Part III.C.

### A.      "Special Relationship" Sufficiently Pleaded

To plead a claim for negligent misrepresentation, a plaintiff must be able to demonstrate a "reasonable justification for relying" upon the defendants' misrepresentations due to a "special" or "privity-like" relationship between the parties. *Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, No. 08-1720 (LAP), 2009 WL 860635, at *15 (S.D.N.Y. Mar. 31, 2009). "The relationship between the parties need not rise to the level of actual privity, but it must be sufficiently close that it approaches privity." *In re JWP, Inc. Sec. Litig.*, 928 F. Supp. 1239, 1253 (S.D.N.Y. 1996). Defendants incorrectly attempt to conflate a "special relationship" with a fiduciary duty. In fact, "the standard of a special relationship in the context of a negligent misrepresentation claim is less rigorous than that of a fiduciary duty." *Musalli Factory*, 2009 WL 860635, at *15. A "special relationship" must merely create "a duty for one party to impart correct information to another." *Wright v. Selle*, 27 A.D.3d 1065, 1066-67, 811 N.Y.S.2d 525,

527 (N.Y. App. Div. 2006) (quoting *Hudson River Club v. Consol. Edison Co. of N.Y.*, 275 A.D.2d 218, 220 (N.Y. App. Div. 2000)). Furthermore, such a relationship "may coexist with [a] contract between sophisticated parties." *E\*Trade Fin. Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273, 290 (S.D.N.Y. 2006). "Whether this special relationship exists is generally a question of fact." *JWP, Inc.*, 928 F. Supp. at 1253.

New York Life's special relationship with Plaintiff was created through their privity of contract. First, the Offering Memorandum gives New York Life "the exclusive right to select the investments of the Separate Account Subaccounts." O.M. at 6. Second, the Policy expressly states that New York Life would provide Plaintiff notice of material changes in the underlying portfolios of the Subaccounts. Policy at 16. Finally, the Policy granted New York Life extensive management authority over the Subaccounts. *Id.* Presumably these rights were intended to be exercised, at least partially, to benefit Plaintiff. And at the very least, the contract's notice provision required New York Life to provide Plaintiff with accurate information. This was necessary and reasonable because it was New York Life, not Plaintiff, who was the limited partner in the Tremont Fund. Considered together, these rights and obligations created the duty for New York Life to provide correct information to Plaintiff about his Subaccount investment in the Tremont Fund.

### B.    Plaintiff's Negligent Misrepresentation Claim Is Not Barred By The Economic Loss Doctrine

Under New York law, a negligent misrepresentation claim does not violate the "economic loss" doctrine if: (1) the defendant violated a legal duty separate from its contractual obligations, and (2) the damages he suffered do not constitute mere "economic loss." *Carmania Corp. v. Hambrecht Terrell Int'l*, 705 F. Supp. 936, 938 (S.D.N.Y. 1989). Plaintiff's allegations meet both requirements.

As to the first requirement, "[i]t is well settled that the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." *Fraternity Fund Ltd*., 376 F. Supp. 2d at 408 (quoting *Mandelblatt v. Devon Stores, Inc.*, 132 A.D.2d 162, 167-68, 521 N.Y.S.2d 672, 676 (N.Y. App. Div. 1987)). For instance, in *Hargrave v. Oki Nursery, Inc*., 636 F.2d 897, 899 (2d Cir. 1980), plaintiff alleged that it had detrimentally relied upon defendant's knowing misrepresentation that its diseased grape vines were healthy. The court held that this constituted the breach of a legal duty that existed "independent of the contractual relations between the parties." *Id.* Here too, New York Life's tortious misrepresentations concerning Plaintiff's investment created a legal relationship separate and distinct from the contract itself.

