UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master File No. 08 Civ. 11117 (TPG) |
| This Document Relates to: | |
| INSURANCE ACTION, 09 Civ. 557 (TPG), and specifically to: | |
| THE INTERNATIONAL DAD TRUST, Plaintiff, | 11 Civ. 1687 (TPG) |
| - against - | ECF CASE Electronically Filed |
| TREMONT OPPORTUNITY FUND III, L.P., et al., Defendants. | |

**THE TREMONT DEFENDANTS'
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
Tremont Group Holdings, Inc.,
Tremont Partners, Inc. and
Rye Investment Management

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

ARGUMENT .......... 1

I. THE TRUST'S BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE DISMISSED .......... 1

II. THE COMPLAINT FAILS TO STATE A CLAIM OF NEGLIGENT MISREPRESENTATION .......... 3

III. THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE TSA .......... 5

A. The Trust Is Not a Purchaser of Securities and Thus Lacks Standing Under the TSA .......... 5

B. The Complaint Fails Adequately To Allege a False Statement or Omission .......... 8

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

## CASES

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ... 9

Barron Partners LP v. LAB123, Inc.,
593 F. Supp. 2d 667 (S.D.N.Y. 2009) ... 3

Citadel Management, Inc. v. Telesis Trust, Inc.,
123 F. Supp. 2d 133 (S.D.N.Y. 2000) ... 2

Connecticut National Bank v. Germain,
503 U.S. 249 (1992) ... 6, 7

Energytec, Inc. v. Proctor,
516 F. Supp. 2d 660 (N.D. Tex. 2007) ... 5

ExpressJet Airlines, Inc. v. RBC Capital Markets Corp.,
C.A. No. H-09-992, 2009 WL 2244468 (S.D. Tex. July 27, 2009) ... 4, 5

Garber v. Legg Mason, Inc.,
537 F. Supp. 2d 597 (S.D.N.Y. 2008) ... 9

Greenberg Traurig of New York, P.C. v. Moody,
161 S.W.3d 56 (Tex. Ct. App. 2004) ... 4

HB Holdings Corp. v. Scovill, Inc.,
88 Civ. 7893, 1990 WL 37869 (S.D.N.Y. Mar. 26, 1990) ... 6

Levenfeld v. Boyd,
No. 02 C 4735, 2003 WL 22532801 (N.D. Ill. Nov. 6, 2003) ... 7

MBIA Insurance Corp. v. Spiegel Holdings, Inc.,
03 Civ. 10097, 2004 WL 1944452 (S.D.N.Y. Aug. 31, 2004) ... 6

NECA-IBEW Pension Trust Fund v. Bank of America Corp.,
10 Civ. 440 (LAK) (HBP), slip op. (S.D.N.Y. Feb. 9, 2012) ... 9

New York Islanders Hockey Club v. Comerica Bank-Texas,
115 F. Supp. 2d 348 (E.D.N.Y. 2000) ... 3

Olkey v. Hyperion 1999 Term Trust, Inc.,
98 F.3d 2 (2d Cir. 1996) ... 8

Peltz v. D'Urso,
92 Civ. 6457, 1993 WL 664621 (S.D.N.Y. Oct. 7, 1993) ....................6

Ratner v. Sioux Natural Gas Corp.,
770 F.2d 512 (5th Cir. 1985) ....................5

Thermal Imaging, Inc. v. Sandgrain Securities, Inc.,
158 F. Supp. 2d 335 (S.D.N.Y. 2001)....................2

Window Headquarters, Inc. v. MAI Basic Four, Inc.,
91 Civ. 1816, 1993 WL 312899 (S.D.N.Y. Aug. 12, 1993) ....................3

World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.,
530 F. Supp. 2d 486 (S.D.N.Y. 2007)....................3

Zutty v. Rye Select Broad Market Prime Fund, L.P.,
939 N.Y.S.2d 745 (table), 2011 WL 5962804
(N.Y. Sup. Ct., N.Y. County Apr. 15, 2011) ....................9

## STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 77l ....................6

15 U.S.C. § 78j....................6

Tex. Rev. Civ. Stat. Ann. art. 581-33A (Vernon 2010)....................5, 6

Rev. Rule 2003-92, 2003-33 I.R.B. 350 ....................8

Restatement (Second) of Conflicts § 145 cmt. e (1971)....................4

Committee on Securities and Investment Banking of the Section on Corporation, Banking and Business Law of the State Bar of Texas, Tex. Civ. Stat. Ann. art. 581-33, Comment – 1977 Amendment (Vernon 2010) ....................5

John T. Adney & Joseph F. McKeever III, Tax Treatment of Variable Contracts, in VARIABLE ANNUITIES & VARIABLE LIFE INSURANCE REGULATION § 4:3.2[B] (Clifford E. Kirsch ed., 2006) ....................8

The Tremont Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the Complaint.[1] After Tremont filed this motion, the Trust voluntarily discontinued with prejudice its claims alleging secondary violations of the TSA and common law negligence against Tremont (the Second, Third and Fifth Causes of Action, respectively). (See dkt. 33.) This reply brief addresses the remaining claims against Tremont alleged in the Complaint.[2]

## ARGUMENT

### I. THE TRUST'S BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE DISMISSED

The Trust contends that its breach of fiduciary duty claim (Fourth Cause of Action) is a direct claim because it is based on allegations that the Tremont Defendants made misrepresentations to the Trust, thereby inducing it to invest in the Funds. (Opp'n at 6.) The facts alleged in the Complaint and applicable law undermine this assertion.

If the Trust could state a breach of fiduciary duty claim by alleging Tremont fraudulently induced the Trust's investments, that claim would be direct, not derivative. But the Trust cannot state such a claim, rendering the derivative/direct question academic.

To state a claim of breach of fiduciary duty, a plaintiff must adequately allege "the existence of a fiduciary duty between the parties and a breach of that duty by the defendant."

---

1 Unless otherwise defined herein, capitalized terms have the same meaning as in the Tremont Defendants' Memorandum of Law in support of their motion to dismiss the amended Complaint, filed February 14, 2012 ("Moving Brief" or "Mov. Br.," dkt. 16).

2 In its Opposition Brief (at 4), the Trust concedes that only the Trustee of the Trust (and not the Trust itself) has standing to sue Tremont. Because the Trustee is not a plaintiff in this lawsuit, the Trust requests "a reasonable time to allow the trustee to 'ratify, join, or be substituted into the action' before dismissal." (Id.) Tremont respectfully submits that any substitution of the Trustee for the Trust as plaintiff in this action can, and should, await this Court's ruling on the balance of Tremont's motion to dismiss. To the extent any claim against Tremont survives the motion, the Trust should be compelled at that juncture to substitute the Trustee as plaintiff.

Thermal Imaging, Inc. v. Sandgrain Sec., Inc., 158 F. Supp. 2d 335, 343 (S.D.N.Y. 2001). As shown in Tremont's Moving Brief, the Complaint alleges no facts sufficient to show that Tremont owed any fiduciary duty to the Trust. (See Mov. Br. at 13-14 & n.11.) Thus, regardless of whether the claim is derivative or direct, the Complaint fails to state a breach of fiduciary duty claim as against Tremont.

In an attempt to salvage its claim, the Trust contends in its Opposition Brief that the Tremont Defendants should be viewed as stockbrokers who handled discretionary accounts and "managed the investment of the Trust's money," thereby creating a fiduciary relationship between Tremont and the Trust. (Opp'n at 12.) The fatal flaw with this contention is that, as a matter of law, Tremont managed *the Funds'* assets, not those of the Trust. Moreover, the Complaint does not otherwise allege facts establishing that Tremont acted as the Trust's broker, much less developed a relationship of trust and confidence with it, as required to show that Tremont became a fiduciary of the Trust.

