UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master File No. : 08 Civ. 11117 (TPG) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This Document Relates to:  INSURANCE ACTION,
 09 Civ. 557 (TPG), and specifically to:                        :

                                                               :

YALE M. FISHMAN 1998 INSURANCE TRUST,

                Plaintiff,                       :   11 Civ. 1283 (TPG)

                                                               :   ECF CASES
      - against -                                              Electronically Filed

                                                               :
PHILADELPHIA FINANCIAL LIFE ASSURANCE
COMPANY, et al.,                                               :

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -:
YALE M. FISHMAN 1998 INSURANCE TRUST, et ano,

                Plaintiffs,                      :

                                                                   11 Civ. 1284 (TPG)
      - against -                                          :

                                                               :
GENERAL AMERICAN LIFE INSURANCE
COMPANY, et al.,                                               :

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## THE TREMONT DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINTS

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
Tremont Group Holdings, Inc.,
Tremont Partners, Inc.,
Rye Investment Management,
Tremont Capital Management, Inc.,
Robert Schulman, Rupert A. Allan,
Mark Santero, Cynthia J. Nicoll,
Ileana M. López-Balboa, Stephen Clayton,
John T. Matwey, Lynn O. Keeshan
and Barry H. Colvin

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

ARGUMENT ............................................................................................................................ 1

I.      THE FISHMANS LACK STANDING TO ASSERT DERIVATIVE CLAIMS ............... 1

      A.     Delaware Law Is Controlling .................................................................... 1

      B.     The Fishmans Lack Double Derivative Standing ...................................... 2

      C.     The Complaint Does Not Adequately Allege Demand Futility ...................... 3

II.     THE COMPLAINTS FAIL TO STATE A CLAIM FOR RELIEF ........................... 5

      A.     The Complaints Fail To State a Claim of Fraud ...................................... 5

      B.     The Complaints Fail To State a Claim of Breach of Fiduciary Duty ................. 7

      C.     The Complaints Fail To State a Claim of Aiding and Abetting Breach of
            Fiduciary Duty ....................................................................................... 9

      D.     The Complaints Fail To State a Claim of Gross Negligence ................... 9

      E.     The Complaints Fail To State a Claim of Negligent Misrepresentation ............... 10

      F.     The Complaints Fail To State a Claim of Unjust Enrichment .............................. 10

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

## CASES

American Auto Insurance Co. v. Rest Assured Alarm System Inc.,
786 F. Supp. 2d 798 (S.D.N.Y. 2011) ...............................................................9

Anwar v. Fairfield Greenwich Ltd.,
728 F. Supp. 2d 372 (S.D.N.Y. 2010) ...............................................................2

Bruhl v. Conroy,
03-23044-CIV., 2006 U.S. Dist. LEXIS 66387 (S.D. Fla. Mar. 31, 2006) ...........................1

Buckley v. O'Hanlon,
No. 04-955, 2007 WL 956947 (D. Del. Mar. 28, 2007) .......................................9

Chateau Hip, Inc. v. Gilhuly,
95 Civ. 10320, 1996 WL 437929 (S.D.N.Y. Aug. 2, 1996) .................................6

In re Citigroup, Inc. Securities Litigation,
330 F. Supp. 2d 367 (S.D.N.Y. 2004) ...............................................................6

Dean v. Dick,
C.A. No. 16566, 1999 WL 413400 (Del. Ch. June 10, 1999) ..............................4

Emerald Partners v. Berlin,
787 A.2d 85 (Del. 2001) ...................................................................................8

Fiala v. Metropolitan Life Insurance Co.,
776 N.Y.S.2d 29 (N.Y. App. Div. 1st Dep't 2004) ...............................................9

Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC,
376 F. Supp. 2d 385 (S.D.N.Y. 2005) ...............................................................2

Garza ex rel. Navistar International Corp.,
08 C 1387, 2010 WL 3324881 (N.D. Ill. Aug. 13, 2010) ...................................5

Glidepath Holding B.V. v. Spherion Corp.,
04 Civ. 9758, 2010 WL 1372553 (S.D.N.Y. Mar. 26, 2010) ..............................5