New York Life's negligent management of the Subaccount also created a legal relationship independent of the contract. In *Brink's, Inc. v. City of New York*, 717 F.2d 700 (2d Cir. 1983), employees of Brink's stole money that Brink's collected from parking meters pursuant to a contract with the city. The city sued in both contract and tort to recover the stolen money on the theory that Brink's negligently hired, supervised and investigated its employees. On appeal, the Second Circuit held that the city properly asserted "a separate and independent cause of action for common law negligence" and that a "tort by a defaulting promisor is no less a tort." *Id.* at 704-705. Here, as in *Brink's*, New York Life was hired under contract to maintain Plaintiff's property in the Subaccount. Yet through a degree of negligence not contemplated by the contracting parties, New York Life funneled Plaintiff's investment to a Ponzi scheme.

As to the second requirement, Plaintiff does not seek the sort of "economic" damages prohibited by the "economic loss" doctrine. That is, Plaintiff does not seek whatever expected

investment returns Plaintiff would have received had New York Life directed his money to a legitimate portfolio manager. Instead, like the plaintiff in *Brink's*, Plaintiff merely seeks to recover the funds that, due to New York Life's negligence, were stolen from him.

### C. Plaintiff's Negligent Misrepresentation Claim Satisfies Rule 9(b)

Plaintiffs' negligent misrepresentation claim is based on the same allegations as his fraudulent misrepresentation claim. As set forth in the Complaint and described in Part III.A *supra*, New York Life misrepresented the Tremont Fund and the Subaccount in the Policy, Offering Memorandum, Tremont PPM, and the periodic account statements. (*See* Compl. ¶¶ 38-40, 61, 96.) Seeking new fees from new investments in its variable life policies, and despite numerous "red flags" that other more cautious institutions properly recognized, New York Life blithely issued blanket assurances concerning the Subaccount and recklessly placed its "rubber stamp" on the Tremont Fund. Because "the totality of [these allegations] sufficiently states a claim of fraud and provides [New York Life] with adequate notice and direction to pursue relevant discovery," Rule 9(b) is satisfied. *See SEC v. Schiffer*, 1997 Civ. 5853 (RO), 1998 WL 226101, at *3 (S.D.N.Y. May 5, 1998).

## V. BREACH OF FIDUCIARY DUTY IS SUFFICIENTLY PLEADED

In New York, a cause of action for breach of fiduciary duty has three elements: (1) breach by a fiduciary of a duty owed to plaintiff, (2) defendant's knowing participation in the breach, and (3) damages. *SCS Commc'ns, Inc. v. Herrick Co*., 360 F.3d 329, 342 (2d Cir. 2004). Plaintiff has adequately alleged each element of this claim against New York Life.

### A. Fiduciary Relationship Pleaded

A fiduciary relationship exists "when one [party] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of relation." *Berman v. Sugo*

*LLC*, 580 F. Supp. 2d 191, 204 (S.D.N.Y. 2008) (quoting *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991)); *see also Mandelblatt*, 132 A.D.2d at 168, 521 N.Y.S.2d at 676. "[A]ny inquiry into whether such obligation exists is necessarily fact-specific to the particular case." *Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 122, 672 N.Y.S.2d 8, 14 (N.Y. App. Div. 1998). In the insurance context, a fiduciary duty may arise if the insurer "by express or implied contract with customers and clients" assumes "duties in addition to those fixed at common law." *Murphy v. Kuhn*, 682 N.E.2d 972, 975 (N.Y. 1997).