Under the terms of the Policy issued by the Carrier to the Trust, the Policy's excess cash was deposited into sub-accounts created by the Carrier. (Compl. ¶ 14.) The Carrier used all or a portion of that cash to purchase Interests in the Funds, which were organized as limited partnerships. (Id. ¶ 17.) The cash exchanged by the Carrier for Interests in the Funds became the property of *the Funds* "at the moment [it was] deposited" into the Funds' accounts. Citadel Mgmt., Inc. v. Telesis Trust, Inc., 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000). Thus, to the extent Tremont made any investments on behalf of the Funds, it was investing the Funds' assets, not the assets of the Carrier (much less the assets of the Trust).

The Trust also attempts to show a fiduciary relationship by contending that Tremont represented to the Trust that it had developed unique expertise in evaluating asset managers such as Madoff, and the Trust relied on those representations in deciding whether to direct an

investment in the Funds. (Opp'n at 12-13.) This argument fails because it is well-settled that "reliance upon another's expertise alone does not establish a fiduciary obligation." Window Headquarters, Inc. v. MAI Basic Four, Inc., 91 Civ. 1816, 1993 WL 312899, at *4 (S.D.N.Y. Aug. 12, 1993); accord, e.g., World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 530 F. Supp. 2d 486, 504 (S.D.N.Y. 2007), aff'd, 328 F. App'x 695 (2d Cir. 2009). Thus, the allegations of the Complaint are insufficient to show that Tremont established a fiduciary relationship with the Trust, warranting dismissal of the Trust's breach of fiduciary duty claim as against Tremont. (See also Mov. Br. at 8-10, 13-14.)

## II. THE COMPLAINT FAILS TO STATE A CLAIM OF NEGLIGENT MISREPRESENTATION

It is undisputed that privity or a special relationship approaching privity between Tremont and the Trust is an essential element of a negligent misrepresentation claim under New York law. See, e.g., Barron Partners LP v. LAB123, Inc., 593 F. Supp. 2d 667, 674 (S.D.N.Y. 2009) (citing Ossining Union Free Sch. Dist. v. Anderson, 539 N.E.2d 91, 94 (N.Y. 1989)). Unable to adequately allege any such relationship in the Complaint, the Trust contends that its claim is governed by Texas law, which purportedly has no special relationship requirement. (Opp'n at 10-11.) Contrary to the Trust's contention, Texas choice-of-law rules compel the conclusion that the law of New York, not Texas, governs this claim.[3]

[3] The Trust's request for leave to file a sur-reply brief to address Texas choice-of-law principles (Opp'n at 10 n.6) should be rejected. Tremont's Moving Brief addressed the question of the sufficiency of the Complaint's negligent misrepresentation claim under New York law. (See Mov. Br. at 15 and cases incorporated therein.) Consequently, the Trust could – and should – have attempted to rebut Tremont's position regarding the applicable law in its Opposition Brief. The Trust's deliberate decision to refrain from addressing this issue in its Opposition Brief provides no basis for granting the Trust an opportunity to address it belatedly in a sur-reply. See, e.g., N.Y. Islanders Hockey Club v. Comerica Bank-Texas, 115 F. Supp. 2d 348, 350 (E.D.N.Y. 2000) (denying leave to file sur-reply).

In the event of a conflict, Texas applies the "most significant relationship" test found in the Restatement (Second) of Conflict of Laws. See, e.g., Greenberg Traurig of N.Y., P.C. v. Moody, 161 S.W.3d 56, 70 (Tex. Ct. App. 2004) (citing Hughes Wood Prods., Inc. v. Wagner, 18 S.W.3d 202, 205 (Tex. 2000)). Under that test, courts examine a state's connection, if any, to the transaction at issue by analyzing such factors as: (i) the place of the alleged injury; (ii) the place where the conduct causing the injury occurred; (iii) the residence of the parties; and (iv) the place where the relationship, if any, between the parties is centered. See id. at 70-71. The relative strength of the competing states' interests in regulating the conduct in question also is a relevant factor to be considered. See id. at 73-76.