Goldman v. Metropolitan Life Insurance Co.,
807 N.Y.S.2d 583 (2005) ...............................................................................10

Greenspun v. Lindley,
330 N.E.2d 79 (N.Y. 1975) ...............................................................................2

Kernaghan v. Franklin,
06 Civ. 1533, 2008 WL 4450268 (S.D.N.Y. Sept. 29, 2008) .............................4

ii

King ex rel. Cephalon Inc. v. Baldino,
    409 F. App'x 535 (3d Cir. 2010) ..................................................................5

Lambrecht v. O'Neal,
    3 A.3d 277 (Del. 2010).................................................................................3

Litman v. Prudential-Bache Properties, Inc.,
    C.A. No. 12137, 1993 WL 5922 (Del. Ch. Jan. 4, 1993)...........................4, 5

Manela v. Gottlieb,
    784 F. Supp. 84 (S.D.N.Y. 1992)..................................................................6

Manufacturers Life Insurance Co. v. Donaldson, Lufkin & Jenrette Securities Corp.,
    99 Civ. 1944, 2000 WL 709006 (S.D.N.Y. June 1, 2000)...........................8

In re Manulife Financial Corp. Securities Litigation,
    276 F.R.D. 87 (S.D.N.Y. 2011).....................................................................7

Marino v. Grupo Mundial Tenedora, S.A.,
    810 F. Supp. 2d 601 (S.D.N.Y. 2011)...........................................................9

McCall v. Scott,
    250 F.3d 997 (6th Cir. 2001).........................................................................9

Meridian Horizon Fund, LP v. KPMG (Cayman),
    11-3311-cv, 2012 WL 2754933 (2d Cir. July 10, 2012)...............................7

Mizrahi v. Chanel, Inc.,
    746 N.Y.S.2d 878 (N.Y. Sup. Ct. N.Y. County 2001).................................1

Norlin Corp. v. Rooney, Pace Inc.,
    744 F.2d 255 (2d Cir. 1984)...........................................................................2

Pennsylvania v. Girard Life Insurance Co.,
    158 A. 262 (Pa. 1932) ....................................................................................3

Pension Committee of the University of Montreal Pension Plan v. Bank of
    America Securities, LLC,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006).......................................................1, 2

Platinum Partners Value Arbitrage Fund LP v. Knoll Associates, Inc.,
    No. 105508/2010, 2011 N.Y. Misc. LEXIS 4737
    (N.Y. Sup. Ct. N.Y. County Sept. 30, 2011)............................................8, 10

Pope Investments II LLC v. Deheng Law Firm,
    10 Civ. 6608, 2011 WL 5837818 (S.D.N.Y. Nov. 21, 2011) .......................7

Saltz v. First Frontier, LP,
    782 F. Supp. 2d 61 (S.D.N.Y. 2010)............................................................10

Securities & Exchange Commission v. Lauer,
    03-80612-CIV., 2006 WL 2462629 (S.D. Fla. Aug. 17, 2006) ............................................1

Shields v. Citytrust Bancorp Inc.,
    25 F.3d 1124 (2d Cir. 1994) ...................................................................................................8

South Cherry Street, LLC v. Hennessee Group LLC,
    573 F.3d 98 (2d Cir. 2009) .....................................................................................................7

Sternberg v. O'Neil,
    550 A.2d 1105 (Del. 1988)......................................................................................................2

Trump v. Cheng,
    No. 602877/05, 2006 N.Y. Misc. LEXIS 2465
    (N.Y. Sup. Ct. N.Y. County July 24, 2006) .........................................................................4

United States v. Rajaratnam,
    09 Cr. 1184, 2012 WL 362031 (S.D.N.Y. Jan. 31, 2012)....................................................7

Zutty v. Rye Select Broad Market Prime Fund, L.P.,
    939 N.Y.S.2d 745 (table), 2011 WL 5962804 (N.Y. Sup. Ct. N.Y. County 2011) ..............1

## STATUTES

New York Partnership Law § 115-a(2) (McKinney 2005)................................................................2