Defendants correctly state that New York law does not recognize blanket fiduciary duties between insurers and insureds. However, Plaintiff's variable universal life insurance contract is not an ordinary insurance contract. Variable insurance contracts are "'hybrid products' possessing characteristics of both insurance products and investment securities." *Lander v. Hartford Life & Annuity Ins.*, 251 F.3d 101, 105 (2d Cir. 2001). Recognizing this, at least one federal court has held that an insurer was "more than a mere party" to a tax-deferred variable annuity contract because its role was analogous to a broker receiving fees for executing investment transactions on behalf of its customers. *McDonnell v. Allstate Life Ins. Co.*, 2004 Civ. 3076, 2004 WL 2392169, at *3 (N.D. Ill. Oct. 25, 2004). In *McDonnell*, the plaintiff alleged that his insurer wrongfully changed its policies regarding the transfer of monies between the investment alternatives in his tax-deferred variable annuity. *Id.* The court first held that "[t]o determine whether a fiduciary duty exist[ed] under the circumstances," it "must examine the nature of the parties' annuity contract." *Id.* at *3. Then, recognizing that the insurance company's role in relation to the subaccounts of the variable annuity was like that of a broker, the court upheld plaintiff's claim for the breach of fiduciary duty. *Id.* at *3-4.

Here, New York Life's custom-made variable universal life insurance contract set forth rights and obligations that went far beyond the ordinary insurance relationship. In its contract with Plaintiff, New York Life set forth for itself extensive management rights over the Subaccount – including the exclusive right to select the underlying portfolios it offered to Plaintiff. New York Life also assumed the express obligation to provide Plaintiff notice of developments in the underlying portfolios of his Subaccount. *See infra* Part III.A. These contractual duties reflect the fact that New York Life's role in managing the Subaccount was akin to that of a securities broker.

Additionally, the Financial Industry Regulatory Authority ("FINRA") has recognized that insurance companies marketing variable contracts have duties to thoroughly familiarize themselves with subaccount investment options in order to properly convey such information to their customers.[8] Thus, because New York Life's role over Plaintiff's investment extended "beyond the ordinary placement of requested insurance responsibilities," New York Life owed Plaintiff fiduciary duties. *Murphy*, 682 N.E.2d at 975.

**B.      A Knowing Breach Directly Damaging Plaintiff Sufficiently Pleaded**

In the Complaint, Plaintiff alleges that New York Life either "failed to perform the necessary due diligence required to meet their fiduciary obligations due Plaintiff" or "to the extent that New York Life . . . did perform due diligence, they violated their fiduciary duties by purposefully failing to communicate material information to their investors." (Compl. ¶ 41.)

---

[8]      The National Association of Securities Dealers ("NASD"), now known as FINRA, has recognized that variable contracts impose duties on insurance companies beyond those of conventional insurance. According to the NASD, "[a] registered principal [*i.e.*, New York Life] should review the account information form and verify that the recommendation of both the policy and the subaccount allocation is consistent with the customer's investment objectives and risk tolerance." *See* Narwold Decl. Ex. 1 (NASD Notice to Members 00-44) at 301. Furthermore, "Registered representatives should be thoroughly familiar with the features and costs associated with each recommended variable life insurance policy," including "subaccount investment options." *Id.* at 301-302. "The registered representative should be able to clearly convey such information to the customer so that the customer can make an informed investment decision regarding the recommendation." *Id.* at 302.

These breaches proximately damaged Plaintiff.  (Compl. ¶ 118.)  Thus, Plaintiff has adequately pleaded all the elements of a breach of fiduciary duty.

### C.    Plaintiff's Negligent Misrepresentation Claim Satisfies Rule 9(b)

Because Plaintiff's claim for breach of fiduciary duty relies on the same set of allegations as his claims for fraudulent misrepresentation and negligent misrepresentation, Plaintiff's claim satisfies Rule 9(b).

## VI.    UNJUST ENRICHMENT SUFFICIENTLY PLEADED

Under New York law, Plaintiff's unjust enrichment claim is not foreclosed merely because an express contract exists between Plaintiff and Defendant.  Rule 8 allows Plaintiff to "set out 2 or more statements of a claim or defense alternatively or hypothetically," and "regardless of consistency."  *See* Fed. R. Civ. P. 8(d)(2)-(3).