Here, most of the relevant factors warrant application of New York law. The Funds' offering materials – the documents containing the misrepresentations alleged in the Complaint (Compl. ¶¶ 16, 36) – were prepared by Tremont and disseminated from its headquarters in Rye, New York.[4] (Id. ¶¶ 2-6.) The investment management services Tremont allegedly promised to investors – services central to the relationship, if any, between the parties – were to be performed by Tremont in Rye, New York. (Id. ¶ 21.) Madoff's Ponzi scheme – the cause of the investment losses at issue – was orchestrated and carried out from the offices of BLMIS in New York. (Id.) See, e.g., Greenberg Traurig, 161 S.W.3d at 70-74. And New York, in contrast to Texas, has the strongest interest in regulating the conduct of New York-based investment management firms such as Tremont. As explained by the court in ExpressJet Airlines, Inc. v. RBC Capital Markets Corp., C.A. No. H-09-992, 2009 WL 2244468 (S.D. Tex. July 27, 2009):

---

4 Tremont sent the offering materials to investors in several states. (See, e.g., Opportunity Fund PPM (Trans. Decl. Ex. A) at overleaf, 17, 31, 34, 43; International Fund PPM (Trans. Decl. Ex. B) at overleaf, "Suitability" section, "Certain Risk Factors" section and "Tax Considerations" section.) Where, as here, alleged misrepresentations are disseminated from one location to recipients located in multiple jurisdictions, the locus of dissemination "will usually be given particular weight in determining the state of the applicable law." Restatement (Second) of Conflicts § 145 cmt. e (1971).

> This court does not dispute that a state has an interest in preventing fraud committed against its citizens and citizen corporations; however, here, national interests and those of New York, in particular, prevail . . . . New York City, New York, is widely known as the nation's financial capital, if not that of the world. Investors throughout the country trade in markets operating out of New York. New York's interest in regulating these markets predominates because the financial industry is critical to its overall economic health and viability, as well as that of the nation.

Id. at *13.

Accordingly, this Court should apply New York law and dismiss the Trust's Sixth Cause of Action in light of the Complaint's failure to allege a special relationship between Tremont and the Trust, as required to state a negligent misrepresentation claim under governing New York law.

## III. THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE TSA

### A. The Trust Is Not a Purchaser of Securities and Thus Lacks Standing Under the TSA

The Complaint's First Cause of Action for alleged violation of Section 33A.(2) of the TSA also should be dismissed. Section 33A.(2) provides that "[a] person who offers or sells a security . . . by means of an untrue statement of a material fact or an omission . . . is liable *to the person buying the security from him*[.]" Tex. Rev. Civ. Stat. Ann. art. 581-33A.(2) (Vernon 2010) (emphasis added). Every court and commentator addressing the question has concluded that the italicized language establishes a privity requirement between purchaser and seller. See Committee on Sec. & Inv. Banking of the Section on Corp., Banking & Bus. Law of the State Bar of Tex., Tex. Civ. Stat. Ann. art. 581-33, Comment – 1977 Amendment (Vernon 2010) ("[Section 33A.(2)] is a privity provision, allowing a buyer to recover from his offeror or seller"); see also Ratner v. Sioux Natural Gas Corp., 770 F.2d 512, 517 (5th Cir. 1985) (the "protection [of this statute] extends only to purchasers"); Energytec, Inc. v. Proctor, 516 F. Supp. 2d 660, 676-77 (N.D. Tex. 2007) (plaintiffs who "'did not buy the security . . . lack standing to sue the person who offered or sold it'" (citation omitted)). Indeed, the plain language of the statute unequivocally provides a

remedy solely to a purchaser "buying the security from" the seller. Tex. Rev. Civ. Stat. Ann. art. 581-33A.(2); see also Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (citation omitted)).

The Trust concedes, as it must, that it never purchased any security from TPI. (See Opp'n at 13 ("the Carrier, and not the Trust, served as the limited partner"); see also id. at 2, 3, 13, 14, 17, 18.) Nonetheless, it invites the Court to grant the Trust unprecedented standing to assert a claim under the TSA as a "de facto purchaser." (Id. at 14-18.)