New York Partnership Law § 121-901 (McKinney 2005) ............................................................1

Tremont respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaints.[1]

**ARGUMENT**

**I.      THE FISHMANS LACK STANDING TO ASSERT DERIVATIVE CLAIMS**

     **A.      Delaware Law Is Controlling**

Standing to sue Tremont derivatively is governed *not* by New York law, as the Fishmans erroneously contend (see Opp'n Br. at 18), but rather, by Delaware law.  Section 121-901 of the New York Partnership Law specifically provides that "the laws of the jurisdiction under which a foreign limited partnership is organized govern its organization and internal affairs."  In other words, under Section 121-901, the internal affairs doctrine applies automatically, without exception, to all claims implicating the internal affairs of a foreign limited partnership.  Even where, in contrast to this case, the dispute pertains to the internal affairs of a defunct limited partnership, the internal affairs rule remains fully applicable to resolution of the dispute.[2]  See, e.g., Mizrahi v. Chanel, Inc., 746 N.Y.S.2d 878, 880-81, 883 (N.Y. Sup. Ct. N.Y. County 2001).  Accordingly, because the Funds are limited partnerships organized under the law of Delaware, the internal affairs rule codified in Section 121-901 mandates application of Delaware law to the Fishmans' claims here.  See, e.g.,

---

[1]    Unless otherwise defined herein, capitalized terms have the same meaning as in the Tremont Defendants' memorandum of law in support of their motion to dismiss, filed March 23, 2012.  ("Moving Brief" or "Mov. Br.," Dkt. 733.)

[2]    In contrast to the hedge funds at issue in Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC, 446 F. Supp. 2d 163 (S.D.N.Y. 2006) (Opp'n Br. at 19 n.12), the Funds in this case are *not* defunct.  The Funds continue to function as Delaware limited partnerships that are marshalling assets for distribution to the Funds' limited partners.  Tremont continues to actively manage this process, along with the Funds' other remaining affairs.  This stands in stark contrast to the facts presented in the Montreal Pension case, where the hedge funds at issue, corporations organized under the law of the British Virgin Islands, were defunct at the time of the litigation, the funds' directors had resigned from the boards of the funds, and the funds' investment manager had been replaced by a court-appointed receiver.  See id. at 194; see also SEC v. Lauer, 03-80612-CIV., 2006 WL 2462629, at *2 (S.D. Fla. Aug. 17, 2006); Bruhl v. Conroy, 03-23044-CIV., 2006 U.S. Dist. LEXIS 66387, at *5-7 (S.D. Fla. Mar. 31, 2006).

1

Zutty v. Rye Select Broad Mkt. Prime Fund, L.P., 939 N.Y.S.2d 745 (table), 2011 WL 5962804, at *7 (N.Y. Sup. Ct. N.Y. County 2011) (finding that Section 121-901 required application of Delaware law to determine whether plaintiff's Madoff-related claims against Tremont were derivative or direct).[3]

    In all events, the Fishmans' choice-of-law argument is irrelevant.  Under *both* New York *and* Delaware law, derivative claims on behalf of limited partnerships may be maintained solely by the partners of the partnership.  See, e.g., N.Y. P'Ship Law § 115-a(2) (McKinney 2005).  Because the Fishmans admittedly are not partners of the Funds, they lack standing to maintain derivative claims against Tremont under the law of either jurisdiction.

## B.    The Fishmans Lack Double Derivative Standing

    In their Opposition Brief, the Fishmans contend for the first time that this is a "double derivative suit" they purportedly have standing to assert on behalf of the Carriers that issued the Policies.[4]  The Fishmans are wrong as a matter of law.

    In a double derivative suit, the shareholders of a parent corporation bring derivative claims against directors of a wholly-owned subsidiary.  See, e.g., Sternberg v. O'Neil, 550 A.2d 1105, 1107 n.1 (Del. 1988) (citing 13 William M. Fletcher, Cyclopedia of the Law of Private Corps. § 5977).