The existence of an express contract only precludes an unjust enrichment claim where the scope of the contract covers the entirety of the dispute between the parties.  *See Knudsen v. Quebecor Printing (U.S.A.) Inc.*, 792 F. Supp. 234, 237 (S.D.N.Y. 1992).  Whether an express contract clearly covers the entirety of the dispute between the parties often involves factual issues not properly resolved at the pleading stage.  *See, e.g.*, *Nat'l City Commercial Capital Co. v. Global Golf, Inc*, 2009 Civ. 0307 (JFB), 2009 WL 1437620, at *1 (E.D.N.Y. May 20, 2009) (allowing plaintiff to proceed alternatively with breach of contract and unjust enrichment claims); *MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*, 216 F. Supp. 2d 251, 261 (S.D.N.Y. 2002) (same).

Here, Plaintiff has pleaded that New York Life tortiously and fraudulently breached duties implied in its contract with Plaintiff.  Pursuant to Rule 8, Plaintiff alternatively pleads that, at a minimum, factual issues exist as to whether the parties' dispute concerns a mistake of fact that transcended the scope of their contract and that unjustly benefitted New York Life at

Plaintiff's expense. The "essential inquiry" is whether it is "against equity and good conscience" to permit New York Life to retain Plaintiff's funds. *Paramount Film Distrib. Corp. v. New York*, 285 N.E.2d 695, 698 (N.Y. 1972). Plaintiff submits that this inquiry is inappropriate for resolution at the pleading stage.

## VII. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING SUFFICIENTLY PLEADED

### A. Plaintiff Has Sufficiently Alleged Bad Faith By New York Life

Under New York law, the covenant of good faith and fair dealing is implied in every contract and provides that "no party to that contract can do anything which will destroy or injure the right of another to receive the benefits of the contract." *Chase Manhattan Bank, N.A. v. Keystone Distribs., Inc.*, 873 F. Supp. 808, 815 (S.D.N.Y. 1994). The implied covenant obligates the contracting party to exercise any discretion it has under the contract in good faith and not "arbitrarily or irrationally." *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 41 A.D.3d 269, 270, 838 N.Y.S.2d 536, 538 (N.Y. App. Div. 2007). In *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 293 (N.Y. 1995), the Court of Appeals held that where the defendant "refuses to exercise its discretion in the first instance by declining even to consider relevant material" and failed to comply in good faith with its own procedures, the defendant breached its contract.

Here, New York Life's contract with Plaintiff contemplated the exercise of discretion on the part of New York Life. New York Life retained "the exclusive right to select the investments of the Separate Account Subaccounts," O.M. at 6, and gave itself essentially full discretion in managing the Subaccount, Policy at 15-16. *See also supra* Part III.A. As alleged in the Complaint, New York Life grossly abused its discretion by completely failing to perform due diligence and arbitrarily selecting the Tremont Fund. New York Life's course of conduct denied Plaintiff the benefit of his bargain. Because New York Life's actions contradicted its own

representations and flew in the face of numerous warning signs of irregularities at the Tremont Group and the Tremont Fund, Plaintiff submits that New York Life's actions were taken in bad faith.

**B.      Plaintiff Properly Alleges A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Independently Of A Claim For Breach Of Contract**

Defendant's assertion that New York courts do not allow independent claims for breach of the covenant of good faith and fair dealing is simply wrong.  Courts in this District have repeatedly recognized that "under New York law a claim for arbitrary or irrational exercise of discretion under a contract can be separate and apart from a breach of contract claim."  *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 344 (S.D.N.Y. 2008); *see also Chase Manhattan Bank*, 873 F. Supp. at 815 ("A party may be in breach of its implied duty of good faith and fair dealing even if it is not in breach of its express contractual obligations."); *Maddaloni Jewelers, Inc*., 41 A.D.3d at 270, 838 N.Y.S.2d at 538 (same).  Under New York law, New York life was "required to carry out its contractual obligations incident to the exercise of its discretion in good faith."  *Outback/Empire I, Ltd. P'ship v. Kamitis, Inc*., 35 A.D.3d 563, 563, 825 N.Y.S.2d 747, 747 (N.Y. App. Div. 2006).  Plaintiff alleges that New York Life abused its discretion to select investments for the Subaccounts by arbitrarily offering Plaintiff an investment in a Ponzi scheme despite numerous warning signs.  These allegations support an independent and legally cognizable claim for breach of the implied covenant of good faith and fair dealing.