The Trust seeks to import this concept of "de facto purchaser" from certain cases interpreting Section 10(b) of the Securities Exchange Act of 1934 (see Opp'n at 16-17 and cases cited therein).[5] Those cases are readily distinguishable because Section 10(b) does not contain language similar to that found in the TSA requiring the plaintiff to "buy[] the security from [the defendant.]" Compare 15 U.S.C. § 78j, with Tex. Rev. Civ. Stat. Ann. art. 581-33A.(2). To the extent decisions in actions arising under Section 10(b) have any relevance at all, they do not support the Trust's position on standing here. They hold that a third party may be considered a de facto purchaser with standing to assert claims under the Exchange Act where: "(1) [the actual purchaser] was a shell corporation created solely to facilitate [the de facto purchaser's] purchase of

[5] One case cited by the Trust, HB Holdings Corp. v. Scovill, Inc., 88 Civ. 7893, 1990 WL 37869 (S.D.N.Y. Mar. 26, 1990), also applied the concept of "de facto purchaser" to claims arising under Section 12(a)(2) of the Securities Act of 1933, which grants standing to "the person purchasing such security[.]" 15 U.S.C. § 77l. That opinion, however, does not specifically address or construe the critical language of the statute which, on its face, limits standing to purchasers. The cases that focus on that language have rejected the concept of de facto purchaser standing. See MBIA Ins. Corp. v. Spiegel Holdings, Inc., 03 Civ. 10097, 2004 WL 1944452, at *3-4 (S.D.N.Y. Aug. 31, 2004) (Lynch, J.) (questioning de facto purchaser standing and highlighting its inconsistency with statutory language and Supreme Court precedent); Peltz v. D'Urso, 92 Civ. 6457, 1993 WL 664621, at *1 (S.D.N.Y. Oct. 7, 1993) (rejecting de facto purchaser concept).

an interest in the [security]; (2) [the defendant] initiated the purchase and suggested the creation of [the actual purchaser] to facilitate the transaction; (3) the negotiations and alleged misrepresentations occurred before [the actual purchaser] was even created; (4) the negotiations for the purchase was conducted between [the de facto purchaser] and [the seller], without regard to the [actual purchaser; and] (5) the [de facto purchaser's] money, not [the actual purchaser's], was at risk in the transaction." E.g., Levenfeld v. Boyd, No. 02 C 4735, 2003 WL 22532801, at *6 (N.D. Ill. Nov. 6, 2003). No such facts have been or could be alleged in the Complaint in this case.

Scottish Annuity & Life International Insurance Company Ltd. (the Carrier) is a well-established insurance company with significant operations. This Carrier sold policies to numerous insureds (not just the Trust), negotiated its own participation agreement with TPI and placed its own money at risk by investing cash held in its separate accounts in Funds managed by TPI. Moreover, in light of applicable insurance law and the federal tax code (discussed more fully below), the investments deliberately were structured so that the Trust would *not* be deemed the purchaser of the securities sold by the Funds to the Carrier. Thus, any precedent regarding de facto purchasers under Section 10(b) of the Exchange Act has no application here.

There also is no merit to the contention that the Trust should have standing to sue under the TSA in order to "protect investors." (Opp'n at 15.) As a threshold matter, this "policy" argument is inappropriate where, as here, the language of the statute is clear and unambiguous. See, e.g., Connecticut Nat'l Bank, 503 U.S. at 253-54. It fails to withstand analysis in any event because in this case, the investor in need of "protection" is the Carrier, which could have sued TPI had it wished to do so. Moreover, if the Trust were deemed to be the actual purchaser of securities for standing purposes under the TSA, adoption of that fiction would jeopardize its own interests and the interests of other policyholders by placing at risk the favorable tax treatment otherwise accorded variable insurance products such as the Policy. Indeed, the deferral of federal income

tax on those policies is available if – and only if – the assets invested in vehicles such as the Funds are "considered the assets of the life insurance company that issues the contract and not the property of the policyholder." John T. Adney & Joseph F. McKeever III, Tax Treatment of Variable Contracts, in VARIABLE ANNUITIES & VARIABLE LIFE INS. REGULATION, § 4:3.2[B] (Clifford E. Kirsch ed., 2006). Thus, under applicable regulations, in order to qualify for tax deferral, a policyholder may not "possess 'investor control' over the assets underlying the contract." Id. If the Trust were found to possess such control – *i.e.*, if it were found to be the actual purchaser of Interests in the Funds – it could be required to pay significant taxes and penalties. See, e.g., Rev. Rule 2003-92, 2003-33 I.R.B. 350.