---

[3]    Greenspun v. Lindley, 330 N.E.2d 79 (N.Y. 1975), is not to the contrary and the Fishmans' reliance on the case (see Opp'n Br. at 19) is misplaced.  Greenspun is inapposite because it arose in the context of a corporate dispute and did not address the application of Section 121-901 to limited partnerships such as the Funds.  To the extent Greenspun ever had any application to limited partnerships, it was effectively overruled by Section 121-901, which the legislature enacted sixteen years after Greenspun was decided. The other cases cited by the Fishmans also are inapposite because they do not mention Section 121-901, much less hold that the internal affairs rule it codifies is subject to any exception.  See Norlin Corp. v. Rooney, Pace Inc., 744 F.2d 255, 263 (2d Cir. 1984); Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 401 n.8 (S.D.N.Y. 2010); Montreal Pension, 446 F. Supp. 2d at 191-92; Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 376 F. Supp. 2d 385, 408 (S.D.N.Y. 2005).

[4]    The Fishmans' contention that they have standing to assert *direct* claims of misrepresentation against Tremont (see Opp'n Br. at 20-21) is irrelevant to the question of whether they have standing to assert *derivative* claims based on Tremont's purported mismanagement of the assets of the Funds.

Here, the Fishmans do not allege they are shareholders of either Carrier.  Rather, they allege they are holders of Policies issued by General American Life Insurance Company, a wholly owned subsidiary of Metropolitan Life Insurance Company, and Philadelphia Financial Life Assurance Company, a stock life insurance company owned by its stockholders, not its policyholders.  <u>See Pennsylvania v. Girard Life Ins. Co.</u>, 158 A. 262, 263-64 (Pa.), <u>aff'd</u>, 287 U.S. 570 (1932).  Given that the Fishmans do not claim to be shareholders of either Carrier, they have no standing to sue derivatively on behalf of either company.  <u>Cf.</u> <u>Lambrecht v. O'Neal</u>, 3 A.3d 277, 282 (Del. 2010) ("[B]y its nature a double derivative suit is one brought by a shareholder of a parent corporation to enforce a claim belonging to a subsidiary that is either wholly owned or majority controlled.").

Even if the Fishmans were shareholders of the Carriers, they still would lack standing to maintain a double derivative claim.  To obtain double derivative standing, the Fishmans must allege in their Complaints particularized factual allegations sufficient to show that they made a pre-suit demand on the Carriers or that there is a "reasonable doubt that the [Carriers'] board of directors could properly have exercised its independent and disinterested business judgment in responding to a demand."  <u>Lambrecht</u>, 3 A.3d at 285-86.  Because the Complaints in this case contain no such allegations, the Fishmans lack standing to maintain a double derivate claim in all events.

### C.    <u>The Complaint Does Not Adequately Allege Demand Futility</u>

As noted above, the claims alleged in the Complaint are not asserted as "double derivative" claims on behalf of the Carriers.  Rather, they are pled as "standard" derivative claims on behalf of the Funds.  The Fishmans lack standing to assert those claims too because they are not limited partners of the Funds and, even if they were, they have not satisfied the demand requirements applicable to standard derivative claims.

In their Opposition Brief, the Fishmans do not dispute that they lack standing to maintain any standard derivative claim on behalf of the Funds unless they are limited partners of the Funds.

This concession is, by itself, fatal to their claims.  Moreover, with respect to the demand requirements, it is undisputed that the Fishmans made no presuit demand on Tremont.  In addition, the Complaints fail to allege, as they must, particularized facts sufficient to show why the requirement of a presuit demand should be excused in this case.  (See Mov. Br. at 8 n.16.)  In that connection, the Fishmans contend that a presuit demand on Tremont would have been futile because "in responding to a demand . . ., the Tremont Defendants would need to sue themselves."  (Opp'n Br. at 22.)  This "rote allegation," however, consistently has been rejected as a basis for excusing demand.  E.g., Kernaghan v. Franklin, 06 Civ. 1533, 2008 WL 4450268, at *7 (S.D.N.Y. Sept. 29, 2008).