## VIII. PLAINTIFF'S NEGLIGENT MISREPRESENTATION AND BREACH OF FIDUCIARY DUTY CLAIMS ARE NOT TIME-BARRED

### A. Plaintiff's Negligent Misrepresentation Claim Is Subject To A Six-Year Statute Of Limitations

"In New York, a negligent misrepresentation claim that is based on the same factual situation as a fraud claim is subject to a six-year statute of limitations." *Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 701-702 (S.D.N.Y. 2002); *see also Seneca Ins. Co. v. Wilcock*, 2001 Civ. 7620 (WHP), 2002 WL 1067828, at *5 (S.D.N.Y. May 28, 2002) (applying six-year statute of limitations to negligent misrepresentation claim alleging false representations in insurance application); *JWP, Inc.*, 928 F. Supp. at 1253 (applying six-year limitations period to negligent misrepresentation claim alleging that auditors "knew of or recklessly disregarded widespread accounting fraud" at company).

Plaintiff has alleged that New York Life knew of or recklessly disregarded warning signs concerning the Tremont Group and Madoff when making representations to Plaintiff about the Subaccount and the Tremont Fund. Therefore, because Plaintiff's negligent misrepresentation claim sounds in fraud and is based on the same facts as his fraud claim, the Court should apply New York's six-year statute of limitations.

### B. Plaintiff's Breach Of Fiduciary Duty Claim Is Subject To A Six-Year Statute Of Limitations

Under N.Y. C.P.L.R. § 213(8), where "the breach of fiduciary duty involves allegations of actual fraud, the statute of limitations is six years regardless of the remedy sought." *Scantek Med., Inc. v. Sabella*, 583 F. Supp. 2d 477, 490 (S.D.N.Y. 2008); *see also Kaufman v. Cohen*, 307 A.D.2d 113, 120, 760 N.Y.S.2d 157, 164 (N.Y. App. Div. 2003) ("New York clearly holds that a cause of action for breach of fiduciary duty based on allegations of actual fraud is subject to a six-year limitations period."); *see also Goldberg v. Schuman*, 289 A.D.2d 8, 733 N.Y.S.2d

356 (N.Y. App. Div. 2001) (claims for fraud and breach of fiduciary duty governed by six-year limitations). Here, because Plaintiff alleges that New York Life fraudulently misrepresented and concealed information concerning his investment, the statutory six-year limitations period applies to Plaintiff's breach of fiduciary duty claim.

## IX. THE MARTIN ACT DOES NOT PREEMPT PLAINTIFF'S COMMON LAW CLAIMS

### A. The Martin Act Does Not Apply To The Facts Of This Case

Defendants' argument that the Martin Act, N.Y. Gen. Bus. L. § 352-c, preempts Plaintiff's common law claims for breach of fiduciary duty, negligent misrepresentation, unjust enrichment, and breach of the implied covenant of good faith and fair dealing is without merit because New York Life did not offer or sell a security "within or from" New York.

By its own terms, the Martin Act only applies to instances in which securities are offered or sold "within or from" New York. N.Y. Gen. Bus. L. § 352-c(1)(c). Acknowledging this, courts have consistently held that the Martin Act does not preempt common law claims relating to wholly out-of-state transactions. *See Fraternity Fund Ltd v. Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 385, 410 (S.D.N.Y. 2005) (finding no Martin Act preemption because the securities at issue were sold outside of New York); *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, 2002 Civ. 0767 (LBS), 2003 WL 22052894, at *5 (S.D.N.Y. Sept. 2, 2003) (same); *Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 159, 165 (S.D.N.Y. 2001) (same).