In sum, the Trust has proffered no legitimate reason to ignore the plain language of Section 33A.(2) of the TSA, which limits standing to buyers of securities. The First Cause of Action brought pursuant to the TSA therefore should be dismissed.

**B. The Complaint Fails Adequately To Allege a False Statement or Omission**

Even if the Trust had standing to sue, the allegations of the Complaint are insufficient to state a claim under the TSA. The gravamen of the Trust's First Cause of Action is that TPI falsely represented that it had performed due diligence on Madoff. (See, e.g., Opp'n at 20 ("[T]he Amended Complaint alleges . . . that the Tremont Defendants invested their clients' funds with Madoff without conducting any due diligence into Madoff's operations whatsoever.").) The only basis the Trust offers for this allegation is that if TPI had "conducted the due diligence required of [it, it] would have discovered . . . red flags" of Madoff's fraud – and presumably chosen not to invest with him. (Compl. ¶ 21.) The Complaint, however, does not attempt to identify what those red flags were, or how one or more of them would have alerted TPI that investing with Madoff would be unreasonable under the circumstances. As the Second Circuit has repeatedly admonished, "[n]ot every bad investment is the product of misrepresentation." Olkey v. Hyperion

1999 Term Trust, Inc., 98 F.3d 2, 8 (2d Cir. 1996) (affirming dismissal of conclusory allegations that defendant must not have performed promised services); see also NECA-IBEW Pension Trust Fund v. Bank of America Corp., 10 Civ. 440 (LAK) (HBP), slip op. at 63 (S.D.N.Y. Feb. 9, 2012) (Trans. Decl. Ex. E) ("[T]he fact that a due diligence investigation turned out to reach results that ultimately proved to be incorrect does not mean that a statement by a company that it performed extensive due diligence was false at the time it was made.").[6]

Because the Complaint contains no factual matter, accepted as true, sufficient to "'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), the First Cause of Action should be dismissed. See id.; see also Garber v. Legg Mason, Inc., 537 F. Supp. 2d 597, 610-14 (S.D.N.Y. 2008) (dismissing claims under Sections 11 and 12(a)(2) of the Securities Act of 1933 where the plaintiff had alleged "no specific facts" to demonstrate falsity, holding that "'[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal'" (citation omitted)), aff'd, 347 F. App'x 665 (2d Cir. 2009); Zutty v. Rye Select Broad Mkt. Prime Fund, L.P., 939 N.Y.S.2d 745 (table), 2011 WL 5962804, at *10 (N.Y. Sup. Ct., N.Y. County Apr. 15, 2011) (finding that plaintiffs had insufficiently alleged that Tremont's representations were false, noting that "courts have repeatedly 'rejected the legitimacy of alleging fraud by hindsight'" (quoting Shields v. Citytrust Bancorp., Inc., 25 F.3d 1124, 1129 (2d Cir. 1994)).

---

[6] The Trust's attempt to distinguish NECA-IBEW (Opp'n at 20) is unavailing. Here, as in NECA-IBEW, plaintiff has alleged in entirely conclusory fashion that defendants would have discovered warning signs of wrongdoing if they had conducted the due diligence they purportedly promised to conduct. See NECA-IBEW, slip op. at 60 ("Plaintiffs also allege that if BAC had conducted a proper due diligence investigation, it would have discovered, and thus, it would have disclosed, that Countrywide had followed [improper procedures.]").

**CONCLUSION**

For all of the foregoing reasons and the reasons stated in the Moving Brief, the Tremont Defendants' motion to dismiss should be granted in all respects.

Dated: New York, New York
April 25, 2012

Respectfully submitted,

/s/ Seth M. Schwartz
Seth M. Schwartz (Seth.Schwartz@Skadden.com)
Jason C. Vigna (Jason.Vigna@Skadden.com)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
  Tremont Group Holdings, Inc.,
  Tremont Partners, Inc. and
  Rye Investment Management