In the same vein, demand is not excused merely because defendant TPI, the general partner of the Funds, "is entirely owned by one party [defendant TGH], and the general partner would be suing that party."  (Opp'n Br. at 22.)  As one court has explained in rejecting a virtually identical allegation as insufficient to excuse demand:

> [Plaintiff] argues that no pre-suit demand is required where the demanded suit includes claims against the Cheng Group, which is the 100 percent owner of the general partner, to whom the demand would be made.  However, "the conclusory allegation that the general partners cannot be expected to sue themselves, as alleged in the Amended Complaint, . . . is insufficient as a matter of law."

Trump v. Cheng, No. 602877/05, 2006 N.Y. Misc. LEXIS 2465, at *15-16 (N.Y. Sup. Ct. N.Y. County July 24, 2006) (quoting Litman v. Prudential Bache Props., Inc., C.A. No. 12137, 1993 WL 5922, at *4 (Del. Ch. Jan. 4, 1993), aff'd, 642 A.2d 837 (Del. 1994)).[5]

---

[5]  Dean v. Dick, C.A. No. 16566, 1999 WL 413400 (Del. Ch. June 10, 1999) (Opp'n Br. at 22), is distinguishable because in that case, there was only one named counterclaim defendant (Dean), and he was the sole owner of the manager of the fund that had the right to sue Dean, i.e., the fund on which demand had to be made.  Id. at *1, 3.  In contrast, in this case, there are numerous defendants, most of whom do not control Tremont and thus cannot control the decision to bring suit.  Given the absence of any allegation in the Complaints to show that Tremont is beholden to any of those unaffiliated defendants, Tremont does not lack the independence needed to adequately evaluate a presuit demand to commence litigation against those defendants.

The Fishmans fare no better with their argument that there is "a 'substantial likelihood' that [the Tremont Defendants] face serious potential liability." (Opp'n Br. at 22.) This conclusory assertion also is insufficient to establish demand futility. See, e.g., Garza ex rel. Navistar Int'l Corp. v. Belton, 08 C 1387, 2010 WL 3324881, at *4-5 (N.D. Ill. Aug. 13, 2010). In light of the exculpation provisions of the LPAs, the Tremont Defendants face no substantial likelihood of liability absent allegations sufficient to establish gross negligence, intentional misconduct or bad faith on the part of each Tremont Defendant. Because the Fishmans plainly have not made the requisite showing, their derivative claims in Counts X, XII, XIV and XV should be dismissed on the ground the Fishmans lack standing to assert them. See King ex rel. Cephalon Inc. v. Baldino, 409 F. App'x 535, 537 (3d Cir. 2010) (applying Delaware law); see also Litman, 1993 WL 5922, at *2-3.

## II.     THE COMPLAINTS FAIL TO STATE A CLAIM FOR RELIEF

### A.     The Complaints Fail To State a Claim of Fraud

As demonstrated in Tremont's Moving Brief, as a matter of law, the Fishmans cannot show that the Funds relied on any alleged misrepresentation made by Tremont given that the knowledge of the Funds' general partner, TPI, must be imputed to the Funds. (See Mov. Br. at 12 (citing Picard v. Estate of Chais (In re Bernard L. Madoff Inv. Sec. LLC), 445 B.R. 206, 224 (Bankr. S.D.N.Y. 2011).)[6] In response, the Fishmans contend in their Opposition Brief that had they "known the Tremont Defendants, PFLAC and GenAmerican would knowingly or recklessly invest their funds imprudently, they would never have invested their monies and/or Policies in TOF III." (Opp'n at 48.) This contention is beside the point because it is an allegation that the *Fishmans* relied on Tremont, an allegation that appears solely in the Opposition Brief, but not in the Complaints. (See

---

[6]   While the Fishmans are correct that reasonable reliance on occasion implicates factual issues (see Opp'n Br. at 49 n.34), those issues are not implicated in this case. Where, as here, there can be no reasonable reliance as a matter of law, claims of fraud can and should be dismissed. See, e.g., Glidepath Holding B.V. v. Spherion Corp., 04 Civ. 9758, 2010 WL 1372553, at *8 (S.D.N.Y. Mar. 26, 2010), aff'd, 425 F. App'x 76 (2d Cir. 2011).