In this case, the transaction at issue occurred entirely in Charlotte, North Carolina ("Charlotte"). Plaintiff had no contacts with New York. The Application indicates that Plaintiff signed and entered into the Policy in Charlotte through a registered representative of New York Life that was also based in Charlotte. *See* Williams Decl. Ex. 1 (Policy Application) at 2, 8, 12.

Thus, because New York Life did not sell the Policy "within or from" New York, Plaintiff's common law claims are not preempted.

Defendants mistakenly argue that because "substantial acts in furtherance of the alleged fraud . . . occurred within this District" the Martin Act somehow covers New York Life's conduct. (*See* Def. Mem. 23; *see also* Compl. ¶ 14.) The issue, however, is not whether New York Life's actions in this District furthered its fraud, but whether those actions were "engaged in to induce or promote *the issuance, distribution, exchange, sale, negotiation or purchase within or from this state* of any securities." N.Y. Gen. Bus. L. § 352-c(1)(c) (emphasis added). As alleged in the Complaint, any conduct by New York Life in New York was to promote the sale of securities within and from Charlotte and not from New York. Therefore, by its own terms, the Martin Act does not cover Plaintiff's claims.

### B.   The Martin Act Does Not Preempt Common Law Causes Of Action

Assuming, *arguendo*, that the Martin Act could apply to the facts of this case, neither the New York Court of Appeals nor the Second Circuit has ever held that the Martin Act preempts common law causes of action. *See Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104 (2d Cir. 2001).

Although certain lower New York courts and courts of this District have been divided on this issue, recent decisions of the New York Court of Appeals and New York Appellate Division strongly suggest that the prevailing law of New York is that the Martin Act does not preempt common law claims. Last year, the Second Department ruled that the Court of Appeals had never held that the Martin Act "abrogated or supplanted an otherwise viable private cause of action whenever the allegations would support a Martin Act violation." *Caboara v. Babylon Cove Dev., LLC*, 54 A.D.3d 79, 82, 862 N.Y.S.2d 535, 538 (N.Y. App. Div. 2008). Likewise, in *Scalp & Blade, Inc. v. Advest, Inc*., 281 A.D.2d 882, 883, 722 N.Y.S.2d 639, 640 (N.Y. App.

Div. 2001), the Fourth Department held that "[n]othing in the Martin Act, or in the Court of Appeals cases construing it, precludes a plaintiff from maintaining common-law causes of action based on such facts as might give the Attorney General a basis for proceeding civilly or criminally against a defendant under the Martin Act." This year, the New York Court of Appeals narrowly construed the Martin Act, holding that it only preempted a common law fraud claim "predicated solely" on a failure to make disclosures expressly required by the Martin Act itself. *See Kerusa Co. v. W10Z/515 Real Estate Ltd. P'ship*, 906 N.E.2d 1049, 1050 (N.Y. 2009). Plaintiff respectfully submits that these decisions indicate that New York's highest court would not find that Plaintiff's common law causes of action are preempted by the Martin Act.[9]

## X.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order denying in its entirety New York Life's Motion to Dismiss the Complaint. If, however, the Court dismisses any portion of the Complaint, Plaintiff respectfully requests leave to amend to address any concerns the Court may have.

---

[9] In the cases cited by Defendants, the rationale for preemption is that common law claims which do not include an "additional element" separate from the elements required under the Martin Act are preempted. This rationale does not apply to Plaintiffs' negligent misrepresentation claim because, whereas the Martin Act requires no mental state, negligent misrepresentation requires negligence.

Dated:  July 22, 2009

Respectfully submitted

*/s/ William H. Narwold*
William H. Narwold (WN-1713)
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT  06103
Telephone:   (860) 882-1676
Facsimile:    (860) 882-1682

John C. Duane
William S. Norton (WN-4551)
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29465
Telephone:   (843) 316-9000
Facsimile:    (843) 216-9450

*Counsel for Plaintiff F. Daniel Prickett*