AGL Compl. ¶ 228 ("[H]ad the *Nominal Defendants* known of the material facts . . . the *Nominal Defendants* would not have entered into their respective partnership agreements and would not have suffered the damages complained of herein." (emphasis added)); Gen. Am Compl. ¶ 230 (same).) Accordingly, the Fishmans' fraud claim is defective.  See, e.g., Chateau Hip, Inc. v. Gilhuly, 95 Civ. 10320, 1996 WL 437929, at *1 n.1 (S.D.N.Y. Aug. 2, 1996) (unrefuted arguments may be deemed conceded).

The Fishmans also have not rebutted Tremont's showing that the Complaints fail to identify with specificity the purported role of each Tremont Defendant in the alleged fraud.  Instead, the Fishmans seek to justify lumping all defendants together by arguing that certain courts have "ratified" the so-called "group pleading doctrine."  (Opp'n Br. at 47 n.33.)  But "even under the group pleading doctrine, Plaintiff[s] must allege with particularity that a defendant was an insider or affiliate who knew the group published statements were false at the time they were issued."  In re Citigroup, Inc. Sec. Litig., 330 F. Supp. 2d 367, 382 (S.D.N.Y. 2004), aff'd sub nom. Albert Fadem Trust v. Citigroup, Inc., 165 F. App'x 928 (2d Cir. 2006); see also Manela v. Gottlieb, 784 F. Supp. 84, 87-88 (S.D.N.Y. 1992).  Here, the Complaints do not satisfy this pleading requirement because they do nothing more than identify the name and title of each Individual Defendant without linking him or her to any misstatements alleged in the Complaints.  (See Mov. Br. at 13.)

With respect to scienter, the Fishmans attempt to allege this element of their fraud claim by asserting that Tremont had a "motive to defraud Plaintiffs and the Class," which was "to collect exorbitant management and other fees."  (Opp'n Br. at 42.)  These allegations are legally insufficient because the alleged desire to obtain compensation for services rendered falls far short of establishing any intent to defraud.  As one court aptly has observed in this regard:

> It would defy common sense to hold that the motive element of the . . . scienter analysis would be satisfied merely by alleging the receipt of normal compensation for professional services rendered, because to do so would effectively abolish the

requirement, as against professional defendants in a securities fraud action, of pleading facts which support a strong inference of scienter.

Pope Invs. II LLC v. Deheng Law Firm, 10 Civ. 6608, 2011 WL 5837818, at *7 (S.D.N.Y. Nov. 21, 2011).[7]

There also is no merit to the contention that Tremont's inability to uncover Madoff's fraud creates a strong inference that Tremont did not monitor Madoff, as it purportedly represented it would do.  (Cf. Opp'n Br. at 44.)  As the Second Circuit recently has held, quoting this Court, "'the more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and deceiving the SEC and other financial professionals.'" Meridian Horizon Fund, LP v. KPMG (Cayman), 11-3311-cv, 2012 WL 2754933, at *3 (2d Cir. July 10, 2012) (quoting Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc., 747 F. Supp. 2d 406, 413 (S.D.N.Y. 2010)); see also South Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 110, 112 (2d Cir. 2009).  The Fishmans' allegation that Tremont would have discovered Madoff's fraud had it monitored Madoff's operations is nothing more than an allegation of "fraud by hindsight," which is insufficient to plead scienter.  E.g., In re Manulife Fin. Corp. Sec. Litig., 276 F.R.D. 87, 99 (S.D.N.Y. 2011).

### B.    The Complaints Fail To State a Claim of Breach of Fiduciary Duty

Count X of the Complaints alleges that the Tremont Defendants breached fiduciary duties owed to the Funds by failing to conduct, or not adequately conducting, due diligence on Madoff before investing with him, and by failing to monitor, or not adequately monitoring, Madoff's investment activities after allocating capital to BLMIS.  As demonstrated in the Moving Brief, this

---

[7]    The Fishmans' conclusory assertion that Tremont's fees were "exorbitant" is unsupported by any facts. This is not surprising given that Tremont's compensation for managing the Funds, a fee equal to 1%-1.5% of assets under management, was well below the industry norm.  Cf. United States v. Rajaratnam, 09 Cr. 1184, 2012 WL 362031, at *14 (S.D.N.Y. Jan. 31, 2012) (describing typical fee arrangement whereby investment adviser to hedge funds "earned a two percent management fee on the amount of assets in its funds and twenty percent of any gains in the funds.  This is the so-called 'two and twenty.'").

claim is barred by the LPA's exculpation clause because the allegations of the Complaints are insufficient to satisfy the heightened standard established by the clause for imposing liability, *i.e.*, the Complaints do not allege, as they must, facts sufficient to show that Tremont engaged in "gross negligence, willful misfeasance, bad faith of reckless disregard of duties."  (Mov. Br. at 10-11 (quoting LPA).)

Contrary to the Fishmans' contention, the Complaints do not establish bad faith by alleging that the Tremont Defendants:  (a) "conducted inadequate due diligence on Madoff" (Opp'n Br. at 52), see Manufacturers Life Ins. Co. v. Donaldson, Lufkin & Jenrette Sec. Corp., 99 Civ. 1944, 2000 WL 709006, at *4 (S.D.N.Y. June 1, 2000) (alleged failure to conduct adequate due diligence amounts to nothing more than a claim of negligence); (b) disregarded red flags, see id. (allegation that defendant "recklessly ignored numerous 'red flags'" asserted "[a]t most . . . a claim for negligence"); (c) ignored news articles that purportedly questioned Madoff's legitimacy, see Platinum Partners Value Arbitrage Fund LP v. Kroll Assocs., Inc., No. 105508/2010, 2011 N.Y. Misc. LEXIS 4737, at *17 (N.Y. Sup. Ct. N.Y. County Sept. 30, 2011) (defendant's alleged reckless failure to discover purportedly incriminating news articles held "insufficient to establish the requisite fraudulent intent"); or (d) made knowingly false statements regarding investments, see Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994) (allegations that defendants intentionally misstated or concealed information "are 'so broad and conclusory as to be meaningless'" (citation omitted)).

There also is no merit to the Fishmans' contention that exculpation is an affirmative defense inappropriate for resolution at the pleading stage.  (See Opp'n Br. at 53.)  As the Delaware Supreme Court has squarely held, exculpation "'may be raised on a Rule 12(b)(6) motion to dismiss (with or without the filing of an answer).'"  Emerald Partners v. Berlin, 787 A.2d 85, 91-93 & n.35 (Del.

2001) (citation omitted); accord American Auto Ins. Co. v. Rest Assured Alarm Sys., Inc., 786 F. Supp. 2d 798, 803 (S.D.N.Y. 2011).[8]

### C.   The Complaints Fail To State a Claim of Aiding and Abetting Breach of Fiduciary Duty

Count XV of the Complaints alleges that the Tremont Defendants aided and abetted a breach of fiduciary duty purportedly committed by the Funds.  (AGL Compl. ¶¶ 94, 246-49; Gen. Am. Compl. ¶¶ 96, 248-51.)  In their Opposition Brief, the Fishmans seek to amend this claim, contending for the first time that Tremont aided and abetted breaches purportedly committed by the Carriers.  (See Opp'n Br. at 55-56.)  But even this revised version of the claim is legally defective because, as a matter of law, the Carriers owed no fiduciary duty to the Fishmans.  See, e.g., Fiala v. Metro. Life Ins. Co., 776 N.Y.S.2d 29, 29 (N.Y. App. Div. 1st Dep't 2004).  And, with no legally sufficient claim of an underlying fiduciary breach, the Fishmans have stated no aiding and abetting claim against the Tremont Defendants.  See, e.g., Marino v. Grupo Mundial Tenedora, S.A., 810 F. Supp. 2d 601, 613 (S.D.N.Y. 2011).

### D.   The Complaints Fail To State a Claim of Gross Negligence

Although the Fishmans contend New York law governs their claims of gross negligence (Opp'n Br. at 62), this contention is undermined by Section 121-901 of the New York Limited Partnership Law, which mandates application of Delaware law when determining the sufficiency of claims based on allegations that Tremont was grossly negligent in managing the affairs of the Funds.

---

[8]   Buckley v. O'Hanlon, No. 04-955, 2007 WL 956947 (D. Del. Mar. 28, 2007), and McCall v. Scott, 250 F.3d 997 (6th Cir. 2001) (Opp'n Br. at 53), are not to the contrary.  In Buckley, the court found sufficient allegations of bad faith where plaintiffs alleged, among other things, that the defendant directors were aware of, but ignored, irregular accounting practices employed by the company despite receiving eleven warning letters from the company's auditors for a period of over eight years and a series of inquiries from the SEC regarding the practices in question.  See 2007 WL 956947, at *4, 6.  In the same vein, in Scott, plaintiffs "set forth particularized factual statements which, if proven, would establish a breach of the duty of good faith."  250 F.3d at 1001 n.2.  No such allegations have been alleged as against Tremont in the Complaints here.

(See Mov. Br. at 14 n.22.)  There also is no merit to the Fishmans' conclusory assertion that they have adequately pled gross negligence by accusing Tremont of failing to exercise due care, "perform adequate due diligence," "preserve the value of the investments made" and heed red flags purportedly signaling suspicious activity at BLMIS.  (Opp'n Br. at 61.)  Not only are such conclusory allegations insufficient to state a claim under governing Delaware law (see, e.g., Mov. Br. at 13-14), they also are insufficient under New York law.  See Saltz v. First Frontier, LP, 782 F. Supp. 2d 61, 75 (S.D.N.Y. 2010), aff'd, 11-265-cv, 2012 WL 2096399 (2d Cir. June 12, 2012); Platinum Partners, 2011 N.Y. Misc. LEXIS 4737, at *19-22.

### E.  The Complaints Fail To State a Claim of Negligent Misrepresentation

The Opposition Brief does not respond to, much less rebut, Tremont's showing that:  (a) the Complaints do not adequately allege that the Funds relied on any misrepresentation purportedly made by Tremont; and (b) the Fishmans' negligent misrepresentation claims are barred by the exculpation provisions of the LPA.  (See Opp'n Br. at 63.)  Accordingly, the negligent misrepresentation claims should be dismissed as against Tremont.

### F.  The Complaints Fail To State a Claim of Unjust Enrichment

There is no dispute that Tremont's entitlement to management fees has, at all relevant times, been governed by the terms of the investment management agreements (the "IMAs") between Tremont and the Funds.  There also is no allegation in the Complaints that the IMAs are invalid or unenforceable in any respect.  The Fishmans therefore have not stated any claim of unjust enrichment.  See, e.g., Goldman v. Metro Life Ins. Co., 841 N.E.2d 742, 746 (N.Y. 2005).

### CONCLUSION

For the reasons stated above and in the Moving Brief, the Tremont Defendants' motion to

dismiss should be granted in all respects.

Dated:  New York, New York
         August 14, 2012

                                        Respectfully submitted,

                                        /s/ Seth M. Schwartz
                                        Seth M. Schwartz (Seth.Schwartz@Skadden.com)
                                        Jason C. Vigna (Jason.Vigna@Skadden.com)
                                        SKADDEN, ARPS, SLATE,
                                          MEAGHER & FLOM LLP
                                        Four Times Square
                                        New York, New York 10036
                                        (212) 735-3000

                                        Attorneys for Defendants
                                          Tremont Group Holdings, Inc.,
                                          Tremont Partners, Inc.,
                                          Rye Investment Management,
                                          Tremont Capital Management, Inc.,
                                          Robert Schulman, Rupert A. Allan,
                                          Mark Santero, Cynthia J. Nicoll,
                                          Ileana M. López-Balboa,
                                          Stephen Clayton, John T. Matwey,
                                          Lynn O. Keeshan and Barry H. Colvin